## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTEN DISTRICT OF NORTH CAROLINA
## ASHEVILLE DIVISION
## CASE NO. 1:21 CV 00305-MR-WCM

| | | |
|---|---|---|
| BRO T. HESED-EL, | ) | |
| Plaintiff, | ) | **MEMORANDUM IN SUPPORT** |
| | ) | **MOTIONS TO DISMISS** |
| vs. | ) | **AMENDED COMPLAINT** |
| | ) | **BY DEFENDANTS ROBIN** |
| ROBIN BRYSON, et. al., | ) | **BRYSON, MISSION HOSPITAL,** |
| | ) | **INC. AND ANC HEALTHCARE,** |
| Defendant. | ) | **INC.** |

In support of their Motions To Dismiss Amended Complaint, Defendants Robin Bryson, Mission Hospital, Inc. and ANC Healthcare, Inc. (collectively herein "these Mission Defendants") show unto the Court the following:

## <u>INTRODUCTION</u>

On September 23, 2019, Plaintiff filed Civil Case No. 1:19-cv-00271-MR-WCM in this Court (hereinafter "**Case #1**"), against Defendants Robin Bryson (hereinafter "Bryson") and Mission Hospital, Inc. (hereinafter "Mission") among others, but not against ANC Healthcare, Inc. (hereinafter "ANC") or any ANC predecessor entity, based upon alleged actions and/or omissions by the Defendants taking place from September 20, 2016 until approximately 15 days later. Case #1 ended when Judgment was entered upon that Order entered on September 30, 2019 by the Honorable Martin Reidinger dismissing Case #1 for lack of subject matter jurisdiction [Case #1, Docs 6 and 7].

1

On October 7, 2019, Plaintiff filed Civil Case No. 1:19-cv-00285-MR-WCM in this Court (hereinafter "**Case #2**") and in his Amended Complaint [Case #2 Document 8] asserted claims against Bryson and Mission, among others, but not against ANC or any ANC predecessor entity, based upon alleged actions and/or omissions by the Defendants taking place from September 20, 2016 until approximately 15 days later. Case #2 ended with respect to Defendants Bryson and Mission when Plaintiff filed a voluntary dismissal on October 22, 2020 [Case #2, Doc. 67].

On October 18, 2021, Plaintiff filed this action (hereinafter "**Case #3**") against these Mission Defendants, John Doe and Hospital Does 1-20, based upon alleged actions and/or omissions by the Defendants taking place from September 20, 2016 until approximately 15 days later.

On February 22, 2022, Plaintiff filed an Amended Complaint in Case #3 against the same Defendants plus purported new Defendants Adam Herzog (hereinafter "Herzog") and Stirling Barlow (hereinafter "Barlow"), based upon alleged actions and/or omissions by the Defendant taking place from September 20, 2016 until approximately 15 days later.

The allegations in Plaintiff's Amended Complaint (hereinafter the "Amended Complaint" or "Complaint"), taken in the light most favorable to Plaintiff, include the following. On September 20, 2016, Plaintiff was found naked by law

enforcement on the Biltmore Estate, refused to talk, and was taken to Mission for a psychiatric evaluation. After the Plaintiff was delivered to Mission, Bryson, a licensed clinical social worker, performed an assessment (a "first examination") of the Plaintiff. Based upon her assessment, Bryson recommended an involuntary inpatient commitment. In so doing, Bryson allegedly neglected to examine the availability of Plaintiff's family, friends and others, failed to inquire into Plaintiff's worldview and religion, failed to wait for medications to wear off, and failed to provide Plaintiff with specific information at the completion of the examination. Further, Bryson was allegedly not authorized or properly trained to perform this first examination and, driven by her religious bias, cultural incompetency, and lack of training and supervision, "failed to comport with the known standards of her profession". These acts and omissions by Bryson were allegedly done willfully or in reckless disregard of Plaintiff's rights, and constituted "medical care that fell below the applicable standard of care."

Also on September 20, 2016, prior to Bryson's assessment, Herzog, Barlow and other hospital staff used therapeutic restraint to draw a sample of blood without Plaintiff's consent in order to run lab tests, and twice "secretly" medicated Plaintiff without his consent. This forced care was allegedly administered in reckless and willful disregard of Plaintiff's right to determine what is done with his own body.

3

Further, Bryson, Barlow, Herzog and all other hospital staff (Defendant Hospital Does 1-20) failed to provide the Plaintiff with medical care according to the applicable standard of care, and were willful and reckless in their disregard of Plaintiff's rights and religion. Barlow, Herzog, Bryson and all other hospital staff thereby caused Plaintiff to be "imprisoned" for 16 days, and to sustain emotional and physical injuries.

Further, Defendants Mission and ANC failed to train and supervise Bryson, Herzog, Barlow and all other hospital staff, and further failed to implement adequate policies and procedures, thus making Mission and ANC liable for the "torturous acts and omissions" of "Barlow, Herzog, Bryson and other staff in causing the injuries described herein".

Based on these allegations, Plaintiff seeks to recover in excess of $75,000 against all defendants, jointly and severally, pursuant to NCGS Section 90–21.12.

## MOTION TO DISMISS AMENDED COMPLAINT AS TO ALL DEFENDANTS PURSUANT TO RULE 12(b)(1), RULE 12(b)(6), Rule 41(b) AND 28 USC §1332

Plaintiff's sole basis for invoking the subject matter jurisdiction of this Court is pursuant to diversity of citizenship under 28 USC §1332. The Amended Complaint, however, has included unnamed Defendants, specifically "John Doe" and "Hospital Does 1-20", for whom Plaintiff cannot legitimately allege diverse

4

citizenship. The Complaint therefore fails to demonstrate the required diversity of citizenship and should therefore be dismissed.

It is axiomatic that diversity must be complete to satisfy 28 USC §1332, *Strawbridge v Curtiss* 7 US 267, 2 L.Ed. 435 (1806), and it is incumbent upon plaintiffs to sufficiently allege the diverse citizenship of the parties in order to survive dismissal.

There has been a difference of opinion among the Federal Circuits with respect to the effect of attempting to include unidentified John Doe defendants in diversity cases originally[1] filed in U.S. District Court. The 4th Circuit has followed the reasoning of the 7th Circuit Court of Appeals in *Howell by Goerdt v Tribune Entertainment Co*. 106 F.3d 215, 1997 U.S. App. LEXIS 2024; (7th Cir. 1997) and the 11th Circuit Court of Appeals in *Richardson v Johnson* 598 F.3d 734 (11th Cir. 2010); 2010 U.S. App. LEXIS 4269) in concluding that if Congress had intended for the treatment of John Doe defendants under §1441(b)(1) to be applicable to actions originally filed in federal court, Congress would have enacted a similar amendment to 28 USC §1332. Thus, "in diversity suits in federal court, a plaintiff is not permitted to name unknown defendants such as 'John Doe' defendants 'because the existence of diversity jurisdiction cannot be determined without knowing every defendant's place of citizenship.'" <u>Birara v. Kelel</u>, 2019 U.S. Dist.

---

[1] Pursuant to 28 USC §1441(b)(1), there is no such issue regarding cases removed from state court into federal court.

5

LEXIS 118347, 2019 WL 3208685 (USDC MD 2019) quoting *Howell by Goerdt supra*. Also see *Cowart v. Countrywide Bank, N.A.* (In re Cowart), 2015 Bankr. LEXIS 3675; 2015 WL 6667776 (M.D.N.C. 2015); *Harris v. SunTrust Mortg., Inc.*, 2013 U.S. Dist. LEXIS 36732; 2013 WL 1120846 (M.D.N.C. 2013). As a result, Plaintiff's inclusion of Defendants John Doe and Hospital Does 1-20 destroys the diversity required for subject matter jurisdiction.

Plaintiff has attempted to salvage diversity by baldly alleging that Defendant John Doe and the 20 Hospital Doe Defendants are all currently citizens of North Carolina, despite acknowledging that they "are unknown to Plaintiff."[2] [Amend. Comp. paragraph 7] This citizenship allegation is insufficient. In *Molnar v National Broadcasting Co.* 231 F. 2d 684, 1956 U.S. App. LEXIS 3457 (9th Cir. 1956), the plaintiff also attempted to assert the citizenship of John Doe defendants. The Court, however, refused to accept those allegations: "If the identity of defendants were known so that the pleader could state they were citizens of Delaware, she could also state their names and allege what part each had in the management and control of the stairway. But if the allegation that they are citizens of Delaware be, as on the face of the complaint it is, unfounded guesswork, the jurisdiction of the court is not established." *Molnar* at 686-687. Other courts have

---

[2] The only information to be gleaned from the Amended Complaint is that, over five years ago, these Defendants worked for Mission or ANC in Asheville, N.C., less than 100 miles from the contiguous state of Georgia where Plaintiff has now started asserting citizenship.

also noted the inherent problem of attempting to allege the citizenship of unknown John Doe defendants. "…[B]y definition plaintiff cannot satisfy the requirement of pleading and proving diversity. It is tautological to say plaintiff cannot demonstrate 'unknown owners and non-record claimants' are citizens of a state other than plaintiff's." *John Hancock Mutual Life v Central Nat'l Bank* 555 F. Supp. 1026, 1983 U.S. Dist. LEXIS 19410 (E.D. Illinois 1983). "That last invocation [being an invocation of diversity jurisdiction for 10 unknown "Doe" defendants] is puzzling, for the presence of unknown "Doe" defendants (*necessarily* having unknown citizenship) is fatal for diversity purposes...". (emphasis added) *Blue Cross & Blue Shield Ass'n v Hofstra Univ*. 2011 U.S. Dist. LEXIS 22099 (N.D. Illinois 2011) "…the complaint in this diversity case contains no allegations respecting the citizenship of the fictitious defendant. Even if it had, it is clear that the pleader's unfounded guesswork as to the citizenship of a party will not establish jurisdiction." *McAllister v Henderson* 698 F. Supp. 865, 1988 US Dist. LEXIS 12457 (N.D.Ala. 1988) citing *Molnar*.

An exception is recognized to the general prohibition against John Doe defendants in original diversity cases: the citizenship of "nominal parties" that is, parties who are "without a real interest in the litigation", should not be considered in determining diversity jurisdiction. *Navarro Savings Association v. Lee*, et. al, 446 U.S. 458, 461, 100 S. Ct. 1779, 64 (1980). Rather, when determining whether

7

diversity jurisdiction exists, "the general rule is that citizenship of the real parties in interest is determinative for purposes of diversity jurisdiction". *Spencer vs. Harris, et. al*., 394 F. Supp. 2d 840, 843 (SDWVA 2005) citing *Roche v. Lincoln Prop. Co*., 373 F.3d 610, 615 (4th Cir. 2004), rev'd on other grounds 546 U.S. 81, 126 S. Ct. 606 (2005). Among the factors that Courts have used in deciding whether someone is a real party in interest, the primary factor in this situation[3]is the weightiness of a party's interest in the litigation, particularly the likelihood that the party could incur financial liability as a result of later proceedings.

Certainly, the Hospital doe Defendants satisfy the criteria of having a weighty interest in the proceedings, with the likelihood of incurring financial liability. Plaintiff alleges that: they were employees of Defendants Mission and/or ANC; that they owed a duty to Plaintiff to provide medical care no lower than the applicable standard of care and that they breached that duty [paragraphs 47-48]; that their lack of training and supervision resulted in Plaintiff being 'imprisoned' for 16 days [parag.50]; that their willful disregard of Plaintiff's rights and religion caused him emotional and physical harm [para. 51]; and that their "tortious acts and omissions" caused "the injuries described herein" [para 70]. In Counts II and V, Plaintiff's claims are asserted against the Hospital Does and the named

---

[3] Other enumerated factors such as the level of litigation control, the retention of counsel and the provision of a statement or deposition are all premature here, as none of the Hospital Doe Defendants have yet been served with process.

8

Defendants jointly, and the relief Plaintiff seeks is that the Hospital Does be found liable, jointly and severally, with the named Defendants, for all of the damages allegedly sustained by him.

Furthermore, the allegations against the Hospital Doe Defendants are not just 'form' allegations. Rather, they are crucial to Plaintiff's primary claim for damages: his 16-day confinement. The allegations against Herzog, Barlow and Defendant Bryson pertain only to the first day, September 20, 2016. As demonstrated by North Carolina's involuntary commitment statute[4], referenced in the Amended Complaint, numerous other acts/omissions would necessarily have to have been committed by Hospital Doe Defendants following September 20, 2016 in order for Plaintiff's confinement to have continued. For example (as described in more detail below regarding Plaintiff's claims for negligent infliction of emotional distress), the statute requires that following the Bryson's first examination, a second examination of the Plaintiff by a medical doctor was required to take place upon the Plaintiff's arrival at the 24-hour facility. Unless that doctor independently determined that the Plaintiff met the criteria for involuntary inpatient commitment, the doctor was required to release the Plaintiff. 122C-266(a) In addition, if the Plaintiff's attending physician at the 24-hour facility at any time during Plaintiff's confinement prior to the District

---

[4] These Mission Defendants will be filing a motion to take judicial notice in support of this Memorandum which will seek that judicial notice be taken of the relevant parts of NCGS Chapter 122C.

Court hearing determined that Plaintiff no longer met the criteria for involuntary inpatient commitment, the doctor was required to release the Plaintiff. 122C-266(d).

Given the limited participation in Plaintiff's care by Bryson, Barlow and Herzog, the inclusion of the Hospital Doe Defendants or "other hospital staff" is essential to Plaintiff's claims, and Plaintiff alleges that "other hospital staff" were among those who provided inadequate medical care causing him to be imprisoned for 16 days. The Hospital Doe Defendants who treated Plaintiff after September 20, 2016 have as weighty an interest in this action as Bryson, Herzog and Barlow; they just have not yet been identified. The inclusion of the Hospital Does therefore does not fall within the exception, and requires dismissal based on lack of diversity.

## MOTION TO DISMISS AMENDED COMPLAINT AS TO ALL DEFENDANTS PURSUANT TO RULE 10(a), RULE 12(b)(6) AND RULE 41(b)
### BACKGROUND

In violation of Rule 10(a) and in violation of that Order entered on September 30, 2019 in Case #1 by the Honorable Martin Reidinger (hereinafter the "Case #1 Dismissal Order") [Case #1 Document 6], Plaintiff filed the Amended Complaint without fully identifying himself. Plaintiff's Amended Complaint should therefore be dismissed with prejudice.

In Case #1, Plaintiff asserted claims using the pseudonym "Confidential Plaintiff" or "CP". When Judge Reidinger entered the Case #1 Dismissal Order *sua*

10

*sponte*, he specifically addressed Plaintiff's attempt to utilize a pseudonym in light of the requirements of Rule 10(a). Judge Reidinger stated that "Plaintiff's stated interest in privacy and confidentiality are substantially outweighed by the public's interest in open judicial proceedings and the prejudice that would result to the Defendants. Therefore, the Plaintiff will not be permitted to proceed in this matter anonymously. Rather, the Plaintiff will be required to use *his full name*….in any future pleadings." (emphasis added) [Case #1 Document 6, pp. 12-13]. Judge Reidinger then ordered that "(4) The Plaintiff will be required to use *his full name…* in any future pleadings;" [Case #1 Document 6, pp. 15]. (emphasis added)

Thereafter, Plaintiff filed Case #2 apparently again using a pseudonym: "Bro T. Hesed-El". This appeared to have been confirmed by Plaintiff's Brief In Opposition To Defendants' Motion To Dismiss [Case #2, Document 16], in which Plaintiff described having filed a state court proceeding under the name of Taqi Lel Agabey to obtain the release of his 2016 involuntary commitment records, and attached an Order by state District Court Judge Ward D. Scott specifically noting "that the Court is satisfied that Mr. Agabey is, in fact, the person whom the records sought concern, based upon the independent recollection of Mr. Agabey's appointed counsel that Mr. Agabey is the same person he interviewed when initially appointed in 2016."

As a result, Defendants Mission and Bryson moved to dismiss on this and other grounds. [Case #2 Document 19 and Document 20, pages 3-5] In response, Plaintiff asserted that he was Bro T. Hesed-El, that his birth name had been legally corrected on May 20, 2015 in Georgia, and that it was unclear why Mission had registered him in its system using the name "Taqi Lel Agabey". [Case #2 Doc. 28 on page 3] This question of Plaintiff's identity was thereafter initially addressed in the Memorandum and Recommendation of U.S. Magistrate Judge W. Carlton Metcalf [Case #2 Doc. 63 at pages 14-15], but Plaintiff voluntarily dismissed all claims against these Defendants prior to any further determination.

Plaintiff then filed Case #3, again using the name "Bro T. Hesed-El". In response, and as a part of their motion to dismiss that Complaint, these Mission Defendants filed a motion for the taking of judicial notice (the "Judicial Notice Motion"). As demonstrated by the Exhibits attached to the Judicial Notice Motion, federal court records indicated: that Plaintiff had changed his name from Stephen Anthony Lee to Taqi Elaga Bey in 2013; that Plaintiff was thereafter named Taqi Elaga Bey (or Taqi El Agabey or some similar iteration thereof) until at least January 30, 2017 (which is after the Defendants' alleged treatment of the Plaintiff ended in October 2016); that beginning on January 30, 2017, the Plaintiff was named "Taqi El"; and that his use of photo identifications in his various filings confirmed that that

12

person was the same individual who was prosecuting the current Case #3 as "Bro T. Hesed-El".

On February 22, 2022, Plaintiff filed an Amended Complaint which unequivocally clarified that "Bro T. Hesed-El" is not Plaintiff's full name. Plaintiff acknowledges that it omits both the Plaintiff's first name and his middle name. Despite Rule 10(a) and the Case #1 Dismissal Order, Plaintiff explained that those names "are not necessary for identification purposes nor relevant to this action." Plaintiff therefore continued his redaction of those names in the Amended Complaint. [Doc. 14 at page 7]

On March 3, 2022, in response to Defendants' Judicial Notice Motion, Plaintiff filed a Response, acknowledging that he was, in fact, the same individual referenced in the Exhibits to these Mission Defendants' Judicial Notice Motion. Plaintiff, however, in his Response continued redacting his name, again explaining that it was "not necessary for identification purposes". [Doc.23 at page 2]

On March 7, 2022, these Mission Defendants filed a Reply to Plaintiff's Response, pointing out Plaintiff's continued redactions and violations of the Rules and the Orders of this Court.

Thereafter, on March 10, 2022, and only after Plaintiff realized that these Mission Defendants were not going to "let this go", the Plaintiff identified himself

13

in a motion to again amend his Complaint to correct the case caption (denominated by the Plaintiff as a "Motion To Permit Or Correct Case Caption". [Doc. 30]

## ARGUMENT

The requirement that Plaintiffs in civil complaints must disclose the identity of all parties involved pursuant to Rule 10(a) has been clarified by the 4th Circuit in Co. Doe v. Pub. Citizen, 749 F.3d 236 (4th Cir. 2014). In Co. Doe, the Court acknowledged that the use of anonymity might be allowed "in exceptional circumstances" with "compelling concerns relating to personal privacy or confidentiality". Co. Doe at 273. However, the Court emphasized that any such circumstances or concerns asserted by a Plaintiff must be balanced against the public's right to access to judicial proceedings and against any prejudice that might result to the defendants. See also James v. Jacobson, 6 F.3d 233 (4th Cir. 1993)

With respect to the events giving rise to the current Case #3, this Court has already performed that balance, determined that Plaintiff failed to show "extraordinary circumstances", and unequivocally admonished Plaintiff that he was "…required to use his full name…in any future pleadings."

Nevertheless, Plaintiff first knowingly violated Judge Reidinger's Order when he filed Case #2 under "Bro T. Hesed-El", which the Plaintiff has now clarified is far from being his full name. Plaintiff next knowingly violated Judge Reidinger's Order when he filed his original Complaint in Case #3 under "Bro T. Hesed-El".

14

The Plaintiff next violated Judge Reidinger's Order when filing his Amended Complaint in Case #3 redacting all but "Bro. T. Hesed-El". The Plaintiff for a fourth time knowingly violated Judge Reidinger's Order when filing the Response to these answering Defendants Judicial Notice Motion. These were not inadvertent violations – the were clearly intentional, because after each violation the Defendants filed pleadings pointing out Plaintiff's failures to comply with the Rules and Judge Reidinger's Order.

If this issue had first arisen in this Case #3, an appropriate remedy might have been to allow Plaintiff to fully identify himself to the Court and to the Defendants. However, that option was provided to the Plaintiff by Judge Reidinger long ago, and Plaintiff has chosen to studiously ignore it. Now that the Plaintiff has been forced by the Defendants' Judicial Notice Motion to acknowledge that he has not been fully identifying himself all along, he appears to be of the opinion that, because he was using some portion of his real name, he can now merely request a correction to the case caption and these issues will be moot. These Mission Defendants disagree. Plaintiff should only be allowed to again amend his Complaint "as justice requires". Given the Plaintiffs repeated knowing violations of the Rules and the Orders of the Court, justice does not require that amendment. Rather, Plaintiff should be held accountable for his violations of Rule 10(a) and the Orders of this Court, and this action should be dismissed accordingly.

15

Because Plaintiff is appearing *pro se*, it should be noted that he is an experienced litigant in U.S. District Courts. As importantly, it should be noted that this is not a situation in which a non-attorney has failed to follow some complicated or arcane rule - the directive by Judge Reidinger could not have been any clearer, whether given to an attorney or to a lay person.

## MOTION TO DISMISS AMENDED COMPLAINT AS TO DEFENDANT ANC HEALTHCARE, INC. PURSUANT TO RULE 12(b)(6) AND RULE 41(b)

All acts/omissions alleged against ANC or attributed to ANC occurred prior to or during September and October, 2016. ANC was never named as a party or even mentioned in the Plaintiff's Complaints in Case #1 [Doc. 2] or in Case #2 [Docs. 1 and 8]. ANC was not made of Defendant until the filing of this Case #3 on October 18, 2021, over five years after the last act/omission alleged against ANC. All claims asserted against AMC have statutes of limitation of three years. *NCGS Section 1-52*

For a Plaintiff to be able to take advantage of North Carolina's Rule 41(a) one-year extension of the statute of limitations, the refiled case must be "…substantially the same, involving *the same parties*, the same cause of action, and the same right.". (emphasis added) *Cherokee Ins. Co. v R/I, Inc*., 97 N.C. App. 295, 297, 388 S.E.2d 239, 240, cert. denied, 326 N.C. 594 (1990) quoting McIntosh, *North Carolina Practice and Procedure* Section 312 (1956). "Although

16

Rule 41(a)(1) does not specifically mandate that the new action involve the same defendants, North Carolina courts have interpreted the statute to include such a requirement." *Pridgett V Royster-Clark, Inc*. 1996 U.S. Dist. LEXIS 18222 (E.D.N.C. 1996).

ANC is not the same entity as Mission. Plaintiff correctly alleges that ANC is the parent corporation of Mission. [Amend. Comp. paragraph 33] In addition, these Mission Defendants will be filing a motion to take judicial notice in support of this Memorandum which will seek that judicial notice be taken of the records of the North Carolina Secretary of State which demonstrate that ANC and Mission are separate and distinct corporate entities.

Further, *assuming arguendo* that ANC had earlier knowledge of Case #1 and Case #2, the result is no different. In *Cherokee,* the court found it immaterial that R/I, Inc. may have had actual notice of the earlier action by virtue of the two corporate entities sharing the same address, the same officers and the same directors. Likewise, the fact that ANC is the parent corporation of Mission is also not relevant. In *Pridgett*, Mulberry Phosphates, Inc. (formerly the initial Royster Company) was the parent corporation of Mid-Atlantic Fertilizer, Inc. (formerly Royster Mid-Atlantic Company). Plaintiff's original action had included Mid-Atlantic Fertilizer, Inc. as a defendant; however, following a Rule 41 dismissal

without prejudice and refiling, the court determined that the statute of limitation

had not been tolled with respect to parent corporation Mulberry Phosphates.

## MOTION TO DISMISS PLAINTIFF'S CLAIMS FOR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS AS TO ALL DEFENDANTS PURSUANT TO RULE 12(b)(6) AND RULE 41(b)

A claim for negligent infliction of emotional distress ("NIED") requires a

plaintiff to adequately plead and thereafter prove three elements: (1) the defendant

negligently engaged in conduct; (2) it was reasonably foreseeable that such

conduct would cause the plaintiff severe emotional distress; and (3) the conduct

did in fact cause the plaintiff severe emotional distress. *Acosta v Byrum* 180 NC

App 562, 638 SE 2d 246 (2006).

**Plaintiff's NIED Claim Against Bryson**

With respect to the second element of Plaintiff's NIED claim against

Bryson, the Amended Complaint is insufficient. Plaintiff's claims are based upon

the assertion that the wrongful acts/omissions within Bryson's first examination

resulted in Plaintiff being "imprisoned under the care of culturally incompetent and

religiously indifferent hospital employees for 16 days." [Paragraph 50, 27 and 28]

In alleging NIED, Plaintiff asserts that Bryson knew or should have known

that her conduct would proximately cause this result, and that this result was

"foreseeable". However, North Carolina's involuntary commitment statute, to

which Plaintiff refers [Paragraphs 24, 52 and 55], demonstrates that such a result was, in fact, not foreseeable to Bryson.

North Carolina's involuntary commitment statute provides that law enforcement first transport the "respondent" (here, the Plaintiff) to a facility having an available commitment examiner capable of performing a first examination in conjunction with a health screening at the same location. NCGS Section 122C-263(a)[5]. If the commitment examiner (here, Bryson) finds that the respondent meets the criteria for involuntary inpatient commitment, and the Clerk or Magistrate enters an Involuntary Commitment Order thereupon, the respondent is taken to a licensed 24-hour facility. NCGS Section 122C-263(d)(2) Within 24 hours after arriving at the 24-hour facility, the respondent must be again examined (the "second examination") by a medical doctor[6] who did not perform the first examinataion.122C-266(a) Unless that doctor independently determines that the respondent meets the criteria for involuntary inpatient commitment, the doctor must either release the respondent for outpatient care or terminate the proceeding and completely release the respondent. 122C-266 (a)(1)-(4) As a result, Bryson could not have reasonably foreseen that her assessment and recommendation

---

[5] These Mission Defendants will be filing a motion to take judicial notice in support of this Memorandum which will seek that judicial notice be taken of the relevant parts of NCGS Chapter 122C.

[6] While the individual making the first assessment under the statute must be a "commitment examiner" (which includes any certified mental health professional), the individual performing the second examination must be a medical doctor. 122C-3(8a) and (29).

19

would result in the confinement of which the Plaintiff complains. To the contrary, she could only reasonably foresee that a medical doctor would thereafter perform his/her own independent assessment of the Plaintiff's condition, and that the involuntary inpatient commitment would only occur if that doctor independently determined that the Plaintiff met the requisite criteria.

With respect to the third element of Plaintiff's NIED claim against Bryson, the Complaint is also insufficient by failing to allege severe emotional distress. Plaintiff repeatedly makes conclusory assertions, which the Court is not required to accept, that he suffered "emotional and mental pain", "loss of a piece of mind", "emotional distress" and "severe emotional distress". Plaintiff at no point, however, alleges any "emotional or mental disorder he developed" or any of the other criteria set forth in *Strickland v Jewell* 562 F. Supp. 2d 661 (MDNC 2007) Plaintiff's allegations are therefore deficient. *Doe v Lees-Mcrae College* 2021 U.S. Dist. LEXIS 54660 (W.D.N.C. 2021)

**Plaintiff's NIED (and IIED) Claims Against Barlow and Herzog**

Plaintiff has only recently attempted to make Herzog and Barlow parties in this matter, and the undersigned has not made an appearance for either of said individuals. However, because their actions – allegedly as employees of Defendants Mission or ANC - are allegedly attributable to those Defendants, the allegations concerning them are being addressed.

With respect to the second and third elements of Plaintiff's NIED claims against Herzog and Barlow, the Amended Complaint is insufficient for the same reasons that it is insufficient with respect to Bryson, as set forth above.

**Intentional Infliction of Emotional Distress ("IIED")**

While Plaintiff has not identified IIED as one of his claims, his allegations against Barlow and Herzog [paragraphs 57–59] of "outrageous conduct "and "reckless disregard of the high probability of causing Plaintiff to suffer emotional distress" might be considered an assertion of such a claim. If so, Plaintiff has also failed to sufficiently allege the "outrageous conduct" necessary to support IIED. The allegations regarding Barlow and Herzog can be summarized as follows.

After law enforcement brought the Plaintiff to Mission for a psychiatric assessment, Barlow sought permission to draw a blood sample in order to run lab tests. Plaintiff declined to give consent and a therapeutic restraint was therefore employed so Barlow could obtain the blood sample. [Amend. Comp. Paragraphs 17 and 18] On two occasions that day, Herzog "secretly" administered some "cocktail of drugs" without Plaintiff's consent, once while the Plaintiff was unconscious. [Amend. Comp. Paragraphs 19 – 22] The medication allegedly caused Plaintiff to "lose consciousness" and to be "completely debilitated". [Amend. Comp. paragraphs 19 and 57] Finally, Barrow and Herzog failed to

inform Plaintiff of the material risks associated with those medical treatments.

[Amend. Comp. Paragraphs 39 – 41]

These actions simply do not come close to going "beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community". *Norton v Scotland* Mem'l 793SE 2d 703 (2016) Furthermore, the "extreme and outrageous" test must include an assessment of the severity of distress the defendant intended to instill in the victim. *Hensley v Suttles* 167 F. Supp. 3d 753 (WDNC 2016), *aff'd sub nom Hensley ex. Rel. North Carolina v Price* 876 F 3d 572 (4th Cir.2017). By once drawing a blood sample from the therapeutically restrained Plaintiff, Barlow simply cannot be said to have intended to instill severe distress in the Plaintiff. Moreover, since Herzog's administration of medications were done "secretly", including when Plaintiff was unconscious, Herzog cannot be said to have been intending to instill severe distress in the Plaintiff.

## MOTION TO DISMISS PLAINTIFF'S CLAIM FOR MEDICAL MALPRACTICE AS TO ALL DEFENDANTS PURSUANT TO RULE 12(b)(6) AND RULE 41(b) AND N.C. GEN. STAT. § 1A-1 RULE 9(j)

Finally, in this malpractice Amended Complaint, in which Plaintiff's relief is sought pursuant to NCGS Section 90-21.12, Plaintiff includes an expert certification pursuant to NC Gen. Stat. §1A-1 Rule 9(j) ("Rule 9(j)"). This Rule 9(j) certification is untimely and, until eight months ago, would have required dismissal of the

22

Amended Complaint under cases such as *Bass v. Durham County Hosp. Corp*., 2004 N.C. LEXIS 172; 358 N.C. 144, 592 S.E. 2d 687 (2004) and *Boyd v. Rekuc*, 246 N.C. App. 227, 782 S.E. 2d 916 (2016); 2016 N.C. App. LEXIS 299. However, in July, 2021, the 4th Circuit decided *Pledger v. Lynch*, 5 F.4th 511 (4th Cir. 2021); 2021 U.S. App. LEXIS 21587 which on its face appears to have jeopardized the applicability of Rule 9(j) in Federal Court. Nevertheless, in order to preserve these Mission Defendants' assertion of defenses under Rule 9(j) in the event that the scope of *Pledger* is later limited, the Defendants argue that *Pledger* should be limited to its facts and that it is therefore inapplicable here.

 *Pledger* was addressing West Virginia's pre-suit certification and notice requirement. A critical finding was that the West Virginia certification requirement was not a substantive rule but rather a procedural rule. Rule 9(j) is a different requirement, and Courts in the 4th Circuit have treated it differently. Specifically, "North Carolina imposes *substantive* legal requirements that a person must follow to pursue a medical malpractice claim. Under Rule 9(j), a plaintiff's medical malpractice Amended Complaint must assert that the medical care has been reviewed by a person who is reasonably expected to qualify (or whom the plaintiff will move to qualify) as an expert witness and who is willing to testify that the medical care received by the plaintiff did not comply with the applicable standard of care." (emphasis added) *Deal v. Central Prison Hosp*., No. 5:09CT3182, 2011 U.S.

Dist. LEXIS 8781, 2011 WL 322403, at *4 (E.D.N.C. Jan. 27, 2011) (unpublished);

see also *Littlejohn v U.S.* 528 Fed App'x 289 (2013).

In addition, *Pledger* involved a federal claim under the FTCA rather than a

state court claim being tried in Federal Court. (North Carolina cases decided in this

Circuit since *Pledger* also appear to have been based upon federal claims[7].) While

the *Pledger* Court was able to decide that West Virginia's requirement was simply

procedural within a federally created action, that Court could take a different view

if a state court medical malpractice case such as this comes before it from North

Carolina. Until the 4th Circuit rules in such a case involving North Carolina's Rule

9(j), Defendants do not concede that *Pledger* forecloses the applicability of Rule 9(j)

in this Case #3, and argue that the Amended Complaint should therefore be

dismissed.

Respectfully submitted, the 18th day of March, 2022.

/ s/Richard S. Daniels
N.C. Bar No. 8716
*Attorney for Defendants*
Patla, Straus, Robinson & Moore, P.A.
Post Office Box 7625
Asheville, North Carolina 28802
Telephone: (828) 255-7641
Facsimile: (828) 258-9222
rsd@psrmlaw.com (email)

---

[7] Richardson v Wellpath 2021 U.S. Dist. LEXIS 217516, 2021 WL 5235334 under the PLRA; Saylon v US 2021 U.S. Dist. LEXIS 138452, 2021 WL 3160425 under the FTCA; and Vickers v US 1:20-cv-00092 (WDNC 2021) under the FTCA.

24

## CERTIFICATE OF SERVICE

I hereby certify that on March 18, 2022, I served the foregoing *Memorandum In Support of Motions to Dismiss Amended Complaint by Defendants* by electronically filing same with the Clerk of Court using the CM/ECF system and by depositing a copy, contained in a first-class postage-paid wrapper, into a depository under the exclusive care and custody of the United States Postal Service, addressed as follows:

**Bro. T. Hesed-El**
**c/o Taqi El Agabey Mgmt.**
**30 N. Gould Street, Suite R**
**Sheridan, WY 82801**

A courtesy copy will also be sent via email to: teamwork3@gmail.com.

This the 18th day of March, 2022.

/ s/ Richard S. Daniels
N.C. Bar No. 8716
*Attorney for Defendants*
Patla, Straus, Robinson & Moore, P.A.
Post Office Box 7625
Asheville, North Carolina 28802
Telephone: (828) 255-7641
Facsimile: (828) 258-9222
rsd@psrmlaw.com (email)

25