# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTEN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# CASE NO. 1:21 CV 00305-MR-WCM

| | |
|---|---|
| BRO T. HESED-EL, | ) |
|     Plaintiff, | ) **RESPONSE BY DEFENDANTS** |
| | ) **ROBIN BRYSON, MISSION** |
| | ) **HOSPITAL, INC. AND ANC** |
| vs. | ) **HEALTHCARE, INC. TO** |
| | ) **PLAINTIFF'S MOTION FOR** |
| | ) **LEAVE TO FILE SSECOND** |
| ROBIN BRYSON, et. al., | ) **AMENDED COMPLAINT** |
| | ) |
|     Defendant. | ) |

NOW COME THE DEFENDANTS Robin Bryson, Mission Hospital, Inc. and ANC Healthcare, Inc. (collectively herein "these Mission Defendants"), responding to Plaintiff's Motion For Leave To File Second Amended Complaint (herein "Plaintiff's Motion For Leave" by showing onto the Court as follows:

**<u>Plaintiff's Motion For Leave Should be Denied As to All Claims For Having Been Made For An Improper Purpose And In Bad Faith And Being Futile</u>**

The Court has scheduled a hearing herein for May 19, 2022 for the hearing of all issues relevant relative to all pending motions. (Doc. 51) The Court has also indicated that it is not persuaded that further submissions with respect to the issues surrounding Plaintiffs name are necessary prior to said hearing. (Doc 44)

These Mission Defendants are therefore limiting their submission herein regarding Plaintiff's name to the following notification: at the hearing, these

1

Mission Defendants will take the position that the Plaintiff's Motion For Leave is a thinly veiled attempt to "wipe the slate clean" of Plaintiff's repeated, intentional past failures and refusals to comply with a Judge Reidinger's Order entered on September 30, 2019 (Case #1 Document 6). As such, the Motion For Leave should be denied for being made for an improper purpose and in bad faith and for being futile. *Ferguson v Maita* 162 F. Supp. 2d 433 (W.D.N.C. 2000); *Agbaje v Hargrave Military* 328 F. Supp. 3d 539 (W.D. Va. 2018)

## Plaintiff's Motion For Leave Should be Denied As Futile As to All Claims Against Defendant ANC Healthcare, Inc.

Plaintiff's Motion For Leave should be denied as futile with respect to Plaintiff's attempt to now include ANC as a defendant. On its face, the proposed Second Amended Complaint fails to overcome the fact that ANC was never named as a defendant prior to Plaintiff's voluntary dismissal of his Case #2 and the expiration of the applicable statutes of limitation.

It is undisputed that ANC is a separate corporate entity from Defendant Mission. In the proposed Second Amended Complaint, Plaintiff again alleges, correctly, that ANC is the parent corporation of Defendant Mission. (Doc. 53-1, para. 5 and 31)

Plaintiff's allegations of ANC's actual prior notice of events and ANC's complete control over Defendant Mission so that they should be treated as though

2

"[t]he two are one" might be relevant if both entities were *already* properly before the Court. But they are not, because it is also undisputed that following Plaintiff's discharge in October 2016, ANC was never named as a defendant, nor were any allegations or claims asserted against ANC, prior to the Complaint filed in Case #3 on October 18, 2021. *Cherokee Ins. Co. v R/I, Inc*., 97 N.C. App. 295, 297, 388 S.E.2d 239, 240, cert. denied, 326 N.C. 594 (1990) clarifies that a previously unnamed corporation cannot be made a defendant following a Rule 41 voluntary dismissal. It does not matter that the unnamed corporation shares the same address, the same directors and the same officers with a previously named defendant. It does not matter that the previously unnamed corporation had actual knowledge of the events - in *Cherokee*, the Plaintiff and the previously unnamed corporation were already litigating the same issue in a Tennessee action.

Similarly, *Pridgett v. Royster-Clark, Inc*. 1996 U.S. Dist. LEXIS 18222 (E.D.N.C. 1996), confirms that the relationship between the corporate entities of parent/subsidiary, even where the two entities had filed a joint bankruptcy proceeding, was insufficient to satisfy the requirement that parent Mulberry Phosphates, Inc. had to have been a party in the prior action in order to be included as a defendant in the refiled suit.

Likewise, in the case of *McCoy Enterprises v. Vaughn*, 268 S.E. 2d 764 (Ga. App. 1980), cited with approval by the *Cherokee* court in reaching its decision, the

3

complete knowledge on the part of the previously unnamed corporation and the complete control of the previously unnamed corporation by the original defendants were insufficient to allow the previously unnamed corporation to be made a defendant in the refiled action. In *McCoy*, the earlier named defendants were the owners, sole officers, sole directors and sole agents of the previously unnamed corporation.

It is also undisputed that the statute of limitation periods for all claims that Plaintiff now attempts to assert against ANC are three years. The failure to have ever named or asserted claims against ANC before October 2021 is a bar to now including ANC as a defendant.

"A district court may deny a motion to amend when the amendment... would be futile." "An amendment is futile 'if the proposed amended complaint fails to state a claim.'" *Faby v. CSX Transp., Inc.*, 2021 U.S. App. LEXIS 29403; 2021 WL 4452430, quoting *Equal Rights Ctr. v. Niles Bolton Assocs.*, 602 F.3d 597 (4th Cir. 2010) and *Katyle v. Penn Nat'l Gaming, Inc.,* 637 F.3d 462 (4th Cir. 2011). See also *Wilkinson v. Wells Fargo Bank, N.A.,* 2021 U.S. Dist. LEXIS 44542; 2021 WL 915215 (WDNC 2021)

**Plaintiff's Motion For Leave Should be Denied As Futile As to All Claims for NIED and IIED**

Plaintiff's proposed Second Amended Complaint fails to adequately allege the elements of negligent infliction of emotional distress (herein "NEID") and intentional infliction of emotional distress ("IIED"). Plaintiffs Motion For Leave should therefore be denied as futile with respect to those claims.

First, with respect to both his NIED and IIED claims, Plaintiff fails to adequately allege the element of reasonable foreseeability on the part of Defendant Bryson, Herzog and Barlow.[1]
However, North Carolina's involuntary commitment reasonably statute referenced in the proposed Second Amended Complaint demonstrates that the 16-day confinement of which Plaintiff complains was not, in fact, foreseeable. The statute provides that if the first examiner (here, Bryson, a clinical social worker) finds that a respondent meets the necessary criteria and recommends an involuntary commitment, and if the Clerk or Magistrate enters an involuntary commitment Order thereupon, the respondent is transported to a licensed 24-hour facility. NCGS Section 122C-263(d)(2) Within 24 hours after arriving at the 24-hour facility, the respondent must be again examined (the "second examination") by a

---

[1] Plaintiff has recently sought to include Herzog and Barlow as Defendants. The undersigned has not made an appearance on their behalf; however, these claims are being addressed because Plaintiff seeks to establish liability on the part of Defendants ANC and Mission by and through the actions of Herzog and Barlow.

5

medical doctor[2] who did not perform the first examinataion.122C-266(a) Unless that doctor independently determines that the respondent meets the criteria for involuntary inpatient commitment, the doctor must either release the respondent for outpatient care or completely release the respondent. 122C-266 (a)(1)-(4) As a result, Bryson could only reasonably foresee that upon arrival at the 24-hour facility, a medical doctor would perform his/her own independent assessment of the Plaintiff's condition, and that the involuntary inpatient commitment would only occur if that doctor independently determined that the Plaintiff met the requisite criteria.

In arguing this issue in Plaintiff's Response (Doc. 53-2) to these Mission Defendants' Motion To Dismiss Amended Complaint, in an effort to create reasonable "foreseeability" where none exists, Plaintiff mischaracterizes North Carolina's involuntary commitment statute and as well as the criteria for NIED cases set forth by the North Carolina Supreme Court in *Johnson v Ruark Obstetrics & Gynecology Assocs., P.A.,* 327 N.C. 283 (1990); 395 S.E.2d 85 (1990); 1990 N.C. LEXIS 715. Plaintiff asserts that Defendant Bryson "knew, or should have known, that… her first examination would result in… an IVC order whereupon,

---

[2] While the individual making the first assessment under the statute must be a "commitment examiner" (which includes any certified mental health professional), the individual performing the second examination must be a medical doctor. 122C-3(8a) and (29).

6

Plaintiff would be detained for a seven-day period until a 24-hour facility became available". That is incorrect. Instead, following an IVC order, law enforcement is to transport a respondent such as the Plaintiff to a 24-hour facility within six hours of notification. N.C.G.S. §122C-263(d)(2). It is only on occasions when no 24-hour facility is available that a respondent may be temporarily detained. If no 24-hour facility becomes available for seven days, the IVC proceeding is automatically terminated. Furthermore, during that time the respondent is to be released if any commitment examiner ever determines that the respondent no longer meets the criteria for inpatient commitment. §122C-263(d)(2). The Plaintiff's detention for any significant period without a second examination and concurring opinion by an independent medical physician was therefore not reasonably foreseeable by Bryson (or Herzog or Barlow).

Furthermore, the Supreme Court in *Johnson* was specific in finding that the injury that must be foreseeable is severe emotional distress. "… a plaintiff must also allege that severe emotional distress was the foreseeable… result of such negligence in order to state a claim." *Johnson* at 304. In other words, it must have been foreseeable by Bryson that any delay between the IVC order and the physician's second examination would impact the Plaintiff to the extent of causing a "severe and disabling emotional or mental condition which may be generally recognized and diagnosed by professionals trying to do so". *Doe v Lees-Mcrae*

7

*College* 2021 U.S. Dist. LEXIS 54660 (W.D.N.C. 2021). Given the process mandated by North Carolina's IVC statute, such a result is not reasonably foreseeable by a first examiner such a Bryson. To so find would necessarily mean that every first examiner recommending commitment in every IVC proceeding in North Carolina would automatically be unable to defend the foreseeability element of NIED and IIED claims.

Second, with respect to both his NIED and IIED claims, Plaintiffs proposed Second Amended Complaint also fails to adequately allege "severe emotional distress". The proposed Second Amended Complaint's repeated allegations of "emotional and mental pain", "loss of peace of mind", "mental distress" and "severe emotional distress" are inadequate to sufficiently support claims for NIED and IIED. See *Doe v Lees-Mcrae College supra.* Plaintiff attempts to overcome that deficiency with two new 'allegations' never before asserted in any of his pleadings.

Plaintiff first alleges that "A psychiatrist, psychologist, and/or other medical professional labeled Plaintiff's loss of peace of mind, mental pain, or severe emotional distress as psychosis, lack of insight, altered mental status, and/or other symptoms of mental illness". (Doc. 53–1 para. 35) This blatant conclusory, catchall allegation fails to provide the factual assertion required. It may mean nothing more than that an acquaintance of the Plaintiff who is an EMT or NA has

8

called his "loss of peace of mind" a "lack of insight". There is no allegation that Plaintiff actually has any severe and disabling emotional or mental condition, much less one generally recognized and diagnosed by professional train to do so. Plaintiff should no more benefit from this catchall allegation than he would from the allegation that that "A psychiatrist has diagnosed me with a severe and debilitating psychosis *and/or* no professional has ever diagnosed me with any mental or emotional disorder whatsoever." While the court must take all factual allegations as true in this procedural context, it need not accept "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." *Nemet Chevrolet v Consumer Affairs.com* 591 F.3d 250, 255 (4th Cir. 2009)

    Plaintiff's second allegation is that he suffers from "a general phobia and distrust" of hospitals, doctors, nurses, etc. (Doc. 53–1 para 53) With no indication of what a "general phobia and distrust" means to the Plaintiff, he hopes that the inclusion of the term "phobia" will alone bring his allegation within the requirements for pleading emotional distress claims. It doesn't – there is again no allegation that this "general phobia and distrust" is a severe and disabling emotional or mental condition generally recognized and diagnosed by professionals trained to do so.

9

Case 1:21-cv-00305-MR-WCM   Document 57   Filed 05/09/22   Page 9 of 14

Third, with respect to Plaintiff's IIED claims[3], the proposed Second Amended Complaint fails to allege the degree of outrageous behavior required. The allegations regarding Bryson, Barlow and Herzog can be summarized as follows. Barlow drew one blood sample after the Plaintiff declined to give consent; Herzog "secretly" administered medications without Plaintiff's knowledge or consent; and Bryson's first examination fell below the applicable standard of care and violated state law. (Doc. 53-1 para. 52). These actions simply do not come close to going "beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community". *Smith-Price v Charter Behavioral Health* 164 NC App 349, 354 (2004)

Furthermore, the "extreme and outrageous" test must include an assessment of the severity of distress the defendant *intended* to instill in the victim. *Hensley v Suttles* 167 F. Supp. 3d 753 (WDNC 2016), *aff'd sub nom Hensley ex. Rel. North Carolina v Price* 876 F 3d 572 (4th Cir.2017). By once drawing a blood sample from the Plaintiff, Barlow cannot be said to have intended to instill severe distress in the Plaintiff. Moreover, since Herzog's administration of medications were done "secretly", Herzog cannot be said to have been intending to instill severe distress in

---

[3] It is unclear whether the proposed Second Amended Complaint asserts claims for IIED. However, since Plaintiff is clearly asserting these claims with respect to Herzog and Barlow in his Response (Doc.53–2 page 9) filed simultaneously with his Motion For Leave, IIED claims are being addressed.

10

the Plaintiff. Similarly, Bryson's alleged failure to properly perform the initial examination – via omissions of which the Plaintiff would have been unaware – could not have been intended to instill severe distress.

Finally, the issue of whether these Mission Defendants' alleged acts are sufficiently outrageous is not solely a question for the jury; rather, the "the initial determination of whether conduct is extreme and outrageous is a question of law for the court…" *Norton v Scotland Mem'l*, 793SE 2d 703 (2016) quoting *Johnson v. Bollinger*, 86 N.C. App. 1; 356 S.E. 2d 378 (1987) and *Briggs v. Rosenthal*, 73 N.C. App. 672; 327 S.E.2d 308 (1985).

The proposed Second Amended Complaint would be dismissed on these claims, and Plaintiff's Motion For Leave is therefore futile.

## **Plaintiff's Motion For Leave Should be Denied As Futile As to All Claims Seeking Relief Pursuant to NCGS Section 90-21.12**

Finally, the proposed Second Amended Complaint asserts claims for medical malpractice, specifically seeking relief pursuant to NCGS Section 90-21.12. Plaintiff includes therein an expert certification pursuant to NC Gen. Stat. §1A-1 Rule 9(j) ("Rule 9(j)").  However, this Rule 9(j) certification is untimely and would require the dismissal of the proposed Second Amended Complaint under cases such as *Bass v. Durham County Hosp. Corp.*, 2004 N.C. LEXIS 172; 358 N.C. 144, 592 S.E. 2d

11

687 (2004) and *Boyd v. Rekuc*, 246 N.C. App. 227, 782 S.E. 2d 916 (2016); 2016 N.C. App. LEXIS 299. The proposed Second Amended Complaint is therefore futile.

In July, 2021, the 4th Circuit decided *Pledger v. Lynch*, 5 F.4th 511 (4th Cir. 2021); 2021 U.S. App. LEXIS 21587 which on its face appears to have jeopardized the applicability of Rule 9(j) in Federal Court. However, *Pledger* was addressing West Virginia's pre-suit certification and notice requirement. A critical finding was that the West Virginia certification requirement was not a substantive rule but rather a procedural rule. North Carolina's Rule 9(j) is a different requirement, and Courts in the 4th Circuit have treated it differently. Specifically, "North Carolina imposes *substantive* legal requirements that a person must follow to pursue a medical malpractice claim. Under Rule 9(j), a plaintiff's medical malpractice Amended Complaint must assert that the medical care has been reviewed by a person who is reasonably expected to qualify (or whom the plaintiff will move to qualify) as an expert witness and who is willing to testify that the medical care received by the plaintiff did not comply with the applicable standard of care." (emphasis added) *Deal v. Central Prison Hosp.*, No. 5:09CT3182, 2011 U.S. Dist. LEXIS 8781, 2011 WL 322403, at *4 (E.D.N.C. Jan. 27, 2011) (unpublished); see also *Littlejohn v U.S.* 528 Fed App'x 289 (2013).

In addition, *Pledger* involved a federal claim under the FTCA rather than a state court claim being tried in Federal Court. (North Carolina cases decided in this

12

Case 1:21-cv-00305-MR-WCM    Document 57    Filed 05/09/22    Page 12 of 14

Circuit since *Pledger* also appear to have been based upon federal claims[4].) While the *Pledger* Court was able to decide that West Virginia's requirement was simply procedural within a federally created action, that Court could take a different view if a state court medical malpractice case such as this comes before it from North Carolina solely on the basis of diversity. Therefore, until the 4th Circuit rules in such a case involving North Carolina's Rule 9(j), these Mission Defendants do not concede that *Pledger* forecloses the applicability of Rule 9(j) in this Case #3, and argue that that *Pledger* should be limited to its facts and that the proposed Second Amended Complaint would be dismissed, and that allowing it is therefore futile.

.

Respectfully submitted this the 9th day of May, 2022.

/ s/ Richard S. Daniels
N.C. Bar No. 8716
*Attorney for Defendants Robin Bryson, Mission Hospital, Inc. and ANC Healthcare, Inc.*
Patla, Straus, Robinson & Moore, P.A.
Post Office Box 7625
Asheville, North Carolina 28802
Telephone: (828) 255-7641
Facsimile: (828) 258-9222
rsd@psrmlaw.com (email)

---

[4] Richardson v Wellpath 2021 U.S. Dist. LEXIS 217516, 2021 WL 5235334 under the PLRA; Saylon v US 2021 U.S. Dist. LEXIS 138452, 2021 WL 3160425 under the FTCA; and Vickers v US 1:20-cv-00092 (WDNC 2021) under the FTCA.

# CERTIFICATE OF SERVICE

I hereby certify that on May 9, 2022, I served the foregoing *Response By Defendants Robin Bryson, Mission Hospital, Inc. And ANC Healthcare, Inc. To Plaintiff's Motion For Leave To File Second Amended Complaint* by electronically filing same with the Clerk of Court using the CM/ECF system and by depositing a copy, contained in a first-class postage-paid wrapper, into a depository under the exclusive care and custody of the United States Postal Service, addressed as follows:

**Bro. T. Hesed-El**
**c/o Taqi El Agabey Mgmt.**
**30 N. Gould Street, Suite R**
**Sheridan, WY 82801**


**Adam F. Peoples**
**Hall Booth Smith, P.C.**
**72 Patton Avenue**
**Asheville, NC 28801**
*Attorney for Mary Sterling Barlow*


This the 9th day of May, 2022.

    / s/ Richard S. Daniels
N.C. Bar No. 8716
*Attorney for Defendants Robin Bryson, Mission Hospital, Inc. and ANC Healthcare, Inc.*
Patla, Straus, Robinson & Moore, P.A.
Post Office Box 7625
Asheville, North Carolina 28802
Telephone: (828) 255-7641
Facsimile: (828) 258-9222
rsd@psrmlaw.com (email)