| | | |
|---|---|---|
| BRO T. HESED-EL | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | MEMORANDUM AND |
| v. | ) | RECOMMENDATION |
| | ) | |
| ROBIN BRYSON | ) | |
| *Licensed Clinical Social Worker,* | ) | |
| *in her individual and official capacity,* | ) | |
| MISSION HOSPITAL, INC., | ) | |
| ANC HEALTHCARE, INC., | ) | |
| ADAM HERZOG | ) | |
| *Employee of Mission Hospital* | ) | |
| *and/or ANC,* | ) | |
| STIRLING BARLOW | ) | |
| *Employee of Mission Hospital* | ) | |
| *and/or ANC,* | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

This matter is before the court on the following motions:

1. "Defendants Robin Bryson Mission Hospital, Inc. and ANC Healthcare, Inc.'s Motion to Take Judicial Notice" (the "Mission Defendants' First Motion for Judicial Notice," Doc. 12).[1]

2. "Motion to Dismiss Amended Complaint by Defendants Robin Bryson Mission Hospital, Inc. and ANC Healthcare, Inc" (the "Mission Defendants' Motion to Dismiss," Doc. 33).[2]

---

[1] Plaintiff has filed a response, and the Mission Defendants have filed a reply. Docs. 23, 26.

[2] In response to this filing, Plaintiff filed a Notice of Voluntary Dismissal (Doc. 37) as well as a Motion to Amend (Doc. 53). Attached to the Motion to Amend is an

3. Defendants Robin Bryson, Mission Hospital Inc.'s and ANC Healthcare, Inc.'s Second Motion to Take Judicial Notice (the "Mission Defendants' Second Motion for Judicial Notice," Doc. 35).

4. Plaintiff's Motion for Judicial Notice (Doc. 38).[3]

5. Plaintiff's Motion to Strike Defendants' Affirmative Defenses (the "Motion to Strike," Doc. 40).[4]

6. Plaintiff's Motion to Toll Statute of Limitations (the "Motion to Toll," Doc. 41).[5]

7. "Plaintiff's Motion to Clarify the Court's Order in Case No. 1" (the "Motion to Clarify," Doc. 42).[6]

8. Plaintiff's Motion for Leave to File Second Amended Complaint (the "Motion to Amend," Doc. 53).[7]

9. Defendant Mary Stirling Barlow's Motion to Dismiss Plaintiff's Amended Complaint ("Barlow's Motion to Dismiss," Doc. 60).[8]

10. "Adam Herzog's Motion to Dismiss for Improper Service of Process or, in the Alternative, Motion for Extension of Time to File His Response to the Plaintiff's Amended Complaint" ("Herzog's First Motion to Dismiss," Doc. 63).[9]

11. "Adam Herzog's Second Motion to Dismiss Plaintiff's Amended

---

"alternative" opposition to the Motion to Dismiss. Doc. 53-2. The Mission Defendants have filed a reply to this alternative opposition. Doc. 58.

[3] The Mission Defendants have filed a response. Doc. 45.

[4] The Mission Defendants have filed a response. Doc. 47.

[5] The Mission Defendants have filed a response. Doc. 48.

[6] The Mission Defendants have filed a response. Doc. 46.

[7] The Mission Defendants have filed a response. Doc. 57.

[8] Plaintiff has filed a response in opposition to this Motion, and Barlow has replied. Docs. 77, 76.

[9] Plaintiff has filed a response in opposition to this Motion. Doc. 68.

Complaint" ("Herzog's Second Motion to Dismiss," Doc. 74).[10]

A hearing was conducted in this matter on May 18, 2022, during which argument on certain of the above motions was presented. Following that hearing, the parties were granted leave to submit supplemental briefing on issues related to subject matter jurisdiction and Plaintiff's wish to proceed as "Bro T. Hesed-El." See Doc. 69. The parties' supplemental briefs have been filed, see Docs. 70, 71, 72, and the above motions are ripe for disposition.[11]

## I.   Relevant Procedural History

Plaintiff's claims arise from his purported involuntary commitment at Mission Hospital from approximately September 20, 2016 to October 6, 2016.

### A. Hesed El I

On September 23, 2019, Plaintiff, identifying himself only as "Confidential Plaintiff" or "CP," filed a complaint against "John Doe," "R.B.," "MHI," "Officer Doe," and "Paramedic Doe." See C.P. v. John Doe, et al., No. 1:19-cv-271-MR-WCM, United States District Court, Western District of North Carolina, Asheville Division ("Hesed El I").

---

[10] Plaintiff has filed a response, and Herzog has filed a reply. Docs. 78, 79.

[11] The undersigned is authorized to rule directly on the Motions for Judicial Notice and the Motion to Amend. However, as the pending motions are closely interconnected, the undersigned has issued this Memorandum and Recommendation with respect to all pending Motions.

3

On October 1, 2019, <u>Hesed El I</u> was dismissed by the District Court for lack of subject matter jurisdiction. <u>Hesed El I</u>, Doc. 6.

### B. <u>Hesed El II</u>

On October 7, 2019, Plaintiff filed a second action, <u>Bro. T. Hesed-El v. John Doe, Robin Bryson, Mission Hospital, Hospital Does 1-10, County of Buncombe</u>, No. 1:19-cv-285-MR-WCM, United State District Court, Western District of North Carolina, Asheville Division ("<u>Hesed El II</u>").

On October 9, 2020, the undersigned recommended, among other things, that Plaintiff's claims against Robin Bryson ("Bryson") and Mission Hospital ("Mission") pursuant to 42 U.S.C. § 1983 be dismissed because these defendants could not be considered state actors. <u>Hesed El II</u>, Doc. 63 at 15-18. The undersigned also recommended that Plaintiff's state law claims against Bryson and Mission be considered timely filed. <u>Id</u>. at 19-22.

On October 22, 2020, Plaintiff filed a Notice of Voluntary Dismissal, dismissing his claims against "John Doe, Robin Bryson, Mission Hospital, and Hospital Does 1-10…WITHOUT PREJUDICE." <u>Hesed El II</u>, Doc. 67 (emphasis in original).

On March 29, 2021, Plaintiff's remaining claims in <u>Hesed El II</u> were dismissed by the court, and the case was terminated. <u>Hesed El II</u>, Docs. 79, 80.

### C. <u>Hesed El III</u>

On October 18, 2021, Plaintiff filed the instant matter ("Hesed El III"), naming "John Doe (Individual Capacity), Hospital Does 1-20 (Individual and Official Capacity)" (collectively, the "John Doe Defendants"), Bryson, Mission, and ANC Healthcare, Inc. ("ANC") as defendants. Doc. 1.

On February 22, 2022, Plaintiff filed an Amended Complaint, adding claims against Stirling Barlow ("Barlow") and Adam Herzog ("Herzog"). Doc. 14. In the Amended Complaint, Plaintiff asserts the following claims:

|  | Lack of Informed Consent | Gross Negligence/Willful and Wanton Conduct | Negligent Infliction of Emotional Distress | Negligent Supervision and/or Training | Respondeat Superior |
|---|---|---|---|---|---|
| Herzog | X | X | X |  |  |
| Barlow | X | X | X |  |  |
| Bryson |  | X | X |  |  |
| John Doe Defendants |  | X[12] |  |  |  |
| Mission |  |  |  | X | X |
| ANC |  |  |  | X | X |

## II. The Motions to Dismiss

The various Motions to Dismiss raise issues regarding this court's subject matter jurisdiction, the ability of Plaintiff to proceed as "Bro. T. Hesed-

---

[12] The Amended Complaint is unclear as to claim(s) asserted against the John Doe Defendants. See Doc. 14. None of the subtitles for Plaintiff's claims reference the John Doe Defendants but his allegations suggest that he is attempting to include them in his claim for "Gross Negligence/Willful and Wanton Conduct." Id. at 15.

El," the timeliness of Plaintiff's claims, the adequacy of Plaintiff's allegations relative to his claims for intentional infliction of emotional distress and negligent infliction of emotional distress, and the necessity of a certification under Rule 9(j) of the North Carolina Rules of Civil Procedure. Additionally, Herzog's First Motion to Dismiss contends that Plaintiff's claims against Herzog should be dismissed for lack of service of process.

### A. Subject Matter Jurisdiction

#### 1. Plaintiff's Allegations

Plaintiff, who has brought only state law claims, contends that the court has federal subject matter jurisdiction over Hesed El III pursuant to 28 U.S.C. § 1332. See Docs. 1, 14 at 13-18. Although Defendants do not dispute that complete diversity exists with respect to those parties who have been fully identified,[13] Defendants argue that Plaintiff's naming of the John Doe Defendants precludes the exercise of diversity subject matter jurisdiction. See Docs. 33, 60-1, 75 at 9.

In determining whether diversity subject matter jurisdiction exists, courts consider the citizenship of the parties at the time of filing. Grupo

---

[13] In his original Complaint, Plaintiff alleged that he was domiciled in the "northwest region of Northwest Amexem, Washington state republic near Ellensburg [98926]," and provided North Carolina addresses for Bryson and Mission and a Florida address for ANC. Doc. 1. In his Amended Complaint, Plaintiff alleges that Bryson, Herzog, Barlow, Mission, and ANC are citizens of North Carolina, and that he is domiciled in Georgia. Doc. 14 at 7-8, 3.

<u>Dataflux v. Atlas Global Group, L.P.</u>, 541 U.S. 567, 570-571 (2004) ("This time-of-filing rule is hornbook law (quite literally) taught to first-year law students in any basic course on federal civil procedure. It measures all challenges to subject-matter jurisdiction premised upon diversity of citizenship against the state of facts that existed at the time of filing—whether the challenge be brought shortly after filing, after the trial, or even for the first time on appeal") (internal footnote omitted)).

Plaintiff's allegations regarding the John Doe Defendants are not sufficient to establish subject matter jurisdiction.

Citizenship cannot be premised solely on an allegation of residency. <u>Johnson v. Advance Am.</u>, 549 F.3d 932, 937 n. 2 (4th Cir. 2008) ("For purposes of diversity jurisdiction, residence is not sufficient to establish citizenship"). Additionally, citizenship should be affirmatively alleged and should not be inferred. <u>See</u> <u>Axel Johnson, Inc. v. Carroll Carolina Oil Co., Inc.</u>, 145 F.3d 660, 663 (4th Cir. 1988) ("the existence of such citizenship cannot be inferred from allegations of mere residence, standing alone"); <u>MB Realty Group, Inc. v. Dolgencorp, LLC</u>, No. GJH-19-2300, 2021 WL 2457151, at *4 (D. Md. June 16, 2021) ("[w]hen jurisdiction depends on diversity of citizenship, "citizenship should be 'distinctly and affirmatively alleged'"") (quoting <u>U.S. Agrisoil, LLC v. Kreloff</u>, No. JKB-20-2454, 2021 WL 409789, at *2 (D. Md. Feb. 5, 2021) and collecting cases from other circuits); <u>Meng v. Schwartz</u>, 305 F.Supp.2d 49, 55

7

(D.D.C. 2004) ("For purposes of establishing complete diversity under § 1332, the citizenship of each party to the action must be distinctly alleged and cannot be established presumptively or by mere inference"); Arnold v. NHC Healthcare/Bristol, LLC, No. 1:14CV00020, 2014 WL 2584664, at *2 (W.D. Va. June 10, 2014) ("where John Does are named, 'the action is subject to dismissal unless the John Does are eliminated or their citizenship affirmatively alleged'") (quoting Johnson v. Gen. Motors Corp., 242 F.Supp. 778, 779 (E.D. Va. 1965)).

Here, Plaintiff did not include a specific allegation regarding the citizenship of the John Doe Defendants in his original Complaint and alleged that the John Doe Defendants "reside" in North Carolina in his Amended Complaint. Doc. 1; Doc. 14 at 8.[14]

## 2. Plaintiff's Voluntary Dismissal

Plaintiff acknowledges that the inclusion of the John Doe Defendants "created a jurisdictional defect." Doc. 70 at 2. However, he argues that this defect was cured by his subsequent filing of a Notice of Voluntary Dismissal.

---

[14] Some authorities have noted that "subject to few exceptions, 'John Doe' defendants are not permitted in federal diversity suits." Sandoval v. Doe No. 1, et al., No. 5:20-cv-279-BO, 2022 WL 880732 (E.D.N.C. March 16, 2022) (quoting Howell by Goredt v. Trib. Ent. Co., 106 F.3d 215, 218 (7th Cir. 1997)). "Those exceptions include where an action has been removed from state court and where a Doe defendant is a nominal party," and a "quasi-exception which applies when the present domicile of a fugitive cannot be determined." Id. Plaintiff does not assert that any of these exceptions apply here.

Doc. 70 at 2; Doc. 37. In that Notice, Plaintiff stated that pursuant to Rule 41(a)(1) of the Federal Rules of Civil Procedure, he was dismissing "all claims against *all* Doe defendants of this action **with prejudice**." Doc. 37. (emphasis in original).[15]

Defendants argue that Plaintiff's dismissal of the John Doe Defendants was "ineffectual as a matter of law." <u>See</u> Doc. 71; Doc. 72, n. 1 (citing <u>Volvo Trademark Holding Aktiebolaget v. AIS Construction Equip. Corp.</u>, 162 F.Supp.2d 465, 472 (W.D.N.C. 2001) (holding that a Rule 41 dismissal of a party rather than an entire action is ineffectual as a matter of law; plaintiff should have proceeded under Rule 15)).

Rule 41(a)(1) of the Federal Rules of Civil Procedure provides, in relevant part, that a plaintiff "may dismiss an action without a court order by filing (i) a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment…." Rule 41(a)(2) allows the court to dismiss an action "at the plaintiff's request…on terms that the court considers proper." Unless stated otherwise, a dismissal under either of these provisions is without prejudice. Rule 41(a)(1)(B); 41(a)(2).

Courts in this district have approved the dismissal, pursuant to Rule 41,

---

[15] On April 21, 2022, Plaintiff filed the Motion to Amend, attaching a proposed Second Amended Complaint naming only Bryson, Mission, ANC, Herzog, and Barlow as defendants. Doc. 53-1.

of all claims against one or more defendants even though the entire action is not dismissed. See Burgess v. Eforce Media, Inc., No. 1:07-CV-231, 2007 WL 3355369 (W.D.N.C. Nov. 9, 2007) (approving stipulation to dismiss certain defendants under Rule 41(a)(2) and the inherent authority the Court); Synovus Bank v. Bokke IV L.L.C., No. 1:11-CV-00071-MR-DLH, 2014 WL 440244 (W.D.N.C. Feb. 4, 2014) (granting motion to dismiss claims against specific defendants); Bridgetree, Inc. v. Red F Marketing, LLC, No. 3:10-cv-228-FDW-DSC, 2011 WL 13223589, at *1 (W.D.N.C. Sept. 16, 2011) ("The greater weight of authority, however, maintains that contrary to its plain language, Rule 41(a) allows for dismissal of less than the entirety of an action"); but cf. Gahagan v. North Carolina Highway Patrol, No. Civ.1:00CV52, 2000 WL 33946065, at *2 (W.D.N.C. Oct. 25, 2000).

Other courts have also recognized that Rule 41(a) may be used to dismiss individual defendants from a multi-defendant case. See I.P. by Newsome v. Pierce, No. 5:19-CV-228-M, 2020 WL 5535428, at *2 (E.D.N.C. Sept. 15, 2020) (finding that "Rule 41(a) permits the voluntary dismissal of all claims against a particular defendant"); Duke Progress Energy LLC v. 3M Co., No. 5:08-CV-460-FL, 2015 WL 5603344, at *2 (E.D.N.C. Sept. 23, 2015) (stating that while there is a split of authority as to whether Rule 41(a) permits voluntary dismissal of fewer than all defendants, including among district courts within the Fourth Circuit, "'most federal courts agree that parties may voluntarily

dismiss from a case only certain defendants'" and that the "'sounder view' is that Rule 41(a) permits the voluntary dismissal of fewer than all defendants in an action"); see also City of Warren Police & Fire Ret. Sys. v. SCANA Corp., No. 3:18-509-MBS, 2019 WL 3780267, at *2 (D.S.C. Aug. 12, 2019) ("'the sounder view and the weight of judicial authority" allow a plaintiff to dismiss all claims against a defendant without dismissing the entire controversy") (quoting 9 Charles Alan Wright, et al., Federal Practice and Procedure, § 2362 (3d ed. 1998, Update 2019)).

Therefore, Plaintiff's Notice of Voluntary Dismissal was not improper because it attempted to dismiss some defendants and not others.

### 3. The Effect of Plaintiff's Voluntary Dismissal on Subject Matter Jurisdiction

Plaintiff contends that even if his Notice of Voluntary Dismissal was improper, "Rule 21 would have permitted the Court to dismiss them on motion or on its own." Doc. 70 at 2. Accordingly, "to the extent the John Does are still defendants in this action," Plaintiff asserts the court "could drop them consistent with Plaintiff's Notice of Voluntary Dismissal." Id. Defendants contend that although the court has the discretion to sever the claims against the John Doe Defendants pursuant to Rule 21 of the Federal Rules of Civil Procedure, it should decline to exercise that authority here. See Docs. 71, 72.

Rule 21 of the Federal Rules of Civil Procedure provides that the court

11

"may, at any time, on just terms, add or drop a party. The court may also sever any claim against a party." "[I]t is well settled that Rule 21 invests district courts with authority to allow a dispensable nondiverse party to be dropped at any time, even after judgment has been rendered." <u>Grupo Dataflux</u>, 541 U.S. at 572-573; <u>see also</u> <u>Pannell v. Scruggs</u>, No. 1:18-cv-00271-MR-WCM, 2020 WL 5095590 at *2 (W.D.N.C. Aug. 28, 2020) ("Even when there is no subject matter jurisdiction on the basis of diversity at the time of filing, jurisdiction can be salvaged by dismissing a non-diverse party, even after the entry of judgment in certain circumstances, such as when it is a dispensable party"); <u>Tinsley v. Streich</u>, 143 F.Supp.3d 450, 462 (W.D. Va. 2015) (Rule 21 "provides federal courts with the discretion to drop non-diverse parties in order to achieve complete diversity, as long as that party is not indispensable under Rule 19....") (citing <u>Koehler v. Dodwell</u>, 152 F.3d 304, 308 (4th Cir. 1988)); <u>Levisa Coal Co. v. Consolidation Coal Co.</u>, No. 19CV00117, 2001 WL 515262, at *4 (W.D. Va. Jan. 30, 2001) ("federal district courts may cure defects in diversity as opposed to dismissing an action for lack of jurisdiction. However, the court has discretion, and it does not follow as a matter of right that the court should cure defects in diversity at the mere desire of the plaintiff") (internal quotations omitted).

While controlling Fourth Circuit authority specifically holding that a plaintiff may unilaterally dismiss a non-diverse defendant in order to cure a

defect in diversity jurisdiction has not been cited or located, other courts have allowed such a procedure. See Rummer v. OKT Resources, LLC, No. CIV–14–1205–M, 2015 WL 1569084, at *2 (W.D. Okl. April 8, 2015) ("Because plaintiff dismissed his claims against [the non-diverse defendant] before defendants filed any answer or summary judgment motion, [the non-diverse defendant] was dismissed from this case, as a matter of right, upon plaintiff filing his notice of dismissal. Accordingly, the Court finds that it has subject matter jurisdiction over this matter because there is complete diversity of citizenship between the remaining parties") (citing Chau Van Nguy v. Sawyer, No. CIV.A. 12–808–JJB, 2013 WL 4538203, at *2 (M.D. La. Aug. 27, 2013) (finding although there was no complete diversity at the time the case was originally filed, plaintiff's voluntary dismissal of non-diverse defendants pursuant to Rule 41(a)(1)(A) while defendants' motion to dismiss for lack of subject matter jurisdiction was pending cured the jurisdictional defect); Belleville v. Cottrell Auto Handling Corp., No. 09–CV–962–JPG–CJP, 2009 WL 5030757, at *1 (S.D.Ill.Dec. 16, 2009) ("a proper Rule 41(a)(1)(A)(i) notice of dismissal obviates the need for inquiry into the Court's subject matter jurisdiction as to the matters dismissed"); Guigliano v. Danbury Hosp., 396 F.Supp.2d 220, 224 (D.Conn.2005) ("a plaintiff may use Rule 41 to dismiss a nondiverse party provided the party has not yet served an answer or motion for summary judgment"); see also Amason & Associates, Inc. v. Columbus Land

13

Development, LLC, No. 7:12–cv–02459–JHE, 2014 WL 467509, at *4 (N.D. Ala. Feb. 5, 2014) ("Rule 21 governs the misjoinder and nonjoinder of parties and provides that '[o]n motion or on its own, the court *may* at any time, on just terms, add or drop a party.' (emphasis added). This rule certainly provides an avenue for a party to file a motion to drop a dispensable party from an action when that party's presence in the action may divest the Court of jurisdiction. Nothing in Rule 21, however, requires a party to use Rule 21 or prevents a party from filing a timely motion pursuant to Rule 41 to dismiss a non-diverse defendant") (internal citations omitted)).

Further, even if Plaintiff could not unilaterally dismiss the John Doe Defendants and the Notice of Voluntary Dismissal was instead construed as a motion seeking dismissal of the John Doe Defendants by court order pursuant to Rule 21, the undersigned would find such a dismissal appropriate here. During the May 18 hearing, Plaintiff stated that he believed the John Doe Defendants were nominal or dispensable parties, and dismissing these parties would otherwise be consistent with Rule 21. See also Doc. 70 at 2 (Plaintiff's supplemental brief) (referring to the John Doe Defendants as "dispensable").[16]

---

[16] In Sandoval, the court found that allowing jurisdictional discovery to determine the citizenship of fictitious defendants was erroneous, because citizenship must be "established at the time a case is filed." 2022 WL 880732, at *3. There however, it appears that plaintiff named only "John Doe" defendants in his complaint and sought to conduct pre-service discovery to ascertain the identities of those defendants and maintain claims against each of them. Here, as discussed above, Plaintiff has

Accordingly, to the extent the Motions to Dismiss (Docs. 33, 60, 74) are based on an alleged lack of subject matter jurisdiction, the undersigned will recommend that the Motions be denied.

## B. Plaintiff's Name

The parties have spent a great deal of time discussing how Plaintiff has identified himself in this matter. <u>See</u> Docs. 12, 33, 42, 53, 75. The Mission Defendants and Herzog argue that, despite an October 1, 2019 Order entered in <u>Hesed El I</u>, which required Plaintiff (who was then proceeding as "Confidential Plaintiff") to use his "full name," Plaintiff has improperly continued to proceed under a pseudonym, to the point that Plaintiff's claims should be dismissed. <u>See</u> Doc. 34 at 15 ("Plaintiff should be held accountable for his violations of Rule 10(a) and the Orders of this Court, and this action should now be dismissed accordingly"); Doc. 75 at 9. The October 1 Order advised as follows:

> The Federal Rules of Civil Procedure require that a civil complaint disclose the identities of all the parties involved. See Fed. R. Civ. P. 10(a). The Fourth Circuit has recognized that "in exceptional circumstances, compelling concerns relating to personal privacy or confidentiality may warrant some degree of anonymity in judicial proceedings, including use of a pseudonym." <u>Doe v. Public Citizen</u>, 749 F.3d 246, 273 (4th Cir. 2014). Because the use of pseudonyms in litigation undermines the public's right of access to judicial

---

voluntarily dismissed his claims against the John Doe Defendants with prejudice, and it appears that the remaining defendants are completely diverse from Plaintiff.

proceedings, however, allowing a litigant to proceed by pseudonym is a "rare dispensation." <u>James v. Jacobson</u>, 6 F.3d 233, 238 (4th Cir. 1993). Thus, "when a party seeks to litigate under a pseudonym, a district court has an independent obligation to ensure that extraordinary circumstances support such a request by balancing the party's stated interest in anonymity against the public's interest in openness and any prejudice that anonymity would pose to the opposing party." <u>Public Citizen</u>, 749 F.3d at 274.

The Plaintiff has shown no "extraordinary circumstances" here. The Plaintiff contends that the use of a pseudonym is necessary in order to "protect [his] privacy, prevent embarrassment, and safeguard him from any potential loss of employment...." [Doc. 1 at 3]. But these stated privacy concerns are present in nearly every type of civil litigation. On the other hand, the Court recognizes that there is a strong public interest in maintaining open court proceedings. Further, allowing this litigation to proceed anonymously would pose great prejudice to the Defendants. Balancing these competing interests, the Court concludes that the Plaintiff's stated interest in privacy and confidentiality are substantially outweighed by the public's interest in open judicial proceedings and the prejudice that would result to the Defendants. Therefore, the Plaintiff will not be permitted to proceed in this matter anonymously. Rather, the Plaintiff will be required to use his full name, and the full names of any identified Defendants, in any future pleadings.

<u>Hesed El I</u>, Doc. 6.

During the May 18 hearing in <u>Hesed El III</u>, Plaintiff confirmed that the information appearing in his "Affidavit Clarifying Identity," including an exhibit to that filing entitled "Final Decree Changing the Name of an Adult," was correct. <u>See</u> Docs. 29, 29-1. The Final Decree provides that on May 20,

2015, "Stephen Anthony Lee" legally changed his name to "Taqi Eyr Hhamul Hesed El." Doc. 29-1.

As noted above, Plaintiff has filed this matter as "Bro. T. Hesed-El," which Plaintiff contends is an abbreviated version of his legal name in keeping with his religious custom. Doc. 14 at 7; Doc. 70 at 3, n. 2 ("It is Plaintiff's religious custom to abbreviate his first name and hyphenate his middle name with his surname"). For purposes of the instant Motions, the undersigned has accepted Plaintiff's representations regarding the significance of the abbreviated version of his name. See e.g. Thacker v. Dixon, 784 F.Supp. 286, 292 (E.D.N.C. 1991) ("The subjective question of a party's sincerity [relative to plaintiff's conversion to Islam and adoption of an Arabic name], like any other mental state, is generally inappropriate for resolution at summary judgment...").

Nonetheless, given the confusion surrounding Plaintiff's name and identity, including as discussed by Defendants during the May 18 hearing, the undersigned concludes that Plaintiff should be required to use his full name in this matter, as described previously in the October 1 Order, while also referencing the shortened form of his name—specifically, that Plaintiff be required to proceed in this matter as "Taqi Eyr Hhamul Hesed El a/k/a 'Bro. T. Hesed-El.'" See U.S. v. Bowman, No. 5:01CR33-RLV, 2013 WL 2634404 (W.D.N.C. June 12, 2013) (denying defendant's motion for the court to effect a

legal name change, but granting defendant's request that the court and the Bureau of Prisons "recognize *both* his committed name and his newly adopted Islamic name…").

Accordingly, the undersigned will recommend that Plaintiff's Motion to Clarify (Doc. 42), which seeks to "clarify" the October 1 Order entered in <u>Hesed El I</u> (a separate matter which itself has now been closed) be denied. Further, to the extent the Mission Defendants' Motion to Dismiss and Herzog's Second Motion to Dismiss seek dismissal based on Plaintiff's failure to proceed using his full name, the undersigned will recommend that such Motions (Docs. 33, 74) be denied.

### C. Timeliness of Plaintiff's Claims

In <u>Hesed El II</u>, the undersigned, "taking the allegations in the light most favorable to Plaintiff," found that the three-year statute of limitations applicable to Plaintiff's state law medical malpractice claims began to run on October 6, 2016 – the date Plaintiff was released from involuntary commitment — and expired three years later on October 7, 2019. <u>Hesed El II</u>, Doc. 63 at 21 (analyzing the appropriate accrual date with respect to Plaintiff's claims). Accordingly, the undersigned concluded that Plaintiff's October 7, 2019 filing of <u>Hesed El II</u> was timely. <u>Id</u>. at 21-22.

In their Motion to Dismiss, the Mission Defendants argue that Plaintiff's claims against ANC are barred by the three-year statute of limitations. Doc.

33.[17] Barlow's Motion to Dismiss and Herzog's Second Motion to Dismiss also challenge the timeliness of Plaintiff's claims. Docs. 60, 74.

Plaintiff has responded to these arguments and has also filed the Motion to Toll (Doc. 41) and the Motion to Strike (Doc. 40). However, Plaintiff does not contest Defendants' position that a three-year limitations period applies to all of his claims.

### 1. Plaintiff's Motion to Toll

In his Motion to Toll (Doc. 41), Plaintiff argues that the court should enter an order tolling the statute of limitations for his claims until January 17, 2019. Plaintiff contends that such tolling is appropriate because "he was not in possession of the necessary facts or specific information that would have revealed the harm caused by Robin Bryson and Adam Herzog until the [state] court unsealed and released its records on January 17, 2019." Doc. 41 at 1. Plaintiff made this same argument in <u>Hesed El II</u>. There, the undersigned stated:

> In his Motion to Toll, Plaintiff argues that "equitable tolling is appropriate as to all claims from 09/20/2016 through 01/17/2019" because it was not until January 17, 2019 that he was "in possession of the critical facts relative to his claims." Doc. 35, pp. 7-8.
>
> "Equitable tolling applies only in "those rare instances where—due to circumstances external to the

---

[17] The Mission Defendants do not argue in that Plaintiff's claims against Mission and Bryson are untimely.

[Plaintiffs'] own conduct—it would be unconscionable to enforce the limitation against the [Plaintiffs]." Land v. Green Tree Servicing, LLC, 140 F.Supp.3d 539, 547 (D.S.C. 2015) (quoting Harris v. Hutchinson, 209 F.3d 325, 330 (4th Cir.2000)) (alternations in Land). The doctrine of equitable tolling has been applied when a plaintiff was prevented from asserting his or her claims by a defendant's wrongful conduct or when extraordinary circumstances beyond a plaintiff's control made it impossible for the plaintiff to file his or her claims on time. Harris, 209 F.3d at 330.

In this case, Plaintiff argues that the statutes of limitation should be deemed tolled for an extended period—approximately two years and four months, from September 20, 2016 through January 17, 2019. However, while the record indicates that Plaintiff was obtaining information during this time,[18] Plaintiff has not provided sufficient evidence to demonstrate that either Defendants' conduct or extraordinary circumstances beyond Plaintiff's control made it impossible for him to file his claims on time. Indeed, [Hesed El I] was filed in September of 2019 and his original Complaint in this matter was filed on October 7, 2019.

Accordingly, the undersigned will recommend that "Plaintiff's Motion for Equitable Tolling Under the Principles of Disability, Continuation, and Extraordinary Circumstances" (Doc. 35) be denied.

Hesed El II, Doc. 63 at 24-26.[19]

---

[18] "Plaintiff states that he received medical records from Mission Hospital on October 2, 2018 (Doc. 16, p. 2), that state court records related to his commitment proceedings were released to him on January 17, 2019 (Doc. 8-1, ¶ 4), and that he received a response to his public records request directed to the County on January 24, 2019. Doc. 16, p. 3; see also Doc. 28, p. 11." Hesed El II, Doc. 63 at 25 n. 9.

[19] As stated above, Plaintiff ultimately filed a notice of voluntary dismissal dismissing all of his claims against Bryson and Mission. The voluntary dismissal was filed on

For the above reasons, tolling of the statute of limitations in this matter would likewise be inappropriate and therefore the undersigned will recommend that Plaintiff's Motion to Toll (Doc. 41) be denied.

## 2. Claims Against ANC

Rule 41(a) of the North Carolina Rules of Civil Procedure provides that: "If an action commenced within the time prescribed therefor, or any claim therein, is dismissed without prejudice under this subsection, a new action based on the same claim may be commenced within one year after such dismissal…." (N.C. St. R.C.P. § 1A-1, the "Savings Provision"). "[T]he 'savings provision' of Rule 41 allows parties to 'dismiss an action that originally was filed within the statute of limitations and then refile the action after the statute of limitations ordinarily would have expired.'" Midland National Life Ins. Co. v. Long by and through Sherrill, No. 3:18-cv-00672-FDW-DSC, 2021 WL 3476139 at *4 (W.D.N.C. Aug. 6, 2021) (quoting Clark v. Visiting Health Prof., 524 S.E.2d 605, 607 (N.C. Ct. App. 2000), disc. rev. denied, 543 S.E.2d 867 (N.C. 2000)).[20]

---

October 22, 2020, prior to the District Court's consideration of the undersigned's Memorandum and Recommendation. With respect to his claims against Buncombe County, the District Court accepted the recommendation and denied Plaintiff's motion for equitable tolling. Hesed El II, Doc. 79 at 6.

[20] The purpose of the Savings Provision "is to provide a one-time opportunity where the plaintiff, for whatever reason, does not want to continue the suit." Brisson v. Kathy A. Santoriello, MD, PA, 351 N.C. 589, 597 (2000). Here, no party contends that

Federal subject matter jurisdiction in both <u>Hesed El II</u> and <u>Hesed El III</u> was premised on diversity, and therefore the Savings Provision may – if appropriate – apply to Plaintiff's claims. See <u>Morgan v. Allstate Property and Cas. Ins. Co.</u>, No. 1:19 CV 345, 2020 WL 9848708 at *2 (W.D.N.C. April 13, 2020) ("A federal court sitting in diversity applies the substantive law of the forum state, including state statutes of limitations"), recommendation adopted, 2020 WL 2091072 (W.D.N.C. April 29, 2020); <u>U.S. ex rel. Martin Marietta Materials, Inc. v. DTC Engineers & Constructors, LLC</u>, No. 5:11-CV-111-F, 2012 WL 2311491, at *4 (E.D.N.C. June 18, 2012) ("[D]istrict courts sitting in North Carolina have long recognized the applicability of the savings provision under Rule 41(a) of the North Carolina Rules of Civil Procedure to actions recommenced in federal court, so long as the case was before the district court on diversity jurisdiction"); <u>see also</u> <u>Estate of Cox by and through Cox v. McDonald</u>, 1:18-cv-144, 2018 WL 3594999, at *2 (W.D.N.C. July 25, 2018) (applying one-year savings provision where plaintiffs filed a stipulation of voluntary dismissal of their first federal court §1983 action and then refiled their second federal court §1983 action exactly one year later).

Plaintiff filed <u>Hesed El II</u> on October 7, 2019.[21]

the dismissal by the court of <u>Hesed El I</u> precludes the possible application of the Savings Provision in <u>Hesed El III</u>.

[21] As noted above, the undersigned previously found Plaintiff's claims against Bryson and Mission in that action to be timely. <u>Hesed El II</u>, Doc. 63.

On October 22, 2020, Plaintiff filed a Notice of Voluntary Dismissal as to "Defendants John Doe, Robin Bryson, Mission Hospital, and the Hospital Does 1-10." <u>Hesed El II</u>, Doc. 67.

Nearly one year later, on October 18, 2021, Plaintiff filed the instant suit, naming ANC as a defendant, in addition to Bryson and Mission. Plaintiff argues that the Savings Provision renders his claims against ANC timely.

"To benefit from the one year extension of the statute of limitation, the second action must be substantially the same, involving the same parties, the same cause of action, and the same right...." <u>Cherokee Ins. Co. v. R/I, Inc.</u>, 97 N.C.App. 295, 297 (1990) (internal quotations omitted) (affirming summary judgment on timeliness grounds because the "defendants are distinct and separate corporate entities, and the fact that they share an address and directors and officers is immaterial").

Here, the parties dispute whether ANC and Mission are separate parties. The Mission Defendants argue that ANC is the "parent corporation" of Mission and is a separate and distinct entity. <u>See</u> Doc. 34 at 17; <u>see also</u> Doc. 57 at 2. In response, Plaintiff argues that he has alleged sufficiently that ANC and Mission are the same entity. <u>See</u> Doc. 53-2 at 10.

Both sides ask that the court, in considering this issue, take judicial notice of facts drawn from documents obtained from the North Carolina Secretary of State's corporate database. <u>See</u> Doc. 35-2 (attached to the Mission

Defendants' Second Motion for Judicial Notice); Doc. 38-1 (attached to Plaintiff's Motion for Judicial Notice). These documents indicate that ANC was formed on October 7, 1981, that Mission was formed on May 22, 1951, and that, although the two entities previously had similar legal names, they did not share any identical previous legal names. Docs. 35-2; 38-1. The undersigned finds that it is appropriate to consider these documents, and has done so. See e.g. Bright-Jamison v. Haq, No. 9:21-2246-RMG, 2021 WL 3711132, at *1 (D.S.C. Aug. 20, 2021) (taking judicial notice of the corporate status of defendant based on the official records of the South Carolina Secretary of State); Hart v. Pacific Rehab of Maryland, No. ELH-12-2608, 2013 WL 5212309, *7 (D. Md. Sept. 13, 2013) (taking judicial notice of documents found on the Maryland Department of Assessment and Taxation's website relevant to party's corporate status).

Based on the information currently of record, the undersigned is not persuaded that Mission and ANC should be considered to be the same party such that the Savings Provision renders Plaintiff's claims against ANC timely.

Plaintiff did not mention or name ANC as a defendant in Hesed El II. Hesed El II, Docs. 1 and 8; see also Hesed EL II, Doc. 17-1.

In his original Complaint in Hesed El III, Plaintiff named ANC but did not assert any claims against it or explain ANC's relationship to the other defendants. See Doc. 1.

In his Amended Complaint in <u>Hesed El III</u>, Plaintiff alleged that ANC is the "parent company and overseer" of Mission and that ANC "created, supervised, encouraged, guided, directed, aided, abetted, and/or approved of all training programs, policies, procedures, and employment decisions of Mission Hospital." Doc. 14 at 4, 12. Plaintiff also makes the seemingly contradictory assertion that ANC and Mission are "very likely" the same entity. <u>See</u> Doc. 53-2 at 10; <u>see also</u> Doc. 40 at 2 ("It is more likely than not that Mission is merely one [of] the arms that comprise ANC's sprawling body. Upon information and belief, Mission is ANC's alter ego, a mere instrumentality"). That is, while Plaintiff makes generalized and conclusory allegations about ANC's oversight of Mission and that ANC and Mission are the same entity, he also alleges that ANC is the parent corporation (i.e., a separate entity). Further, the corporate filings upon which both Plaintiff and the Mission Defendants rely indicate that Mission and ANC are separate corporate entities.

Accordingly, the undersigned will recommend that the Mission Defendants' Motion to Dismiss be granted in part, and that the claims against ANC be dismissed as untimely. As Plaintiff's Motion to Strike requests that the court strike the "the affirmative defense of the statute of limitations from [the Mission Defendants' Motion to Dismiss]," the undersigned will recommend that the Motion to Strike (Doc. 40) be denied.

3.     **Barlow's Motion to Dismiss and Herzog's Second**

## Motion to Dismiss

As discussed above, Plaintiff filed Hesed El II on October 7, 2019, the last day of the limitations period. Hesed El II, Doc. 1. Plaintiff did not reference Barlow or Herzog by name in that complaint. Id.

On April 13, 2020, Plaintiff sought leave to file an amended complaint in Hesed El II. Hesed El II, Doc. 17. That proposed pleading included allegations that "Hospital Doe 1" "drew [Plaintiff's] blood without consent" and that "Hospital Doe 2" "secretly tranquilized Plaintiff without his consent." Hesed El II, Doc. 17-1 at 21.[22]

On October 18, 2021, Plaintiff filed his original Complaint in Hesed El III. Doc. 1. In his "Statement of Claim," Plaintiff asserted that Barlow and Herzog "were negligent in using a therapeutic restraint to extract Plaintiff's bodily fluids against his will and forcing medications upon Plaintiff without giving him an opportunity to give expressed consent." Doc. 1 at 4. Plaintiff did not, however, name Barlow or Herzog *as defendants* in that Complaint.

On February 22, 2022, Plaintiff filed an Amended Complaint which named Barlow and Herzog as defendants for the first time. Doc. 14.[23]

Both Barlow and Herzog argue that all of Plaintiff's claims against them

---

[22] Plaintiff's Motion for Leave to Amend was denied on October 9, 2020. Hesed El II, Doc. 62.

[23] It appears that Barlow and Herzog are the "Hospital Does" referenced in Plaintiff's proposed amended complaint in Hesed El II.

are barred by the statute of limitations. Docs. 60, 75. The undersigned agrees.

Courts have held that the naming of fictitious defendants does not toll the statute of limitations as to such defendants. See Huggard v. Wake County Hospital Ssytem, Inc., 102 N.C.App. 772, 571 (1991) (holding that N.C.G.S. § 1-166, which allows a plaintiff to name "John Doe" defendants is not a tolling statute, and therefore plaintiff's claim against one of decedent's doctors, who was not named in the place of a John Doe defendant until after the running of the statute of limitations, was barred); Lee v. City of Fayetteville, No. 5:15-cv-638-FL, 2016 WL 1266597, at *7 (E.D.N.C. March 30, 2016) ("because plaintiff used the placeholder 'John Doe,' in lieu of the allegedly liable individual, tolling is not available in this case"); Vaughn v. Foltz, No. 2:16-cv-61-FL, 2019 WL 1265055, at *8 (E.D.N.C. March 19, 2019) (same). Accordingly, to the extent that Herzog and Barlow are two of the fictitious defendants Plaintiff previously named, such naming did not toll the limitations period for Plaintiff's claims against them.

Further, although Plaintiff contends that his original Complaint in Hesed El III gave Barlow and Herzog "actual and constructive notice" of his claims against them, see Doc. 77 at 1, Plaintiff did not name either Herzog or Barlow as defendants in that pleading.

Additionally, and as discussed above, the undersigned is not persuaded

that equitable tolling should apply to any of Plaintiff's claims.[24]

Finally, with respect to Plaintiff's claims against Herzog, the undersigned is not convinced that Herzog has waived a statute of limitations defense. See Doc. 78 at 2-3. Although Herzog's First Motion to Dismiss did not raise the statute of limitations issue, that Motion was filed after his counsel filed a "Notice of Limited Appearance" stating that Herzog did "not waive any defenses, counterclaims, or crossclaims in this matter." Doc. 62. Further, even if Herzog had not asserted a statute of limitations defense in his Second Motion to Dismiss, he could have raised that defense subsequently in a responsive pleading. See F.R.C.P. 8(c); F.R.C.P. 12(a)(4)(A); see also Santos v. District Council of New York City and Vicinity of United Bros. of Carpenters and Joiners of America, AFL-CIO, 619 F.2d 963, 967 (2d Cir. 1980) (The statute of limitations defense need not be raised in a pre-answer motion. Rather, under Fed.R.Civ.P. 8(c), the statute of limitations constitutes an affirmative defense, to be asserted in a responsive pleading"); Tahoe-Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency, 992 F.Supp. 1218, 1125 (D. Nev. 1998)

---

[24] Plaintiff does not argue that his claims against Barlow and Herzog "relate back" to the filing of his original Complaint. See Vaughn, 2019 WL 1265055, at *9 ("It is well-settled in this circuit that plaintiff should not be permitted to amend her complaint to remove the John Doe defendants and substitute real parties, because their lack of knowledge of the proper defendants is not considered a 'mistake' under Rule 15(c)(3)") (citing Locklear v. Bergman & Beving AB, 457 F.3d 363, 366–67 (4th Cir. 2006)).

("the fact that the defense may be raised in a pre-answer motion does not necessarily mean that it must be"), affirmed in part, reversed in part, 216 F.3d 764 (9th Cir. 2000), overruled on other grounds by Gonzalez v. Arizona, 677 F.3d 383 (9th Cir. 2012)).[25]

Consequently, the undersigned will recommend that Barlow's Motion to Dismiss (Doc. 60) and Herzog's Second Motion to Dismiss (Doc. 74) be granted, and that Plaintiff's claims against Barlow[26] and Herzog be dismissed as untimely.[27]

### D. Failure to State a Claim

#### 1. Plaintiff's Intentional Infliction of Emotional Distress and Negligent Infliction of Emotional Distress Claims

The Mission Defendants' Motion to Dismiss argues that Plaintiff has failed to state a claim for either intentional or negligent infliction of emotional

---

[25] In any event, Plaintiff has been given an opportunity to respond to Herzog's arguments regarding the statute of limitations.

[26] Considering this recommendation, the undersigned does not reach Barlow's additional argument that Plaintiff has failed to state a claim against her for lack of informed consent, gross negligence/willful and wanton conduct, or negligent/intentional infliction of emotional distress. Doc. 60-1 at 5-10.

[27] In his First Motion to Dismiss, Herzog argues that Plaintiff's claims against him should be dismissed for improper service of process pursuant to Rule 12(b)(5) and 12(b)(2). Doc. 63. During the May 18 hearing, counsel for Herzog indicated that the First Motion to Dismiss may be moot due to recent service upon Herzog. Also on May 18, Plaintiff filed a response to Herzog's Motion to Dismiss, attaching Proof of Service relative to Herzog. Doc. 68-1. In light of Plaintiff's filing of the Proof of Service and the filing of Herzog's Second Motion to Dismiss, the undersigned will recommend that Herzog's First Motion to Dismiss be denied as moot.

distress against Bryson. See Doc. 34 at 18-20.

### a. Intentional Infliction of Emotional Distress

Neither Plaintiff's Amended Complaint nor his proposed Second Amended Complaint include an express claim for intentional infliction of emotional distress, see Doc. 14; Doc. 53-1, though Plaintiff does allege in his Amended Complaint that the actions of Bryson, Herzog, and Barlow "demonstrate willful misconduct, malice, wantonness, and oppression which raises the presumption of conscious indifference to the consequences." Doc. 14 at 17.

Further, during the May 18 hearing, Plaintiff stated that he wished to "drop" his claim for intentional infliction of emotional distress.

Accordingly, to the extent Plaintiff has made a claim for intentional infliction of emotional distress, the undersigned will recommend that such claim against Bryson be dismissed.

### b. Negligent Infliction of Emotional Distress

To state a claim for negligent infliction of emotional distress, a plaintiff must show that the defendant: "(1) negligently engaged in conduct, (2) which would reasonably and foreseeably cause [p]laintiff's severe emotional distress, and (3) which did, in fact, cause severe emotional stress...." Johnson v. Kmart Corp., No. 5:07–CV–84, 2008 WL 4346450, at *6 (E.D.N.C. Sept. 16, 2008) (quoting Faulkner v. Tyco Electronics Corp., 552 F.Supp.2d 546, 559 (M.D.N.C.

2008) (some citations omitted)).

The Mission Defendants argue that Plaintiff has failed to allege adequately that Bryson's actions caused "severe emotional distress." Additionally, they contend that Plaintiff has failed to allege sufficient foreseeability, because any recommendation by Bryson that Plaintiff be involuntarily committed would need to be, pursuant to North Carolina's statutory scheme, reviewed by an independent physician after an examination. See Doc. 34 at 19; Doc. 58 at 4-5.

North Carolina courts define "severe emotional distress" as an "emotional or mental disorder, such as, for example, neurosis, psychosis, chronic depression, phobia or any other type of severe and disabling emotional or mental condition ..." Johnson v. Ruark Obstetrics & Gynecology Assoc., 327 N.C. 283, 304 (1990).

Plaintiff has alleged generally that he suffered from "severe mental and emotional pain." Doc. 14 at 16; see also id. at 13 (alleging he "incurred medical expenses and loss of peace of mind"). Although Plaintiff does not allege a specific type of emotional or mental condition and recognizing Defendant's assertion that Plaintiff's continued involuntary commitment would involve a physician's examination, considering Plaintiff's *pro se* status, and based on the factual allegations set out in his Amended Complaint, the undersigned will not recommend dismissal of this claim on at these bases.

Accordingly, the undersigned will recommend that the Mission Defendants' Motion to Dismiss, to the extent it seeks dismissal of Plaintiff's claim of negligent infliction of emotional distress against Bryson be denied.

## 2. 9(j) Requirement

In his original Complaint, Plaintiff included a "Rule 9(j) Certification" stating that "[t]he medical care and all medical records pertaining to the alleged negligence that are available to the plaintiff after reasonable inquiry have been reviewed by a person who is reasonably expected to qualify as an expert witness...and who is willing to testify that the medical care did not comply with the applicable standard of care." Hesed El III, Doc. 1 at 5. Plaintiff included the same "Rule 9(j) Certification" in his Amended Complaint. Hesed El III, Doc. 14 at 5.

The Mission Defendants reference the certification included in Plaintiff's Amended Complaint and contend that this certification was "untimely." Doc. 34 at 23. While these defendants recognize that the Fourth Circuit's decision in Pledger v. Lynch, 5 F.4th 511 (4th Cir. 2021) "appears to have jeopardized the applicability of Rule 9(j) in Federal Court," they "nevertheless… argue that Pledger should be limited to its facts and that it is therefore inapplicable here." Doc. 34 at 23.

As an initial matter, it is not clear whether the Mission Defendants dispute that the certification included in the original Complaint was timely.

Regardless, considering <u>Pledger</u> and subsequent case law, even if Plaintiff had failed to include a Rule 9(j) certification, dismissal would not be required. <u>See</u> <u>Vickers v. United States</u>, No. 1:20-cv-00092-MR-WCM, 2021 WL 5769991, at *10 (W.D.N.C. Dec. 6, 2021) ("In light of <u>Pledger</u>, N.C. Rule 9(j) does not apply in federal court") (citing <u>Saylon v. United States</u>, No. 5:20-CV-176-FL, 2021 WL 3160425 at *4 (E.D.N.C. July 26, 2021) ("Under the reasoning of Pledger, Rule 9(j) is not a substantive requirement for a medical malpractice claim, but rather a heightened pleading requirement which this court cannot apply in federal court to a FTCA claim"); <u>Richardson v. Wellpath Health Care</u>, No. 1:20-CV-777, 2021 WL 5235334 at *11 (M.D.N.C. Nov. 10, 2021) (recommending against dismissal of the plaintiff's medical malpractice case, in part, because <u>Pledger</u> has "rendered Rule 9(j) a nullity in federal court")).

## III.  Requests for Judicial Notice

The Motions for Judicial Notice request that the court take judicial notice of certain facts relative to Plaintiff's name, involuntary commitment procedures in North Carolina, and the corporate status of Mission and ANC. <u>See</u> Docs. 12, 35, 38.

The undersigned has considered documents relied upon by the parties relevant to the corporate status of ANC and Mission and documents that provide background information regarding Plaintiff's true name, and also

acknowledges the North Carolina statutes relative to involuntary commitment. Otherwise, it is unnecessary to take judicial notice of the remaining documents or related facts and the undersigned will recommend that the Motions be denied in those respects.

## IV.   Plaintiff's Motion to Amend

By his Motion to Amend (Doc. 53), Plaintiff seeks leave to file a Second Amended Complaint. Doc. 53-1. Plaintiff's proposed pleading includes reference to his full legal name, deletes his claims against the John Doe Defendants, and continues to name Bryson, Mission, ANC, Herzog, and Barlow as defendants.

When reviewing requests for leave to amend, courts are guided by Rule 15(a) of the Federal Rules of Civil Procedure, which provides that leave to amend should be freely given when justice so requires, and "by the general policy embodied in the Federal Rules favoring resolution of cases on their merits." Davis v. Piper Aircraft Corp., 615 F.2d 606, 613 (4th Cir. 1980), cert. denied, 448 U.S. 911 (1980). "In the absence of any apparent or declared reason such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc. the leave sought should as the rules require, be 'freely given.'" Forman v. Davis, 371, U.S. 178, 182 (1962); Equal Rights Ctr.

v. Niles Bolton Assocs., 602 F.3d 597, 603 (4th Cir. 2010) (citing Laber v. Harvey, 438 F.3d 404, 426 (4th Cir. 2006) (en banc)); Nourison Rug Corp. v. Parvizian, 535 F.3d 295, 298 (4th Cir. 2008) ("Under Rule 15, a 'motion to amend should be denied only where it would be prejudicial, there has been bad faith, or the amendment would be futile'").

"Where the statute of limitations bars a cause of action, amendment may be futile and therefore can be denied." United States v. Pittman, 209 F.3d 314, 317 (4th Cir. 2000); Everett v. Prison Health Services, 412 Fed. Appx. 604, 605 (4th Cir. 2011) (unpubl.) (per curium) ("Where a proposed amendment is made beyond the statute of limitations and it would not relate back to the original complaint, such an amendment would be futile.").

As discussed above, the undersigned finds that Plaintiff's claims against ANC, Barlow, and Herzog are barred by the statute of limitations and should be dismissed. Accordingly, allowing Plaintiff to amend to assert claims against these defendants would be futile. Therefore, the undersigned will recommend that the Motion to Amend (Doc. 53) be denied.

## V.     Recommendation

For the reasons set forth above, the undersigned respectfully recommends that:

(1) "Defendants Robin Bryson Mission Hospital, Inc. and ANC Healthcare, Inc.'s Motion to Take Judicial Notice" (Doc. 12) be **GRANTED IN PART**.

(2) "Motion to Dismiss Amended Complaint by Defendants Robin Bryson Mission Hospital, Inc. and ANC Healthcare, Inc" (Doc. 33) be **GRANTED IN PART** as follows:

    a. Plaintiff's Claims against ANC be **DISMISSED** as untimely.

    b. Plaintiff's claim for intentional infliction of emotional distress against Bryson be **DISMISSED**.

    c. Plaintiff be directed to proceed in this matter as "Taqi Eyr Hhamul Hesed El a/k/a 'Bro. T. Hesed-El,'" and the clerk be directed to amend the docket accordingly.

    d. In all other respects, the Motion to Dismiss be **DENIED**.

(3) Defendants Robin Bryson, Mission Hospital Inc.'s and ANC Healthcare, Inc.'s Second Motion to Take Judicial Notice (Doc. 35) be **GRANTED IN PART**.

(4) Plaintiff's Motion for Judicial Notice (Doc. 38) be **GRANTED IN PART**.

(5) Plaintiff's Motion to Strike Defendants' Affirmative Defenses (Doc. 40) be **DENIED**.

(6) Plaintiff's Motion to Toll Statute of Limitations (Doc. 41) be **DENIED**.

(7) "Plaintiff's Motion to Clarify the Court's Order in Case No. 1" (Doc. 42) be **DENIED**.

(8) Plaintiff's Motion for Leave to File Second Amended Complaint (Doc. 53) be **DENIED**.

(9) Defendant Mary Stirling Barlow's Motion to Dismiss Plaintiff's

Amended Complaint (Doc. 60) be **GRANTED**, and Plaintiff's claims against Barlow be **DISMISSED** as untimely.

(10)    "Adam Herzog's Motion to Dismiss for Improper Service of Process or, in the Alternative, Motion for Extension of Time to File His Response to the Plaintiff's Amended Complaint" (Doc. 63) be **DENIED AS MOOT**.

(11)    "Adam Herzog's Second Motion to Dismiss Plaintiff's Amended Complaint" (Doc. 74) be **GRANTED**, and Plaintiff's claims against Herzog be **DISMISSED** as untimely. [28]

Signed: July 12, 2022

W. Carleton Metcalf
United States Magistrate Judge

---

[28] In the event these recommendations are adopted, the following claims would remain: (1) "Gross Negligence/Willful and Wanton Conduct" against Bryson; (2) negligent infliction of emotional distress against Bryson; (3) "Negligent Supervision and/or Training" against Mission; and (4) "Respondeat Superior" against Mission.

37

## Time for Objections

The parties are hereby advised that, pursuant to Title 28, United States Code, Section 636, and Federal Rule of Civil Procedure 72(b)(2), written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen (14)** days of service of same. **Responses to the objections must be filed within fourteen (14) days of service of the objections.** Failure to file objections to this Memorandum and Recommendation with the presiding District Judge will preclude the parties from raising such objections on appeal. See Thomas v. Arn, 474 U.S. 140, 140 (1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984).