**EXHIBIT**

2018 North Carolina Laws S.L. 2018-33

"S.B. 630"

# GENERAL ASSEMBLY OF NORTH CAROLINA
## SESSION 2017

### SESSION LAW 2018-33
### SENATE BILL 630

AN ACT REVISING THE LAWS PERTAINING TO INVOLUNTARY COMMITMENT IN ORDER TO IMPROVE THE DELIVERY OF BEHAVIORAL HEALTH SERVICES IN NORTH CAROLINA.

The General Assembly of North Carolina enacts:

**SECTION 1.** G.S. 122C-3 reads as rewritten:
"**§ 122C-3. Definitions.**
The following definitions apply in this Chapter:
...
(8a) "Commitment examiner" means a physician, an eligible psychologist, or any health professional or mental health professional who is certified under G.S. 122C-263.1 to perform the first examination for involuntary commitment described in G.S. 122C-263(c) or G.S. 122C-283(c) as required by Parts 7 and 8 of this Article.
...
(11) "Dangerous to ~~himself~~ self or others" means:
   a. "Dangerous to ~~himself~~ "self" means that within the relevant past:
      ...
(16a) "Health screening" means an appropriate screening suitable for the symptoms presented and within the capability of the entity, including ancillary services routinely available to the entity, to determine whether or not an emergency medical condition exists. An emergency medical condition exists if an individual has acute symptoms of sufficient severity, including severe pain, such that the absence of immediate medical attention could reasonably be expected to result in placing the individual's health in serious jeopardy, serious impairment to bodily functions, or serious dysfunction of any bodily organ or part.
(16b) "Incapable" with respect to an individual has the same definition set forth in G.S. 122C-72(4). An adult individual who is incapable is not the same as an incompetent adult unless the adult individual has been adjudicated incompetent under Chapter 35A of the General Statutes.
(17) "Incompetent adult" means an adult individual who has been adjudicated ~~incompetent.~~incompetent under Chapter 35A of the General Statutes.
...
(20) "Legally responsible person" means: (i) when applied to an adult, who has been adjudicated incompetent, a guardian; (ii) when applied to a minor, a parent, guardian, a person standing in loco parentis, or a legal custodian other than a parent who has been granted specific authority by law or in a custody order to consent for medical care, including psychiatric treatment; or (iii) when applied to an adult who is incapable as defined in ~~G.S. 122C-72(e)~~G.S. 122C-72(4) and who has not been adjudicated incompetent,



a health care agent named pursuant to a valid health care power of ~~attorney.~~attorney; provided that if an incapable adult does not have a health care agent or guardian, "legally responsible person" means one of the persons specified in subdivisions (3) through (7) of subsection (c) of G.S. 90-21.13, to be selected based on the priority indicated in said subdivisions (3) through (7).

…

(20b)    "Local management entity" or "LME" means an area ~~authority, county program, or consolidated human services agency. It is a collective term that refers to functional responsibilities rather than governance structure.~~authority.

…

(27a)    "Outpatient treatment physician or center" as used in Part 7 of Article 5 of this Chapter means a physician or center that provides treatment services directly to the outpatient commitment respondent. An LME/MCO that contracts with an outpatient treatment physician or center to provide outpatient treatment services to a respondent is not an outpatient treatment physician or center. Every LME/MCO is responsible for contracting with qualified providers of services in accordance with G.S. 122C-141, 122C-142(a), 122C-115.2(b)(1)b., and 122C-115.4(b)(2) to ensure the availability of qualified providers of outpatient commitment services to clients of LME/MCOs who are respondents to outpatient commitment proceedings and meet the criteria for outpatient commitment. A contracted provider with an LME/MCO shall not be designated as an outpatient treatment physician or center on an outpatient commitment order unless the respondent enrolled with an LME/MCO or is eligible for services through an LME/MCO, or the respondent otherwise qualifies for the provision of services offered by the provider.

…

(29a)    ~~"Program director" means the director of a county program established pursuant to G.S. 122C-115.1.~~

…."

**SECTION 2.** G.S. 122C-4 reads as rewritten:

"**§ 122C-4. Use of phrase "client or ~~his~~ the legally responsible person."**

(a)    Except as otherwise provided by law, whenever in this Chapter the phrase "client or ~~his~~ the legally responsible person" is used, and the client is a minor or an incompetent adult, the duty or right involved shall be exercised not by the client, but by the legally responsible person.

(b)    Except as otherwise provided by law, whenever in this Chapter the phrase "client or the legally responsible person" is used, and the client is an incapable adult who has not been adjudicated incompetent under Chapter 35A of the General Statutes, the duty or right involved shall be exercised not by the client but by a health care agent named pursuant to a valid health care power of attorney, if one exists, or by the client as expressed in a valid advance instruction for mental health treatment, if one exists. If no health care power of attorney or advance instruction for mental health treatment exists, the legally responsible person for an incapable adult who has not been adjudicated incompetent under Chapter 35A of the General Statutes shall be one of the persons listed in subdivisions (3) through (7) of subsection (c) of G.S. 90-21.13, to be selected based on the priority order indicated in said subdivisions (3) through (7)."

**SECTION 3.** G.S. 122C-53 reads as rewritten:

"**§ 122C-53. Exceptions; client.**

(a)    A facility may disclose confidential information if the client or ~~his~~ the legally responsible person consents in writing to the release of the information to a specified person. This release is valid for a specified length of time and is subject to revocation by the consenting individual.

(b)     A facility may disclose (i) the fact of admission or discharge of a client and (ii) the time and location of admission or discharge to the client's next of kin whenever the responsible professional determines that the disclosure is in the best interest of the client.

(c)     Upon request a client shall have access to confidential information in ~~his client~~ the client's record except information that would be injurious to the client's physical or mental well-being as determined by the attending physician or, if there is none, by the facility director or ~~his~~ the facility director's designee. If the attending physician or, if there is none, the facility director or ~~his~~ the facility director's designee has refused to provide confidential information to a client, the client may request that the information be sent to a physician or psychologist of the client's choice, and in this event the information shall be so provided.

(d)     Except as provided by G.S. 90-21.4(b), upon request the legally responsible person of a client shall have access to confidential information in the client's record; except information that would be injurious to the client's physical or mental well-being as determined by the attending physician or, if there is none, by the facility director or ~~his~~ the facility director's designee. If the attending physician or, if there is none, the facility director or ~~his~~ the facility director's designee has refused to provide confidential information to the legally responsible person, the legally responsible person may request that the information be sent to a physician or psychologist of the legally responsible person's choice, and in this event the information shall be so provided.

(e)     A client advocate's access to confidential information and ~~his~~ the client's responsibility for safeguarding this information are as provided by subsection (g) of this section.

(f)     As used in subsection (g) of this section, the following terms have the meanings specified:

        (1)     "Internal client advocate" means a client advocate who is employed by the facility or has a written contractual agreement with the Department or with the facility to provide monitoring and advocacy services to clients in the facility in which the client is receiving ~~services; and~~services.

        (2)     "External client advocate" means a client advocate acting on behalf of a particular client with the written consent and ~~authorization;~~authorization under either of the following circumstances:

            a.     In the case of a client who is an adult and who has not been adjudicated incompetent under Chapter 35A or former Chapters 33 or 35 of the General Statutes, of the ~~client; or~~client.

            b.     In the case of any other client, of the client and ~~his~~ the legally responsible person.

(g)     An internal client advocate shall be granted, without the consent of the client or ~~his~~ the legally responsible person, access to routine reports and other confidential information necessary to fulfill ~~his~~ monitoring and advocacy functions. In this role, the internal client advocate may disclose confidential information received to the client involved, to ~~his~~ the legally responsible person, to the director of the facility or ~~his~~ the director's designee, to other individuals within the facility who are involved in the treatment or habilitation of the client, or to the Secretary in accordance with the rules of the Commission. Any further disclosure shall require the written consent of the client and ~~his~~ the legally responsible person. An external client advocate shall have access to confidential information only upon the written consent of the client and his legally responsible person. In this role, the external client advocate may use the information only as authorized by the client and his legally responsible person.

    ...."

**SECTION 4.** G.S. 122C-54 reads as rewritten:

**"§ 122C-54.  Exceptions; abuse reports and court proceedings.**

    ...

(a1)    Upon a determination by the facility director or ~~his~~ the facility director's designee that disclosure is in the best interests of the client, a facility may disclose confidential information for purposes of filing a petition for involuntary commitment of a client pursuant to Article 5 of this Chapter or for purposes of filing a petition for the adjudication of incompetency of the client and the appointment of a guardian or an interim guardian under Chapter 35A of the General Statutes.

...

(c)    ~~Certified copies of written results of examinations by physicians and records in the cases of clients voluntarily admitted or involuntarily committed and facing~~ When an individual is held at a facility under involuntary commitment or voluntary admission proceedings that require district court hearings ~~and~~ or rehearings pursuant to Article 5 of this ~~Chapter~~ Chapter, certified copies of written results of examinations, gathered during the course of the current commitment or admission, shall be furnished by the facility to the client's counsel, the attorney representing the State's interest, and the court. Upon request, the facility shall disclose to respondent's counsel, the attorney representing the State's interest, and the court confidential information collected, maintained, or used in attending or treating the respondent during the proceeding for voluntary admission or involuntary commitment. Other medical records shall be furnished only upon court order. The confidentiality of client information shall be preserved in all matters except those pertaining to the necessity for admission or continued stay in the facility or commitment under review. ~~The relevance of confidential information for which disclosure is sought in a particular case shall be determined by the court with jurisdiction over the matter.~~

...

(e)    Upon the request of the legally responsible person or the minor admitted or committed, and after that minor has both been released and reached adulthood, the court records of that minor made in proceedings pursuant to Article 5 of this Chapter may be expunged from the files of the court. The minor and ~~his~~ the minor's legally responsible person shall be informed in writing by the court of the right provided by this subsection at the time that the application for admission is filed with the court.

...

(g)    A facility may disclose confidential information to an attorney who represents either the facility or an employee of the facility, if such information is relevant to litigation, to the operations of the facility, or to the provision of services by the facility. An employee may discuss confidential information with ~~his~~ the employee's attorney or with an attorney representing the facility in which ~~he~~ the employee is employed.

...."

**SECTION 5.** G.S. 122C-55 reads as rewritten:

"**§ 122C-55. Exceptions; care and treatment.**

(a)    Any facility may share confidential information regarding any client of that facility with any other facility when necessary to coordinate appropriate and effective care, treatment or habilitation of the client. For the purposes of this section, ~~coordinate~~ the following definitions apply:

        (1)    "Coordinate" means the provision, coordination, or management of mental health, developmental disabilities, and substance abuse services and other health or related services by one or more facilities and includes the referral of a client from one facility to another.

        (2)    "Facility" and "area facility" include an area authority.

        (3)    "Secretary" includes any primary care case management programs that contract with the Department to provide a primary care case management program for recipients of publicly funded health and related services.

(a1)    Any facility may share confidential information regarding any client of that facility with the Secretary, and the Secretary may share confidential information regarding any client with a facility when necessary to conduct quality assessment and improvement activities or to

coordinate appropriate and effective care, treatment or habilitation of the client. For purposes of this subsection, subsection (a6), and subsection (a7) of this section, the purposes or activities for which confidential information may be disclosed include, but are not limited to, case management and care coordination, disease management, outcomes evaluation, the development of clinical guidelines and protocols, the development of care management plans and systems, population-based activities relating to improving or reducing health care costs, and the provision, coordination, or management of mental health, developmental disabilities, and substance abuse services and other health or related services. As used in this section, "facility" includes an LME and "Secretary" includes the Community Care of North Carolina Program, or other primary care case management programs that contract with the Department to provide a primary care case management program for recipients of publicly funded health and related services.

(a2)     Any area or State facility or the psychiatric service of the University of North Carolina Hospitals at Chapel Hill may share confidential information regarding any client of that facility with any other area facility or State facility or the psychiatric service of the University of North Carolina Hospitals at Chapel Hill when necessary to conduct payment activities relating to an individual served by the facility. Payment activities are activities undertaken by a facility to obtain payment or provide receive reimbursement for the provision of services and may include, but are not limited to, determinations of eligibility or coverage, coordination of benefits, determinations of cost-sharing amounts, claims management, claims processing, claims adjudication, claims appeals, billing and collection activities, medical necessity reviews, utilization management and review, precertification and preauthorization of services, concurrent and retrospective review of services, and appeals related to utilization management and review.

(a3)     Whenever there is reason to believe that a client is eligible for benefits through a Department program, any State or area facility or the psychiatric service of the University of North Carolina Hospitals at Chapel Hill may share confidential information regarding any client of that facility with the Secretary, and the Secretary may share confidential information regarding any client with an area facility or State facility or the psychiatric services of the University of North Carolina Hospitals at Chapel Hill. Disclosure is limited to that information necessary to establish initial eligibility for benefits, determine continued eligibility over time, and obtain reimbursement for the costs of services provided to the client.

…

(c1)     A facility may furnish confidential information in its possession to the sheriff of any county when requested by the sheriff regarding any client of that facility who is confined in the county's jail or jail annex when the inmate has been determined by the county jail medical unit to be in need of treatment for mental illness, developmental disabilities, or substance abuse. The sheriff may furnish to a facility confidential information in its possession about treatment for mental illness, developmental disabilities, or substance abuse that the county jail medical unit has provided to any present or former inmate if the inmate is presently seeking treatment from the requesting facility or if the inmate has been involuntarily committed to the requesting facility for inpatient or outpatient treatment. Under the circumstances described in this subsection, the consent of the client or inmate shall not be required in order for this information to be furnished and the information shall be furnished despite objection by the client or inmate. Confidential information disclosed pursuant to this subsection is restricted from further disclosure.

…."

**SECTION 6.** G.S. 122C-115.4 reads as rewritten:
"**§ 122C-115.4. Functions of local management entities.**

…

(b)     The primary functions of an LME are designated in this subsection and shall not be conducted by any other entity unless an LME voluntarily enters into a contract with that entity under subsection (c) of this section. The primary functions include all of the following:

…

(7a)   Community crisis services planning in accordance with G.S. 122C-202.2.
...."

**SECTION 7.** G.S. 122C-117 reads as rewritten:
"**§ 122C-117.  Powers and duties of the area authority.**
  (a)    The area authority shall do all of the following:
        ...
        (18)   Develop and adopt community crisis services plans in accordance with G.S. 122C-202.2
...."

**SECTION 8.** Part 1 of Article 5 of Chapter 122C of the General Statutes is amended by adding a new section to read:
"**§ 122C-202.2.  LME/MCO community crisis services plan; commitment examiners; transporting agencies; training; collaboration.**

  (a)    Every LME/MCO shall adopt a community crisis services plan in accordance with this section to facilitate first examination in conjunction with a health screening at the same location required pursuant to Parts 7 and 8 of this Article within its catchment area. The community crisis services plan for the LME/MCO's catchment area shall be comprised of separate plans, known as "local area crisis services plans" for each of the local areas or regions within the catchment area that the LME/MCO identifies as an appropriate local planning area, taking into consideration the available resources and interested stakeholders within a particular geographic area or region of the catchment area. Each LME/MCO may determine the number and geographic boundaries of the local planning areas within its catchment area. Each local area crisis services plan shall, for the local area covered by the local plan, do at least all of the following:

        (1)    Incorporate the involuntary commitment transportation agreement adopted pursuant to G.S. 122C-251(g) for the cities and counties within the local planning areas which identifies the law enforcement officers, designees under G.S. 122C-251(g), or individuals or entities otherwise required to provide custody and transportation of a respondent for a first examination in conjunction with a health screening at the same location required by G.S. 122C-263(a) and G.S. 122C-283. Notwithstanding the foregoing, counties and cities shall retain the responsibilities for custody and transportation set forth in this Article, except as otherwise set forth in a plan developed, agreed upon, and adopted in compliance with this section and G.S. 122C-251(g).

        (2)    Identify one or more area facilities or other locations in accordance with G.S. 122C-263 and G.S. 122C-283. Each LME/MCO shall contract with one or more facilities or other locations described in G.S. 122C-263 and G.S. 122C-283 for the provision of health screenings and first examinations required by G.S. 122C-263 and G.S. 122C-283 for the provision of first examination in conjunction with a health screening required by G.S. 122C-263 and G.S. 122C-283, to meet the needs of its local planning area.

        (3)    Identify available training for law enforcement personnel and other persons designated or required under G.S. 122C-251(g) to provide transportation and custody of involuntary commitment respondents. Law enforcement officers may request to participate in the training program identified by the LME/MCO. Persons who are designated in compliance with G.S. 122C-251(g) to provide all or part of the transportation and custody required for involuntary commitment proceedings under this Article and who are not law enforcement officers shall participate in the training. To the extent

feasible, the identified training shall address the use of de-escalation strategies and techniques, the safe use of force and restraint, respondent rights relevant to custody and transportation, the location of any area facilities identified by the LME/MCO pursuant to subdivision (1) of this subsection, and the completion and return of the custody order to the clerk of superior court. The training identified by the LME/MCO may be comprised of one or more programs and may include a Crisis Intervention Team program or other mental health training program or a combination of these programs.

(b) Law enforcement agencies, acute care hospitals, magistrates, area facilities with identified commitment examiners, and other affected agencies shall participate with the LME/MCO in the development of the local area crisis services plans described in this section. Other stakeholders and community partners identified by the LME/MCO may be invited to participate in the planning. No local area crisis services plan developed under this section shall be adopted or thereafter be effective or implemented unless such plan first has been mutually agreed upon in writing by all entities identified in the plan pursuant to subsection (a) of this section. If any member of the Crisis Planning Committee fails to agree to the plan in writing, the Secretary shall develop a procedure to attempt to resolve the conflict in order to achieve approval of the Plan.

(c) The plans adopted under this section may, by mutual agreement of all entities identified in the plan, address any other matters necessary to facilitate the custody, transportation, examination, and treatment of respondents to commitment proceedings under Parts 7 and 8 of this Article."

**SECTION 9.** G.S. 122C-206 reads as rewritten:

"**§ 122C-206. Transfers of clients between 24-hour ~~facilities.~~facilities; transfer of clients from 24-hour facilities to acute care hospitals.**

(a) Before transferring a voluntary adult client from one 24-hour facility to another, the responsible professional at the original facility shall: (i) get authorization from the receiving facility that the facility will admit the client; (ii) get consent from the client; and (iii) if consent to share information is granted by the client, or if the disclosure of information is permitted under G.S. 122C-53(b), notify the next of kin of the time and location of the transfer. The preceding requirements of this paragraph may be waived if the client has been admitted under emergency procedures to a State facility not serving the client's region of the State. Following an emergency admission, the client may be transferred to the appropriate State facility without consent according to the rules of the Commission.

(b) Before transferring a respondent held for a district court hearing or a committed respondent from one 24-hour facility to another, the responsible professional at the original facility shall:

(1) Obtain authorization from the receiving facility that the facility will admit the respondent; and

(2) Provide reasonable notice to the ~~respondent, or~~ respondent or the legally responsible person, and to the respondent's counsel, of the reason for the transfer and document the notice in the client's record.

No later ~~that~~ than 24 hours after the transfer, the responsible professional at the original facility shall notify the petitioner, the clerk of court, the respondent's counsel, and, if consent is granted by the respondent, or if the disclosure of the information is permitted under G.S. 122C-53 or other applicable law, the next of kin, that the transfer is ~~completed.~~complete. If the transfer is completed before the judicial commitment hearing, these proceedings shall be initiated by the receiving facility. If the respondent is a minor, an incompetent adult, or is deemed incapable, then the responsible professional at the original facility shall, not later than 24 hours after the transfer, notify the respondent's legally responsible person of the location of the transfer and that the transfer is complete.

Case 1:21-cv-00305-MR-WCM   Document 154-2   Filed 03/12/24   Page 8 of 37

(c)     Minors and incompetent adults, admitted pursuant to Parts 3 and 4 of this Article, may be transferred from one 24-hour facility to another following the same procedures specified in subsection (b) of this section. In addition, the legally responsible person shall be consulted before the proposed ~~transfer.~~transfer and notified, within 24 hours after the transfer is complete, of the location of the transfer and that the transfer is complete. If the transfer is completed before the judicial determination required in G.S. 122C-223 or G.S. 122C-232, these proceedings shall be initiated by the receiving facility.

(c1)    If a client described in subsections (b) or (c) of this section is to be transferred from one 24-hour facility to ~~another~~another, or to an acute care hospital pursuant to subsection (e) of this section, and transportation is needed, the responsible professional at the original facility shall notify the clerk of court or magistrate, and the clerk of court or magistrate shall issue a custody order for transportation of the client as provided by G.S. 122C-251.

(d)     Minors and incompetent adults, admitted pursuant to Part 5 of this Article and incapable adults admitted pursuant to Part 2A of this Article, may be transferred from one 24-hour facility to another provided that prior to transfer the responsible professional at the original facility shall:

      (1)     Obtain authorization from the receiving facility that the facility will admit the client; and

      (2)     Provide reasonable notice to the client regarding the reason for transfer and document the notice in the client's record; and

      (3)     Provide reasonable notice to and consult with the legally responsible person regarding the reason for the transfer and document the notice and consultation in the client's record.

No later than 24 hours after the transfer, the responsible professional at the original facility shall notify the legally responsible person that the transfer is completed.

(e)     The responsible professional may transfer a client from one 24-hour facility to another or to an acute care hospital for emergency medical treatment, emergency medical evaluation, or emergency surgery without notice to or consent from the client. Within a reasonable period of time the responsible professional shall notify the next of kin or the legally responsible person of the client of the transfer.

(f)     When a client is transferred from one 24-hour facility to another ~~facility~~solely for medical reasons, the client shall be returned to the original facility when the medical care is completed unless the responsible professionals at both facilities concur that discharge of the client who is not subject to G.S. 122C-266(b) is appropriate.

(f1)    When a client is transferred from a 24-hour facility to an acute care hospital solely for medical reasons, the hospital shall return the client to the original facility as soon as the next client space becomes available at the original facility after completion of the client's medical care. With the exception of facility-based crisis centers, the original facility must allow at least 12 hours for the client's return before assigning the client's room or bed to another patient, unless both facilities agree that return of the client in this time period is not feasible. The original facility must accept the return of the client in priority over other clients seeking admission, except in the cases of patients designated incapable to proceed to trial by court order. If the responsible professionals at both facilities concur that discharge of a client who is not subject to G.S. 122C-266(b) is appropriate, the client may be discharged. If, at the time of the transfer, a client is being held under a custody order pending a second commitment examination or a district court hearing under involuntary commitment proceedings, the custody order shall remain valid throughout the period of time necessary to complete the client's medical care and transport the client between the 24-hour facility and the acute care hospital; provided, however, that the requirement for a timely hearing under G.S. 122C-268(a) applies. Any decision to terminate the proceedings because the respondent no longer meets the criteria for commitment or because a

hearing cannot be held within the time required by G.S. 122C-268(a) shall be documented and reported to the clerk of superior court in accordance with G.S. 122C-266(c).

    (g)    The Commission may adopt rules to implement this section."

    **SECTION 10.** G.S. 122C-210.1 reads as rewritten:

"**§ 122C-210.1. Immunity from liability.**

    No ~~facility~~ facility, person, or entity, including an area facility, a facility licensed under this Chapter, an acute care hospital, a general hospital, an area authority, a law enforcement officer, an LME, or an LME/MCO, or any of ~~its~~ their officials, staff, or employees, or any other physician or ~~other~~ individual who is responsible for the custody, transportation, examination, admission, management, supervision, treatment, or release of a respondent or client and who ~~follows accepted professional judgment, practice, and standards~~ is not grossly negligent, is civilly or criminally liable, personally or otherwise, for that person's or entity's actions or omissions arising from these responsibilities or for the actions or omissions of ~~the~~ a respondent or client. This immunity is in addition to any other legal immunity from liability to which these ~~facilities~~ persons, entities, facilities, agencies, or individuals may be entitled and applies to actions performed in connection with, or arising out of, the ~~admission or commitment~~ custody, transportation, examination, commitment, admission, management, supervision, treatment, or release of any individual pursuant to or under the authority of this ~~Article.~~ Article or otherwise."

    **SECTION 11.** G.S. 122C-210.3 reads as rewritten:

"**§ 122C-210.3. Electronic and facsimile transmission of custody orders.**

    A custody order entered by the clerk or magistrate pursuant to this Chapter may be delivered to the law enforcement officer or other person designated or required to provide transportation and custody pursuant to G.S. 122C-251 by electronic or facsimile transmission."

    **SECTION 12.** G.S. 122C-211 reads as rewritten:

"**§ 122C-211. Admissions.**

    (a)    Except as provided in subsections (b) through ~~(f1)~~ (f) of this section, any individual, including a parent in a family unit, in need of treatment for mental illness or substance abuse may seek voluntary admission at any facility by presenting himself or herself for evaluation to the facility. No physician's statement is necessary, but a written application for evaluation or admission, signed by the individual seeking admission, or the individual's legally responsible person, is required. The application form shall be available at all times at all facilities. However, no one shall be denied admission because application forms are not available. An evaluation shall determine whether the individual is in need of care, treatment, habilitation or rehabilitation for mental illness or substance abuse or further evaluation by the facility. Information provided by family members regarding the individual's need for treatment shall be reviewed in the evaluation. If applicable, information provided in an advance instruction for mental health treatment by the client or the client's legally responsible person shall be reviewed in the evaluation. An individual may not be accepted as a client if the facility determines that the individual does not need or cannot benefit from the care, treatment, habilitation, or rehabilitation available and that the individual is not in need of further evaluation by the facility. The facility shall give to an individual who is denied admission a referral to another facility or facilities that may be able to provide the treatment needed by the client.

    …

    ~~(e)~~    ~~When an individual from a single portal area seeks admission to an area or State 24-hour facility, the admission shall follow the procedures as prescribed in the area plan. When an individual from a single portal area presents himself for admission to the facility directly and is in need of an emergency admission, the individual may be accepted for admission. The facility shall notify the area authority within 24 hours of the admission. Further planning of treatment for the client is the joint responsibility of the area authority and the facility as prescribed in the area plan.~~

    …

(f1)    An individual in need of treatment for mental illness may be admitted to a facility pursuant to an advance instruction for mental health treatment or pursuant to the authority of a health care agent named in a valid health care power of attorney, provided that the individual is incapable, as defined in G.S. 122C-72(4) at the time of the need for admission. An individual admitted to a facility pursuant to an advance instruction for mental health treatment may not be retained for more than 10 days, except as provided for in subsection (b) of this section. When a health care power of attorney authorizes a health care agent to seek the admission of an incapable individual, the health care agent shall act for the individual in applying for admission to a facility and in consenting to medical treatment at the facility when consent is required, provided that the individual is incapable.

....."

**SECTION 13.** G.S. 122C-212 reads as rewritten:

"**§ 122C-212. Discharges.**

(a)    Except as provided in ~~subsections~~ subsection (b) ~~and (c)~~ of this section, an individual who has been voluntarily admitted to a facility shall be discharged upon ~~his~~ the individual's own request. A request for discharge from a 24-hour facility shall be in writing.

(b)    An individual who has been voluntarily admitted to a 24-hour facility may be held for 72 hours after ~~his~~ the individual's written application for discharge is submitted.

~~(c)    When an individual from a single portal area who has been voluntarily admitted to an area or State 24-hour facility is discharged, the discharge shall follow the procedures as prescribed in the area plan.~~"

**SECTION 14.** Article 5 of Chapter 122C of the General Statutes is amended by adding a new Part to read:

"Part 2A. Voluntary Admissions and Discharges; Incapable Adults; Facilities for Individuals With Mental Illness and Substance Use Disorder.

"**§ 122C-213. Voluntary admission of individuals determined to be incapable.**

(a)    An individual in need of treatment for mental illness and who is incapable, as defined in G.S. 122C-3 and G.S. 122C-72, may be admitted to and treated in a facility pursuant to an advance instruction for mental health treatment executed in accordance with Part 2 of Article 3 of this Chapter or pursuant to the authority of a health care agent named in a valid health care power of attorney executed in accordance with Article 3 of Chapter 32A of the General Statutes.

(b)    Except as otherwise provided in this Part, G.S. 122C-211 applies to admissions of incapable adults under this Part.

(c)    An advance instruction for mental health treatment shall be governed by Part 2 of Article 3 of this Chapter.

(d)    When a health care power of attorney authorizes a health care agent pursuant to G.S. 32A-19 to make mental health treatment decisions for an incapable individual, the health care agent shall act for the individual in applying for admission and consenting to treatment at a facility, consistent with the extent and limitations of authority granted in the health care power of attorney for as long as the individual remains incapable.

(e)    A 24-hour facility may not hold an individual under a voluntary admission who is determined to be incapable at the time of admission and who is admitted pursuant to an advance instruction for mental health treatment for more than 15 days, except as provided in G.S. 122C-211(b); provided, however, that an individual who regains sufficient understanding and capacity to make and communicate mental health treatment decisions may elect to continue his or her admission and treatment pursuant to the individual's informed consent in accordance with G.S. 122C-211. A 24-hour facility may file a petition for involuntary commitment pursuant to Article 5 of this Chapter if an individual meets applicable criteria at the conclusion of this 15-day period.

"**§ 122C-214. Discharge of individuals determined to be incapable.**

(a)     The responsible professional shall unconditionally discharge an individual admitted to a facility pursuant to this Part at any time it is determined the individual is no longer mentally ill or in need of treatment at the facility.

(b)     An individual who has been voluntarily admitted to a facility pursuant to this Part and who is no longer deemed incapable shall be discharged upon his or her own request. An individual's request for discharge from a 24-hour facility shall be in writing. A facility may hold an individual who has been voluntarily admitted to a 24-hour facility pursuant to this Part for up to 72 hours after the individual submits a written request for discharge, but the facility shall release the individual upon the expiration of 72 hours following submission of the written request for discharge unless the responsible professional obtains an order under Part 7 or 8 of this Article to hold the client.

(c)     A health care agent named in a valid health care power of attorney or the legally responsible person may submit on behalf of an individual admitted to a facility under this Part a written request to have the individual discharged from the facility, provided (i) the individual remains incapable at the time of the request and (ii) the request is not inconsistent with the authority expressed in the health care power of attorney or other controlling document. A facility may hold an individual for up to 72 hours after a health care agent submits a written request for the individual's discharge but shall release the individual upon the expiration of 72 hours following submission of the written request for discharge unless the responsible professional obtains an order under Part 7 or 8 of this Article to hold the client.

(d)     If, in the opinion of a physician or eligible psychologist, an individual admitted to a facility under this Part regains sufficient understanding and capacity to make and communicate mental health treatment decisions while in treatment, and the individual refuses to sign an authorization for continued treatment within 72 hours after regaining decisional capacity, the facility shall discharge the individual unless the responsible professional obtains an order under Part 7 or 8 of this Article to hold the client.

(e)     In any case in which an order is issued authorizing the involuntary commitment of an individual admitted to a facility under this Part, the facility's further treatment and holding of the individual shall be in accordance with Part 7 or 8 of this Article, whichever is applicable."

**SECTION 15.** G.S. 122C-221 reads as rewritten:

"**§ 122C-221. Admissions.**

(a)     Except as otherwise provided in this Part, a minor may be admitted to a facility if the minor is mentally ill or a substance abuser and in need of treatment. Except as otherwise provided in this Part, the provisions of G.S. 122C-211 shall apply to admissions of minors under this Part. Except as provided in G.S. 90-21.5, in applying for admission to a facility, in consenting to medical treatment when consent is required, and in any other legal procedure under this Article, the legally responsible person shall act for the minor. The application of the minor shall be in writing and signed by the legally responsible person. If a minor reaches the age of 18 while in treatment under this Part, further treatment is authorized only on the written authorization of the client or under the provisions of Part 7 or Part 8 of Article 5 of this Chapter.

     ...."

**SECTION 16.** G.S. 122C-224(c) reads as rewritten:

"**§ 122C-224. Judicial review of voluntary admission.**

    ...

(c)     Within 24 hours after admission, the facility shall notify the clerk of court in the county where the facility is located that the minor has been admitted and that a hearing for concurrence in the admission must be scheduled. At the time notice is given to schedule a hearing, the facility shall (i) notify the clerk of the names and addresses of the legally responsible person and the responsible ~~professional.~~professional and (ii) provide the clerk with a copy of the legally responsible person's written application for admission of the minor and the facility's written evaluation of the minor, both of which are required under G.S. 122C-211(a)."

Case 1:21-cv-00305-MR-WCM   Document 154-2   Filed 03/12/24   Page 12 of 37

**SECTION 17.** Part 4 of Article 5 of Chapter 122C of the General Statutes is amended by adding a new section to read:

"**§ 122C-230. Applicability of Part 4.**

This Part applies to adults who are adjudicated incompetent by a court of competent jurisdiction. This Part does not apply to the admission of adults who are deemed incapable but who have not been adjudicated incompetent."

**SECTION 18.** G.S. 122C-232 reads as rewritten:

"**§ 122C-232. Judicial determination.**

(a)     When an incompetent adult is admitted to a 24-hour facility where the incompetent adult will be subjected to the same restrictions on ~~his~~ freedom of movement present in the State facilities for the mentally ill, or to similar restrictions, a hearing shall be held in the district court in the county in which the 24-hour facility is located within 10 days ~~of~~ after the day ~~that~~ the incompetent adult is admitted to the facility. A continuance of not more than five days may be granted upon motion ~~of:~~ any of the following:

(1)     The ~~court;~~ court.

(2)     Respondent's ~~counsel; or~~ counsel.

(3)     The responsible professional.

The Commission shall adopt rules governing procedures for admission to other 24-hour facilities not falling within the category of facilities where freedom of movement is restricted; these rules shall be designed to ensure that no incompetent adult is improperly admitted to or remains in a facility.

(a1)     Prior to admission, the facility shall provide the incompetent adult and the legally responsible person with written information describing the procedures for court review of the admission and the procedures for discharge.

(a2)     Within 24 hours after admission, the facility shall notify the clerk of court of the county in which the facility is located that the incompetent adult has been admitted and that a hearing for concurrence in the admission must be scheduled. At the time the facility provides notice to the court to schedule a hearing for concurrence, the facility shall notify the clerk of the names and addresses of the legally responsible person and the responsible professional and provide a copy of the legally responsible person's written application for evaluation or admission of the incompetent adult and the facility's evaluation of the incompetent adult.

(b)     In any case requiring the hearing described in subsection (a) of this section, no petition is necessary; the written application for voluntary admission shall serve as the initiating document for the hearing. The court shall determine whether the incompetent adult is mentally ill or a substance abuser and is in need of further treatment at the facility. Further treatment at the facility should be undertaken only when lesser measures will be insufficient. If the court finds by clear, cogent, and convincing evidence that these requirements have been met, the court shall concur with the voluntary admission of the incompetent ~~adult.~~ adult and set the length of the authorized admission for a period not to exceed 90 days. If the court finds that these requirements have not been met, it shall order that the incompetent adult be released. A finding of dangerousness to self or others is not necessary to support the determination that further treatment should be undertaken.

...

(d)     In addition to the notice of hearings and rehearings to the incompetent adult and his or her counsel required under Part 7 of this Article, notice shall be given by the clerk to the legally responsible ~~person,~~ person or ~~his successor.~~ a successor to the legally responsible person. The legally responsible ~~person, or his~~ person or a successor to the legally responsible person may also file with the clerk of court a written waiver of ~~his~~ the right to receive notice."

**SECTION 19.** G.S. 122C-251 reads as rewritten:

"**§ 122C-251. ~~Transportation.~~ Custody and transportation.**

Case 1:21-cv-00305-MR-WCM   Document 154-2   Filed 03/12/24   Page 13 of 37

(a)    Except as provided in subsections (f) (c), (f), and (g), transportation of a respondent within a county under the involuntary commitment proceedings of this Article, including admission and discharge, shall be provided by the city or county. The city has the duty to provide transportation of a respondent who is a resident of the city or who is physically taken into custody in the city limits. The county has the duty to provide transportation for a respondent who resides in the county outside city limits or who is physically taken into custody outside of city limits. However, cities and counties may contract with each other to provide transportation.

(b)    Except as provided in subsections (f)(c), (f), and (g) or in G.S. 122C-408(b), transportation between counties under the involuntary commitment proceedings of this Article for a first examination as described in G.S. 122C-263(a) and G.S. 122C-283(a) and for admission to a 24-hour facility shall be provided by the county where the respondent is taken into custody. Transportation between counties under the involuntary commitment proceedings of this Article for respondents held in 24-hour facilities who have requested a change of venue for the district court hearing shall be provided by the county where the petition for involuntary commitment was initiated. Transportation between counties under the involuntary commitment proceedings of this Article for discharge of a respondent from a 24-hour facility shall be provided by the county of residence of the respondent. However, a respondent being discharged from a facility may use his own transportation at his own expense.

(c)    Transportation of a respondent may be (i) by city- or county-owned vehicles or vehicles, (ii) by private vehicle by contract with the city or county.county, or (iii) as provided in an agreement developed and adopted under subsection (g) of this section and G.S. 122C-202.2. To the extent feasible, law enforcement officers transporting respondents shall dress in plain clothes and shall travel in unmarked vehicles. Further, law enforcement officers, to the extent possible, shall advise respondents when taking them into custody that they are not under arrest and have not committed a crime, but are being taken into custody and transported to receive treatment and for their own safety and that of others.

(d)    To the extent feasible, in providing transportation of a respondent, a city or county shall provide a driver or attendant who is the same sex as the respondent, unless the law enforcement law enforcement officer allows a family member of the respondent to accompany the respondent in lieu of an attendant of the same sex as the respondent.

(e)    In taking custody and providing transportation as required by this section, the law enforcement law enforcement officer may use reasonable force to restrain the respondent if it appears necessary to protect himself,the law enforcement officer, the respondent, or others. Any use of restraints shall be as reasonably determined by the officer to be necessary under the circumstances for the safety of the respondent, the law enforcement officer, and other persons. Every effort to avoid restraint of a child under the age of 10 shall be made by the transporting officer unless the child's behavior or other circumstances dictate that restraint is necessary. The law enforcement officer shall respond to all inquiries from the facility concerning the respondent's behavior and the use of any restraints related to the custody and transportation of the respondent, except in circumstances where providing that information is confidential or would otherwise compromise a law enforcement investigation. No law enforcement law enforcement officer or other person designated or required to provide custody or transport of a client under G.S. 122C-251 may be held criminally or civilly liable for assault, false imprisonment, or other torts or crimes on account of reasonable measures taken under the authority of this Article.

(f)    Notwithstanding the provisions of subsections (a), (b), and (c) of this section, a clerk, a magistrate, or a district court judge, where applicable, may authorize the family or immediate friends of the respondent, if they so request, to transport the respondent in accordance with the procedures of this Article. This authorization shall only be granted in cases where the danger to the public, the family or friends of the respondent, or the respondent himself or herself is not

substantial. The family or immediate friends of the respondent shall bear the costs of providing this transportation.

(g) The governing body of a city or county ~~may~~ shall adopt a plan known as an "involuntary commitment transportation agreement" or "transportation agreement" for the custody and transportation of respondents in involuntary commitment proceedings ~~in~~ under this ~~Article. Law enforcement personnel,~~ Article as follows:

    (1)    Law enforcement and other affected agencies, including local acute care hospitals and other mental health providers, shall participate in developing the transportation agreement. The area authority may participate in developing the transportation agreement.

    (2)    The transportation agreement may designate law enforcement officers, volunteers, or other public or private ~~agency~~ personnel ~~may be designated~~ who have agreed pursuant to subsection (g) of this section to provide all or parts of the custody and transportation required by involuntary commitment proceedings. Persons so designated or otherwise required to provide all or parts of the custody and transportation required by involuntary commitment proceedings shall be trained as set forth in G.S. 122C-202.2(a)(3), and the plan shall assure adequate safety and protections for both the public and the respondent. ~~Law enforcement, other affected agencies, and the area authority shall participate in the planning. If any person other than a law enforcement agency is designated by a city or county, the person so designated shall provide the transportation and~~ Any person or agency designated or required to provide all or parts of the custody and transportation required by involuntary commitment proceedings shall follow the procedures in this Article. References in this Article to a ~~law enforcement~~ law enforcement officer apply to ~~this person.~~ any person or entity designated to provide custody or transportation. The transportation agreement may provide that private personnel or agencies may contract for transportation services to transport respondents under involuntary commitment from one entity to another.

    (3)    A person shall not be designated under subsection (g) of this section without that person's written consent and the written consent of his or her employer, if applicable. An agency, corporation, or entity shall not be designated without the written consent of that agency, corporation, or entity. Any person, agency, corporation, or other entity shall be designated to provide only the services which the person, agency, corporation, or other entity has previously consented in writing to provide and shall be permitted to withdraw from or discontinue providing services, in whole or in part, upon written notice to the designating governing body. The transportation agreement shall be submitted to the magistrates in the city or county's judicial district, to the county clerks of court, to the LME/MCO that serves the city or county, and to the Division of Mental Health, Developmental Disabilities, and Substance Abuse Services on or before January 1, 2019. If the city or county modifies the transportation agreement, it will submit the modified agreement to their magistrates in their judicial district, county clerks of court, the LME/MCO that serves the city or county, and the Division of Mental Health, Developmental Disabilities, and Substance Abuse Services at least 10 days prior to the effective date of the new plan.

    (4)    Counties and cities shall retain and be required to perform the responsibilities set forth in this Article, except as set forth in a plan developed, agreed upon, and adopted in compliance with this subsection.

Footer and case stamp

Case 1:21-cv-00305-MR-WCM   Document 154-2   Filed 03/12/24   Page 15 of 37

(h)    The cost and expenses ~~of transporting~~ of custody and transportation of a respondent ~~to or from a 24-hour facility is~~ as required by the involuntary commitment procedures of this Article, to the extent they are not reimbursed by a third-party insurer, are the responsibility of the county of residence of the ~~respondent.~~respondent, to the extent they are not reimbursed by a third-party insurer. The State (when providing transportation under G.S. 122C-408(b)), a city, or a county is entitled to recover the reasonable cost of transportation from the county of residence of the respondent. The county of residence of the respondent shall reimburse the State, another county, or a city the reasonable transportation costs incurred as authorized by this subsection. The county of residence of the respondent is entitled to recover the reasonable cost of transportation it has paid to the State, a city, or a county. Provided that the county of residence provides the respondent or other individual liable for the respondent's support a reasonable notice and opportunity to object to the reimbursement, the county of residence of the respondent may recover that cost from:

(1)    The respondent, if the respondent is not indigent;
(2)    Any person or entity that is legally liable for the resident's support and maintenance provided there is sufficient property to pay the cost;
(3)    Any person or entity that is contractually responsible for the cost; or
(4)    Any person or entity that otherwise is liable under federal, State, or local law for the cost."

**SECTION 20.**  G.S. 122C-253 reads as rewritten:

"**§ 122C-253.  Fees under commitment order.**

Nothing contained in Parts 6, 7, or 8 of this Article requires a private physician, private psychologist, commitment examiner, or private facility to accept a respondent as a client either before or after commitment. Treatment at a private facility or by a private ~~physician or private psychologist~~ physician, psychologist, or commitment examiner is at the expense of the respondent to the extent that the charges are not disposed of by contract between the area authority and the private facility. An area authority and its contract agencies shall set and recover fees for inpatient or outpatient treatment services provided under a commitment order in accordance with G.S. 122C-146."

**SECTION 21.**  G.S. 122C-255 reads as rewritten:

"**§ 122C-255.  Report required.**

~~Beginning January 1, 2012, each~~ Each 24-hour ~~residential~~ facility that (i) falls under the category of nonhospital medical detoxification, facility-based crisis service, or inpatient hospital treatment, (ii) is not a State facility under the jurisdiction of the Secretary of Health and Human Services, and (iii) is designated by the Secretary of Health and Human Services as a facility for the custody and treatment of individuals under a petition of involuntary commitment pursuant to G.S. 122C-252 and 10A NCAC 26C .0101 shall submit a written report on involuntary commitments each January 1 and each July 1 to the Department of Health and Human Services, Division of Mental Health, Developmental Disabilities, and Substance Abuse Services. The report shall include all of the following:

(1)    The number and primary presenting conditions of individuals receiving treatment from the facility under a petition of involuntary commitment.
(2)    The number of individuals for whom an involuntary commitment proceeding was initiated at the facility, who were referred to a different facility or program.
(3)    The reason for referring the individuals described in subdivision (2) of this section to a different facility or program, including the need for more intensive medical supervision."

**SECTION 22.**  G.S. 122C-261 reads as rewritten:

"**§ 122C-261.    Affidavit and petition before clerk or magistrate when immediate hospitalization is not necessary; custody order.**

Case 1:21-cv-00305-MR-WCM   Document 154-2   Filed 03/12/24   Page 16 of 37

(a)    Anyone who has knowledge of an individual who is mentally ill and either (i) dangerous to self, as defined in G.S. 122C-3(11)a., or dangerous to others, as defined in G.S. 122C-3(11)b., or (ii) in need of treatment in order to prevent further disability or deterioration that would predictably result in dangerousness, may appear before a clerk or assistant or deputy clerk of superior court or a magistrate and execute an affidavit to this effect, and petition the clerk or magistrate for issuance of an order to take the respondent into custody for examination by a ~~physician or eligible psychologist.~~commitment examiner. The affidavit shall include the facts on which the affiant's opinion is based. If the affiant has knowledge or reasonably believes that the respondent, in addition to being mentally ill, is also mentally retarded, this fact shall be stated in the affidavit. Jurisdiction under this subsection is in the clerk or magistrate in the county where the respondent resides or is found.

(b)    If the clerk or magistrate finds reasonable grounds to believe that the facts alleged in the affidavit are true and that the respondent is probably mentally ill and either (i) dangerous to self, as defined in G.S. 122C-3(11)a., or dangerous to others, as defined in G.S. 122C-3(11)b., or (ii) in need of treatment in order to prevent further disability or deterioration that would predictably result in dangerousness, the clerk or magistrate shall issue an order to a law enforcement officer or any other designated person ~~authorized~~ under ~~G.S. 122C-251~~ G.S. 122C-251(g) to take the respondent into custody for examination by a ~~physician or eligible psychologist.~~commitment examiner. If the clerk or magistrate finds that, in addition to probably being mentally ill, the respondent is also probably mentally retarded, the clerk or magistrate shall contact the area authority before issuing a custody order and the area authority shall designate the facility to which the respondent is to be taken for examination by a ~~physician or eligible psychologist.~~commitment examiner. The clerk or magistrate shall provide the petitioner and the respondent, if present, with specific information regarding the next steps that will occur for the respondent.

(c)    If the clerk or magistrate issues a custody order, the clerk or magistrate shall also make inquiry in any reliable way as to whether the respondent is indigent within the meaning of G.S. 7A-450. A magistrate shall report the result of this inquiry to the clerk.

(d)    If the affiant is a ~~physician or eligible psychologist,~~commitment examiner, all of the following apply:

(1)    ~~The~~ If the affiant has examined the respondent, the affiant may execute the affidavit before any official authorized to administer oaths. This affiant is not required to appear before the clerk or magistrate for this purpose. This affiant shall file the affidavit with the clerk or magistrate by delivering to the clerk or magistrate the original ~~affidavit or~~ affidavit, by transmitting a copy in paper form that is printed through the facsimile transmission of the ~~affidavit.~~affidavit, or by delivering the affidavit through electronic transmission. If the affidavit is filed through electronic or facsimile transmission, the affiant shall mail the original affidavit no later than five days after the facsimile transmission of the affidavit to the clerk or magistrate to be filed by the clerk or magistrate with the facsimile copy of the affidavit.

(2)    This affiant's examination shall comply with the requirements of the initial examination as provided in G.S. 122C-263(c). The affiant shall document in writing and file the examination findings with the affidavit delivered to the clerk or magistrate in accordance with subdivision (1) of subsection (d) of this section.

(3)    If the ~~physician or eligible psychologist~~ commitment examiner recommends outpatient commitment according to the criteria for outpatient commitment set forth in G.S. 122C-263(d)(1) and the clerk or magistrate finds probable cause to believe that the respondent meets the criteria for outpatient commitment, the clerk or magistrate shall issue an order that a hearing before

a district court judge be held to determine whether the respondent will be involuntarily committed. ~~The physician or eligible psychologist shall provide the respondent with written notice of any scheduled appointment and the name, address, and telephone number of the proposed outpatient treatment physician or center. The physician or eligible psychologist~~ The commitment examiner shall contact the ~~local management entity~~ LME/MCO that serves the county where the respondent resides or the ~~local management entity~~ LME/MCO that coordinated services for the respondent to inform the ~~local management entity~~ LME/MCO that the respondent has been scheduled for an appointment with an outpatient treatment physician or center. The commitment examiner shall provide the respondent with written notice of any scheduled appointment and the name, address, and telephone number of the proposed outpatient treatment physician or center.

(4) If the ~~physician or eligible psychologist~~ commitment examiner recommends inpatient commitment based on the criteria for inpatient commitment set forth in G.S. 122C-263(d)(2) and the clerk or magistrate finds probable cause to believe that the respondent meets the criteria for inpatient commitment, the clerk or magistrate shall issue an order to a law enforcement officer to take the respondent into custody for transportation to ~~or custody at~~ a 24-hour facility described in G.S. 122C-252, provided that if a 24-hour facility is not immediately available or appropriate to the respondent's medical condition, the respondent may be temporarily detained under appropriate supervision and, upon further examination, released in accordance with G.S. 122C-263(d)(2).

...

(7) If a ~~physician or eligible psychologist~~ commitment examiner executes an affidavit for inpatient commitment of a respondent, a ~~second~~ physician who is not the commitment examiner who performed the examination under this section shall be required to perform the examination required by G.S. 122C-266.

(8) No commitment examiner, area facility, acute care hospital, general hospital, or other site of first examination, or its officials, staff, employees, or other individuals responsible for the custody, examination, detention, management, supervision, treatment, or release of an individual examined for commitment, who is not grossly negligent, shall be held liable in any civil or criminal action for taking measures prior to the inpatient admission of the individual to a 24-hour facility.

(e) Except as provided in subdivision (5) of subsection (d) of this section, upon receipt of the custody order of the clerk or magistrate or a custody order issued by the court pursuant to G.S. 15A-1003, a law enforcement ~~officer or other~~ officer, person designated under G.S. 122C-251(g), or other person identified in the order shall take the respondent into custody within 24 hours after the order is signed, and proceed according to G.S. 122C-263. The custody order is valid throughout the State.

~~(f) When a petition is filed for an individual who is a resident of a single portal area, the procedures for examination by a physician or eligible psychologist as set forth in G.S. 122C-263 shall be carried out in accordance with the area plan. Prior to issuance of a custody order for a respondent who resides in an area authority with a single portal plan, the clerk or magistrate shall communicate with the area authority to determine the appropriate 24-hour facility to which the respondent should be admitted according to the area plan or to determine if there are more appropriate resources available through the area authority to assist the petitioner or the respondent. When an individual from a single portal area is presented for commitment at a~~

~~24-hour area or State facility directly, the individual may not be accepted for admission until the facility notifies the area authority and the area authority agrees to the admission. If the area authority does not agree to the admission, it shall determine the appropriate 24-hour facility to which the individual should be admitted according to the area plan or determine if there are more appropriate resources available through the area authority to assist the individual. If the area authority agrees to the admission, further planning of treatment for the client is the joint responsibility of the area authority and the facility as prescribed in the area plan.~~

Notwithstanding the provisions of this section, in no event shall an individual known or reasonably believed to be mentally retarded be admitted to a State psychiatric hospital, except as follows:

(1)    Persons described in G.S. 122C-266(b);

(2)    Persons admitted pursuant to G.S. 15A-1321;

(3)    Respondents who are so extremely dangerous as to pose a serious threat to the community and to other patients committed to non-State hospital psychiatric inpatient units, as determined by the Director of the Division of Mental Health, Developmental Disabilities, and Substance Abuse Services or his designee; and

(4)    Respondents who are so gravely disabled by both multiple disorders and medical fragility or multiple disorders and deafness that alternative care is inappropriate, as determined by the Director of the Division of Mental Health, Developmental Disabilities, and Substance Abuse Services or his designee.

Individuals transported to a State facility for the mentally ill who are not admitted by the facility may be transported by appropriate law enforcement officers or designated staff of the State facility in State-owned vehicles to an appropriate 24-hour facility that provides psychiatric inpatient care.

No later than 24 hours after the transfer, the responsible professional at the original facility shall notify the petitioner, the clerk of court, and, if consent is granted by the respondent, the next of kin, that the transfer has been completed."

**SECTION 23.** G.S. 122C-262 reads as rewritten:

"**§ 122C-262. Special emergency procedure for individuals needing immediate hospitalization.**

(a)    Anyone, including a law enforcement officer, who has knowledge of an individual who is subject to inpatient commitment according to the criteria of ~~G.S. 122C-261(a)~~ G.S. 122C-263(d)(2) and who requires immediate hospitalization to prevent harm to self or others, may transport the individual directly to an area facility or other place, including a State facility for the mentally ill, for examination by a ~~physician or eligible psychologist~~ commitment examiner in accordance with G.S. 122C-263(c).

(b)    Upon examination by the ~~physician or eligible psychologist,~~commitment examiner, if the individual meets the inpatient commitment criteria ~~required~~specified in ~~G.S. 122C-261(a),~~ ~~the physician or eligible psychologist~~ G.S. 122C-263(d)(2) and requires immediate hospitalization to prevent harm to self or others, the commitment examiner shall so certify in writing before any official authorized to administer oaths. The certificate shall also state the reason that the individual requires immediate hospitalization. If the ~~physician or eligible psychologist~~commitment examiner knows or has reason to believe that the individual is mentally retarded, the certificate shall so state.

(c)    If the ~~physician or eligible psychologist~~ commitment examiner executes the oath, appearance before a magistrate shall be waived. The ~~physician or eligible psychologist~~ commitment examiner shall send a copy of the certificate to the clerk of superior court by the most reliable and expeditious means. If it cannot be reasonably anticipated that the clerk will receive the copy within 24 hours, excluding Saturday, Sunday, and holidays, of the time that it

was signed, the physician or eligible psychologist shall also communicate the findings to the clerk by telephone.

(d)    Anyone, including a law enforcement officer if necessary, may transport the individual to a 24-hour facility described in G.S. 122C-252 for examination and treatment pending a district court hearing. If there is no area 24-hour facility and if the respondent is indigent and unable to pay for care at a private 24-hour facility, the law enforcement officer or other designated person providing transportation shall take the respondent to a State facility for the mentally ill designated by the Commission in accordance with G.S. 143B-147(a)(1)a and immediately notify the clerk of superior court of this action. The ~~physician's or eligible psychologist's~~ commitment examiner's certificate shall serve as the custody order and the law enforcement officer or other designated person shall provide transportation in accordance with the provisions of G.S. 122C-251. If a 24-hour facility is not immediately available or appropriate to the respondent's medical condition, the respondent may be temporarily detained under appropriate supervision in accordance with G.S. 122C-263(d)(2) and released in accordance with G.S. 122C-263(d)(2).

In the event an individual known or reasonably believed to be mentally retarded is transported to a State facility for the mentally ill, in no event shall that individual be admitted to that facility except as follows:

(1)    Persons described in G.S. 122C-266(b);

(2)    Persons admitted pursuant to G.S. 15A-1321;

(3)    Respondents who are so extremely dangerous as to pose a serious threat to the community and to other patients committed to non-State hospital psychiatric inpatient units, as determined by the Director of the Division of Mental Health, Developmental Disabilities, and Substance Abuse Services or his designee; and

(4)    Respondents who are so gravely disabled by both multiple disorders and medical fragility or multiple disorders and deafness that alternative care is inappropriate, as determined by the Director of the Division of Mental Health, Developmental Disabilities, and Substance Abuse Services or his designee.

Individuals transported to a State facility for the mentally ill who are not admitted by the facility may be transported by law enforcement officers or designated staff of the State facility in State-owned vehicles to an appropriate 24-hour facility that provides psychiatric inpatient care.

No later than 24 hours after the transfer, the responsible professional at the original facility shall notify the petitioner, the clerk of court, and, if consent is granted by the respondent, the next of kin, that the transfer has been completed.

...

(f)    If, upon examination of a respondent presented in accordance with subsection (a) of this section, the commitment examiner finds that the individual meets the criteria for inpatient commitment specified in G.S. 122C-263(d)(2) but does not require immediate hospitalization to prevent harm to self or others, the commitment examiner may petition the clerk or magistrate in accordance with G.S. 122C-261(d) for an order to take the individual into custody for transport to a 24-hour facility described in G.S. 122C-252. If the commitment examiner recommends inpatient commitment and the clerk or magistrate finds probable cause to believe that the respondent meets the criteria for inpatient commitment, the clerk or magistrate shall issue an order for transport to or custody at a 24-hour facility described in G.S. 122C-252; provided, however, that if a 24-hour facility is not immediately available or appropriate to the respondent's medical condition, the respondent may be temporarily detained under appropriate supervision in accordance with G.S. 122C-263(d)(2) and released in accordance with G.S. 122C-263(d)(2).

(g)    This section applies exclusively to an individual who is transported to an area facility or other place for an examination by a commitment examiner in accordance with subsection (a) of this section."

Case 1:21-cv-00305-MR-WCM   Document 154-2   Filed 03/12/24   Page 20 of 37

**SECTION 24.** G.S. 122C-263 reads as rewritten:

"**§ 122C-263. Duties of ~~law-enforcement~~ law enforcement officer; first ~~examination by physician or eligible psychologist.~~examination.**

(a)       Without unnecessary delay after assuming custody, the law enforcement officer or the individual designated ~~by the clerk~~ or ~~magistrate under G.S. 122C-251(g)~~ required to provide transportation pursuant to G.S. 122C-251(g) shall take the respondent to ~~an area a~~ facility ~~for examination by a physician or eligible psychologist; if a physician or eligible psychologist~~ or other location identified by the LME/MCO in the community crisis services plan adopted pursuant to G.S. 122C-202.2 that has an available commitment examiner and is capable of performing a first examination in conjunction with a health screening at the same location, unless exigent circumstances require the respondent be transported to an emergency department. If a commitment examiner is not ~~available in the area facility,~~available, whether on-site, on-call, or via telemedicine, at any facility or location, or if a plan has not been adopted, the person designated to provide transportation shall take the respondent to an alternative non-hospital provider or facility-based crisis center for a first examination in conjunction with a health screening at the same location. If no non-hospital provider or facility-based crisis center for a first examination in conjunction with a health screening at the same location for health screening and first examination exists, the person designated to provide transportation shall take the respondent to ~~any physician or eligible psychologist locally available.~~a private hospital or clinic, a general hospital, an acute care hospital, or a State facility for the mentally ill. If a ~~physician or eligible psychologist~~ commitment examiner is not immediately ~~available~~ available, the respondent may be temporarily detained in an area facility, if one is available; if an area facility is not available, the respondent may be detained under appropriate supervision in the respondent's home, in a private hospital or a clinic, in a general hospital, or in a State facility for the mentally ill, but not in a jail or other penal facility. For the purposes of this section, "non-hospital provider" means an outpatient provider that provides either behavioral health or medical services.

(a1)      A facility or other location to which a respondent is transported under subsection (a) of this section shall provide a health screening of the respondent. The health screening shall be conducted by a commitment examiner or other individual who is determined by the area facility, contracted facility, or other location to be qualified to perform the health screening. The Department will work with commitment examiner professionals to develop a screening tool for this purpose. The respondent may either be in the physical face-to-face presence of the person conducting the screen or may be examined utilizing telemedicine equipment and procedures. Documentation of the health screening required under this subsection that is completed prior to transporting the patient to any general hospital, acute care hospital, or designated facility shall accompany the patient or otherwise be made available at the time of transportation to the receiving facility.

(b)       The examination set forth in subsection (a) of this section is not required ~~if:~~under any of the following circumstances:

(1)       The affiant who obtained the custody order is a ~~physician or eligible psychologist~~ commitment examiner who recommends inpatient ~~commitment;~~commitment.

(2)       The custody order states that the respondent was charged with a violent crime, including a crime involving assault with a deadly weapon, and ~~he~~ the respondent was found incapable of ~~proceeding; or~~proceeding.

(3)       Repealed by Session Laws 1987, c. 596, s. 3.

In any of these cases, the ~~law-enforcement~~ law enforcement officer or person designated under G.S. 122C-251(g) shall take the respondent directly to a 24-hour facility described in G.S. 122C-252.

(c)       The ~~physician or eligible psychologist~~ commitment examiner described in subsection (a) of this section shall examine the respondent as soon as possible, and in any event within 24

Case 1:21-cv-00305-MR-WCM   Document 154-2   Filed 03/12/24   Page 21 of 37

hours,hours after the respondent is presented for examination. When the examination set forth in subsection (a) of this section is performed by a ~~physician or eligible psychologis t~~commitment examiner, the respondent may either be in the physical face-to-face presence of the ~~physician or eligible psychologist~~ commitment examiner or may be examined utilizing telemedicine equipment and procedures. A ~~physician or eligible psychologist~~ commitment examiner who examines a respondent by means of telemedicine must be satisfied to a reasonable medical certainty that the determinations made in accordance with subsection (d) of this section would not be different if the examination had been done in the physical presence of the ~~physician or eligible psychologist. A physician or eligible psychologist~~ commitment examiner. A commitment examiner who is not so satisfied must note that the examination was not satisfactorily accomplished, and the respondent must be taken for a face-to-face examination in the physical presence of a person authorized to perform examinations under this section. As used in this ~~subsection,~~section, "telemedicine" is the use of two-way real-time interactive audio and video between places of lesser and greater medical capability or expertise to provide and support health care when distance separates participants who are in different geographical locations. A recipient is referred by one provider to receive the services of another provider via telemedicine.

The examination shall include ~~but is not limited to~~ an assessment of ~~the respondent's:~~at least all of the following with respect to the respondent.

    (1)    Current and previous mental illness and mental retardation including, if available, previous treatment ~~history;~~history.

    (2)    Dangerousness to self, as defined in G.S. 122C-3(11)a. or others, as defined in ~~G.S. 122C-3(11)b.;~~G.S. 122C-3(11)b.

    (3)    Ability to survive safely without inpatient commitment, including the availability of supervision from family, friends or ~~others; and~~others.

    (4)    Capacity to make an informed decision concerning treatment.

    (d)    After the conclusion of the examination the ~~physician or eligible psychologist~~ commitment examiner shall make the following determinations:

    (1)    If the ~~physician or eligible psychologist~~ commitment examiner finds ~~that:~~all of the following:

        a.    The respondent is mentally ~~ill;~~ill.

        b.    The respondent is capable of surviving safely in the community with available supervision from family, friends, or ~~others;~~others.

        c.    Based on the respondent's psychiatric history, the respondent is in need of treatment in order to prevent further disability or deterioration that would predictably result in dangerousness as defined by ~~G.S. 122C-3(11); and~~G.S. 122C-3(11).

        d.    The respondent's current mental status or the nature of the respondent's illness limits or negates the respondent's ability to make an informed decision to seek voluntarily or comply with recommended treatment.

The ~~physician or eligible psychologist~~ commitment examiner shall so show on the examination report and shall recommend outpatient commitment. In addition the ~~examining physician or eligible psychologist~~ commitment examiner shall show the name, address, and telephone number of the proposed outpatient treatment physician or ~~center.~~center in accordance with subsection (f) of this section. The person designated in the order to provide transportation shall return the respondent to the respondent's regular residence or, with the respondent's consent, to the home of a consenting individual located in the originating county, and the respondent shall be released from custody.

    (2)    If the ~~physician or eligible psychologist~~ commitment examiner finds that the respondent is mentally ill and is dangerous to self, as defined in G.S. 122C-3(11)a., or others, as defined in G.S. 122C-3(11)b., the ~~physician~~

Case 1:21-cv-00305-MR-WCM   Document 154-2   Filed 03/12/24   Page 22 of 37

or eligible psychologist commitment examiner shall recommend inpatient commitment, and shall so show on the examination report. If, in addition to mental illness and dangerousness, the physician or eligible psychologist commitment examiner also finds that the respondent is known or reasonably believed to be mentally retarded, this finding shall be shown on the report. The Upon notification, the law enforcement officer or other designated person shall take the respondent to a 24-hour facility described in G.S. 122C-252 pending a district court hearing. To the extent feasible, in providing the transportation of the respondent, the law enforcement officer shall act within six hours of notification. The other designated person shall take the respondent to a 24-hour facility described in G.S. 122C-252 pending a district court hearing within six hours of notification. If there is no area 24-hour facility and if the respondent is indigent and unable to pay for care at a private 24-hour facility, the law enforcement officer or other designated person shall take the respondent to a State facility for the mentally ill designated by the Commission in accordance with G.S. 143B-147(a)(1)a. for custody, observation, and treatment and immediately notify the clerk of superior court of this action. If a 24-hour facility is not immediately available or appropriate to the respondent's medical condition, the respondent may be temporarily detained under appropriate supervision at the site of the first examination,provided that at anytime that a physician or eligible psychologist examination. Upon the commitment examiner's determination that a 24-hour facility is available and medically appropriate, the law enforcement officer or other designated person shall transport the respondent after receiving a request for transportation by the facility of the commitment examiner. To the extent feasible, in providing the transportation of the respondent, the law enforcement officer shall act within six hours of notification. The other designated person shall transport the respondent without unnecessary delay and within six hours after receiving a request for transportation by the facility of the commitment examiner. At any time during the respondent's temporary detention under appropriate supervision, if a commitment examiner determines that the respondent is no longer in need of inpatient commitment, the proceedings shall be terminated and the respondent transported and released in accordance with subdivision (3) of this subsection. However, if the physician or eligible psychologist commitment examiner determines that the respondent meets the criteria for outpatient commitment, as defined in subdivision (1) of this subsection, the physician or eligible psychologist commitment examiner may recommend outpatient commitment, and the respondent shall be transported and released in accordance with subdivision (1) of this subsection. Any decision to terminate the proceedings or to recommend outpatient commitment after an initial recommendation of inpatient commitment shall be documented and reported to the clerk of superior court in accordance with subsection (e) of this section. If the respondent is temporarily detained and a 24-hour facility is not available or medically appropriate seven days after the issuance of the custody order, a physician or psychologist commitment examiner shall report this fact to the clerk of superior court and the proceedings shall be terminated. Termination of proceedings pursuant to this subdivision shall not prohibit or prevent the initiation of new involuntary commitment proceedings when appropriate. A commitment examiner may initiate a new involuntary commitment proceeding prior to the expiration of this seven-day period, as long as the

respondent continues to meet applicable criteria. Affidavits filed in support of proceedings terminated pursuant to this subdivision may not be submitted in support of any subsequent petitions for involuntary commitment. If the affiant initiating new commitment proceedings is a ~~physician or eligible psychologist,~~commitment examiner, the affiant shall conduct a new examination and may not rely upon examinations conducted as part of proceedings terminated pursuant to this subdivision.

In the event an individual known or reasonably believed to be mentally retarded is transported to a State facility for the mentally ill, in no event shall that individual be admitted to that facility except as follows:

a.     Persons described in G.S. 122C-266(b);
b.     Persons admitted pursuant to G.S. 15A-1321;
c.     Respondents who are so extremely dangerous as to pose a serious threat to the community and to other patients committed to non-State hospital psychiatric inpatient units, as determined by the Director of the Division of Mental Health, Developmental Disabilities, and Substance Abuse Services or his designee; and
d.     Respondents who are so gravely disabled by both multiple disorders and medical fragility or multiple disorders and deafness that alternative care is inappropriate, as determined by the Director of the Division of Mental Health, Developmental Disabilities, and Substance Abuse Services or his designee.

Individuals transported to a State facility for the mentally ill who are not admitted by the facility may be transported by law enforcement officers or designated staff of the State facility in State-owned vehicles to an appropriate 24-hour facility that provides psychiatric inpatient care.

No later than 24 hours after the transfer, the responsible professional at the original facility shall notify the petitioner, the clerk of court, and, if consent is granted by the respondent, the next of kin, that the transfer has been completed.

(3)     If the ~~physician or eligible psychologist~~ commitment examiner finds that neither condition described in subdivisions (1) or (2) of this subsection exists, the proceedings shall be terminated. The person designated in the order to provide transportation shall return the respondent to the respondent's regular residence or, with the respondent's consent, to the home of a consenting individual located in the originating county and the respondent shall be released from custody.

(e)     The findings of the ~~physician or eligible psychologist~~ commitment examiner and the facts on which they are based shall be in writing in all cases. The ~~physician or eligible psychologist~~ commitment examiner shall send a copy of the findings to the clerk of superior court by the most reliable and expeditious means. If it cannot be reasonably anticipated that the clerk will receive the copy within 48 hours of the time that it was signed, the physician or eligible psychologist shall also communicate his findings to the clerk by telephone.

(f)     When outpatient commitment is recommended, the ~~examining physician or eligible psychologist,~~commitment examiner, if different from the proposed outpatient treatment physician or center, ~~shall give the respondent a written notice listing the name, address, and telephone number of the proposed outpatient treatment physician or center and directing the respondent to appear at the address at a specified date and time. The examining physician or eligible psychologist before the appointment shall notify by telephone the designated outpatient treatment physician or center and shall send a copy of the notice and his examination report to the physician or center.~~shall contact the LME/MCO that serves the county where the respondent

Case 1:21-cv-00305-MR-WCM   Document 154-2   Filed 03/12/24   Page 24 of 37

resides or the LME/MCO that coordinated services for the respondent to inform the LME/MCO that the respondent is being recommended for outpatient commitment. The commitment examiner shall give the respondent a written notice listing the name, address, and telephone number of the proposed outpatient treatment physician or center.

(g) The ~~physician or eligible psychologist,~~commitment examiner, at the completion of the examination, shall provide the respondent with specific information regarding the next steps that will occur."

SECTION 25. G.S. 122C-263.1 reads as rewritten:

"**§ 122C-263.1. Secretary's authority to ~~waive requirement of first examination by physician or eligible psychologist;~~certify commitment examiners; training of certified ~~providers commitment examiners~~ performing first ~~examinations.~~examinations; LME/MCO responsibilities.**

(a) Physicians and eligible psychologists are qualified to perform the commitment examinations required under G.S. 122C-263(c) and G.S. 122C-283(c). The Secretary of Health and Human Services ~~may, upon request of an LME, waive the requirements of G.S. 122C-261 through G.S. 122C-263 and G.S. 122C-281 through G.S. 122C-283 pertaining to initial (first-level) examinations of individuals meeting the criteria of G.S. 122C-261(a) or G.S. 122C-281(a), as applicable, as follows:~~may individually certify to perform the first commitment examinations required by G.S. 122C-261 through G.S. 122C-263 and G.S. 122C-281 through G.S. 122C-283 other health, mental health, and substance abuse professionals whose scope of practice includes diagnosing and documenting psychiatric or substance use disorders and conducting mental status examinations to determine capacity to give informed consent to treatment as follows:

(1) The Secretary has received a ~~request from an LME to substitute for a physician or eligible psychologist, a licensed clinical social worker, a master's level psychiatric nurse, or a master's level certified clinical addictions specialist in accordance with subdivision (8) of this subsection to conduct the initial (first-level) examinations of individuals meeting the criteria of G.S. 122C-261(a) or G.S. 122C-281(a). In making this type of request, the LME shall specifically describe all of the following:~~request:

a. ~~How the purpose of the statutory requirement would be better served by waiving the requirement and substituting the proposed change under the waiver.~~To certify a licensed clinical social worker, a master's or higher level degree nurse practitioner, a licensed professional counsellor, or a physician's assistant to conduct the first examinations described in G.S. 122C-263(c) and G.S. 122C-283(c).

b. ~~How the waiver will enable the LME to improve the delivery or management of mental health, developmental disabilities, and substance abuse services.~~To certify a master's level licensed clinical addictions specialist to conduct the first examination described in G.S. 122C-283(c).

c. ~~How the health, safety, and welfare of individuals will continue to be at least as well protected under the waiver as under the statutory requirement.~~

(2) The Secretary shall review the request and may approve it upon finding all of the following:

a. The request meets the requirements of this section.

b. ~~The request furthers the purposes of State policy under G.S. 122C-2 and mental health, developmental disabilities, and substance abuse services reform.~~

Case 1:21-cv-00305-MR-WCM   Document 154-2   Filed 03/12/24   Page 25 of 37

c.  ~~The request improves the delivery of mental health, developmental disabilities, and substance abuse services in the counties affected by the waiver and also protects the health, safety, and welfare of individuals receiving these services.~~

d.  <u>The Department determines that the applicant possesses the professional licensure, registration, or certification to qualify the applicant as a professional whose scope of practice includes diagnosing and documenting psychiatric or substance use disorders and conducting mental status examinations to determine capacity to give informed consent to treatment.</u>

e.  <u>The applicant for certification has successfully completed the Department's standardized training program for involuntary commitment and has successfully passed the examination for that program.</u>

(3) ~~The Secretary shall evaluate the effectiveness, quality, and efficiency of mental health, developmental disabilities, and substance abuse services and protection of health, safety, and welfare under the waiver.~~

(4) A ~~waiver~~ <u>certification</u> granted by the Secretary under this section shall be in effect for a period of up to three years and may be rescinded at any time within this period if the Secretary finds the ~~LME~~ <u>certified individual</u> has failed to meet the requirements of this section. <u>Certification may be renewed every three years upon completion of a refresher training program approved by the Department.</u>

(5) In no event shall the ~~substitution~~ <u>certification</u> of a licensed clinical social worker, master's <u>or higher</u> level ~~psychiatric nurse,~~ <u>degree nurse practitioner, licensed professional counsellor, physician assistant,</u> or master's level certified clinical addictions specialist ~~under a waiver granted~~ under this section be construed as authorization to expand the scope of practice of the licensed clinical social worker, the master's level ~~psychiatric nurse,~~ <u>nurse practitioner, licensed professional counsellor, physician assistant,</u> or the master's level certified clinical addictions specialist.

(6) The Department shall require that individuals ~~performing~~ <u>certified to perform</u> initial examinations under ~~the waiver~~ <u>this section</u> have successfully completed the Department's standardized <u>involuntary commitment</u> training program and examination. The Department shall maintain a list of these individuals on its <u>Internet</u> Web site.

(7) ~~As part of its waiver request, the LME shall document the availability of a physician to provide backup support.~~

(7a) <u>No less than annually, the Department shall submit a list of certified first commitment examiners to the Chief District Court Judge of each judicial district in North Carolina and maintain a current list of certified first commitment examiners on its Internet Web site.</u>

(8) A master's level ~~certified~~ <u>licensed</u> clinical addiction specialist shall only be authorized to conduct the initial examination of individuals meeting the criteria of G.S. 122C-281(a).

(b) The ~~Division of Mental Health, Developmental Disabilities, and Substance Abuse Services~~ <u>Department</u> shall expand its standardized certification training program to include refresher training for all certified providers performing initial examinations pursuant to subsection (a) of this section."

**SECTION 26.** G.S. 122C-264 reads as rewritten:

"**§ 122C-264. Duties of clerk of superior court and the district attorney.**

(a)     Upon receipt of a ~~physician's or eligible psychologist's~~ commitment examiner's finding that the respondent meets the criteria of G.S. 122C-263(d)(1) and that outpatient commitment is recommended, the clerk of superior court of the county where the petition was initiated, upon direction of a district court judge, shall calendar the matter for hearing and shall notify the respondent, the proposed outpatient treatment physician or center, and the petitioner of the time and place of the hearing. The petitioner may file a written waiver of his right to notice under this subsection with the clerk of court.

(b)     Upon receipt <u>by the clerk of superior court pursuant to G.S. 122C-266(c)</u> of a ~~physician's or eligible psychologist's~~ commitment examiner's finding that a respondent meets the criteria of G.S. 122C-263(d)(2) and that inpatient commitment is recommended, the clerk of superior court of the county where the 24-hour facility is located shall, after determination required by G.S. 122C-261(c) and upon direction of a district court judge, assign counsel if necessary, calendar the matter for hearing, and notify the respondent, his counsel, and the petitioner of the time and place of the hearing. The petitioner <u>or respondent, directly or through counsel,</u> may file a written waiver of ~~his~~ <u>the</u> right to notice under this subsection with the clerk of court.

(b1)     Upon receipt of a ~~physician's or eligible psychologist's~~ commitment examiner's certificate that a respondent meets the criteria of G.S. 122C-261(a) and that immediate hospitalization is needed pursuant to G.S. 122C-262, the clerk of superior court of the county where the treatment facility is located shall submit the certificate to the Chief District Court Judge. The court shall review the certificate within 24 hours, excluding Saturday, Sunday, and holidays, for a finding of reasonable grounds in accordance with [G.S.] 122C-261(b). The clerk shall notify the treatment facility of the court's findings by telephone and shall proceed as set forth in subsections (b), (c), and (f) of this section.

...."

**SECTION 27.** G.S. 122C-265 reads as rewritten:

"**§ 122C-265. Outpatient commitment; examination and treatment pending hearing.**

(a)     If a respondent, who has been recommended for outpatient commitment by ~~an examining physician or eligible psychologist~~ <u>commitment examiner</u> different from the proposed outpatient treatment physician or center, fails to appear for examination by the proposed outpatient treatment physician or center at the designated time, the physician or center shall notify the clerk of superior court who shall issue an order to a ~~law enforcement~~ <u>law enforcement</u> officer ~~or other person authorized under G.S. 122C-251~~ to take the respondent into custody and take him immediately to the outpatient treatment physician or center for evaluation. The custody order is valid throughout the State. The law-enforcement officer may wait during the examination and return the respondent to his home after the examination.

(b)     The examining ~~physician~~ <u>commitment examiner</u> or the proposed outpatient treatment physician or center may prescribe to the respondent reasonable and appropriate medication and treatment that are consistent with accepted medical standards pending the district court hearing.

(c)     In no event may a respondent released on a recommendation that he <u>or she</u> meets the outpatient commitment criteria be physically forced to take medication or ~~forceably~~ <u>forcibly</u> detained for treatment pending a district court hearing.

(d)     If at any time pending the district court hearing the outpatient treatment physician or center determines that the respondent does not meet the criteria of G.S. 122C-263(d)(1), ~~he~~ <u>the physician</u> shall release the respondent and notify the clerk of court and the proceedings shall be terminated.

(e)     If a respondent becomes dangerous to ~~himself,~~ <u>self</u> as defined in G.S. 122C-3(11)a., or others, as defined in G.S. 122C-3(11)b., pending a district court hearing on outpatient commitment, new proceedings for involuntary inpatient commitment may be initiated.

(f)     If an inpatient commitment proceeding is initiated pending the hearing for outpatient commitment and the respondent is admitted to a 24-hour facility to be held for an inpatient

commitment hearing, notice shall be sent by the clerk of court in the county where the respondent is being held to the clerk of court of the county where the outpatient commitment was initiated and the outpatient commitment proceeding shall be terminated."

      **SECTION 28.** G.S. 122C-267 reads as rewritten:

"**§ 122C-267. Outpatient commitment; district court hearing.**

…

    (c)    Certified copies of reports and findings of ~~physicians and psychologists~~ commitment examiners and medical records of previous and current treatment are admissible in evidence.

…."

      **SECTION 29.** G.S. 122C-268 reads as rewritten:

"**§ 122C-268. Inpatient commitment; district court hearing.**

    (a)    A hearing shall be held in district court within 10 days of the day the respondent is taken into law enforcement custody pursuant to G.S. 122C-261(e) or G.S. 122C-262. If a respondent temporarily detained under G.S. 122C-263(d)(2) is subject to a series of successive custody orders issued pursuant to G.S. 122C-263(d)(2), the hearing shall be held within 10 days after the day that the respondent is taken into custody under the most recent custody order. A continuance of not more than five days may be granted upon motion ~~of:~~of any of the following:

        (1)    The ~~court;~~court.

        (2)    Respondent's ~~counsel; or~~counsel.

        (3)    The State, sufficiently in advance to avoid movement of the respondent.

…

    (f)    Certified copies of reports and findings of ~~physicians and psychologists~~ commitment examiners and previous and current medical records are admissible in evidence, but the respondent's right to confront and cross-examine witnesses may not be denied.

    (g)    ~~Hearings may~~ To the extent feasible, hearings shall be held in an appropriate room ~~not used for treatment of clients~~ at the facility in which the respondent is being treated ~~if it~~ in a manner approved by the chief district court judge if the facility is located within the presiding judge's district court district as defined in ~~G.S. 7A-133, by audio and video transmission between a treatment facility and a courtroom in which the judge and the respondent can see and hear each other, or~~ G.S. 7A-133. Hearings may be held in the judge's chambers. A hearing may not be held in a regular courtroom, over objection of the respondent, if in the discretion of a judge a more suitable place is available. A hearing may be held by audio and video transmission between the treatment facility and a courtroom in a manner that allows (i) the judge and the respondent to see and hear each other and (ii) the respondent to communicate fully and confidentially with the respondent's counsel during the proceeding. Prior to any hearing held by audio and video transmission, the chief district court judge shall submit to the Administrative Office of the Courts the procedures and type of equipment for audio and video transmission for approval by the Administrative Office of the Courts. Notwithstanding the provisions of this subsection, if the respondent, through counsel, objects to a hearing held by audio and video transmission, the hearing shall be held in the physical presence of the presiding district court judge. Regardless of the manner and location for hearings, hearings shall be held in a manner that complies with any applicable federal and State laws governing the confidentiality and security of confidential information, including any information transmitted from the treatment facility by audio and video transmission. If the respondent has counsel, the respondent shall be allowed to communicate fully and confidentially with his attorney during the proceeding. Prior to the use of the audio and video transmission, the procedures and type of equipment for audio and video transmission shall be submitted to the Administrative Office of the Courts by the chief district court judge and approved by the Administrative Office of the Courts.

…."

      **SECTION 30.** G.S. 122C-271 reads as rewritten:

"**§ 122C-271. Disposition.**

Case 1:21-cv-00305-MR-WCM   Document 154-2   Filed 03/12/24   Page 28 of 37

(a)    If ~~an examining physician or eligible psychologist~~ a commitment examiner has recommended outpatient commitment and the respondent has been released pending the district court hearing, the court may make one of the following dispositions:

        (1)    If the court finds by clear, cogent, and convincing evidence that the respondent is mentally ill; that he is capable of surviving safely in the community with available supervision from family, friends, or others; that based on respondent's treatment history, the respondent is in need of treatment in order to prevent further disability or deterioration that would predictably result in dangerousness as defined in G.S. 122C-3(11); and that the respondent's current mental status or the nature of his illness limits or negates his ability to make an informed decision to seek voluntarily or comply with recommended treatment, it may order outpatient commitment for a period not in excess of 90 days.

        (2)    If the court does not find that the respondent meets the criteria of commitment set out in subdivision (1) of this subsection, the respondent shall be discharged and the ~~facility at which he was last a client~~ proposed outpatient physician center so notified.

        <u>(3)    Before ordering any outpatient commitment under this subsection, the court shall make findings of fact as to the availability of outpatient treatment from an outpatient treatment physician or center that has agreed to accept the respondent as a client of outpatient treatment services. The court shall show on the order the outpatient treatment physician or center that is to be responsible for the management and supervision of the respondent's outpatient commitment. If the designated outpatient treatment physician or center will be monitoring and supervising the respondent's outpatient commitment pursuant to a contract for services with an LME/MCO, the court shall show on the order the identity of the LME/MCO. The clerk of court shall send a copy of the outpatient commitment order to the designated outpatient treatment physician or center and to the respondent client or the legally responsible person. The clerk of court shall also send a copy of the order to that LME/MCO. Copies of outpatient commitment orders sent by the clerk of court to an outpatient treatment center or physician under this section, including orders sent to an LME/MCO, shall be sent by the most reliable and expeditious means, but in no event less than 48 hours after the hearing.</u>

(b)    If the respondent has been held in a 24-hour facility pending the district court hearing pursuant to G.S. 122C-268, the court may make one of the following dispositions:

        …

        (4)    Before ordering any outpatient commitment, the court shall make findings of fact as to the availability of outpatient ~~treatment.~~<u>treatment from an outpatient treatment physician or center that has agreed to accept the respondent as a client of outpatient treatment services.</u> The court shall also show on the order the outpatient treatment physician or center who is to be responsible for the management and supervision of the respondent's outpatient commitment. When an outpatient commitment order is issued for a respondent held in a 24-hour facility, the court may order the respondent held at the facility for no more than 72 hours in order for the facility to notify the designated outpatient treatment physician or center of the treatment needs of the respondent. The clerk of court in the county where the facility is located shall send a copy of the outpatient commitment order to the designated outpatient treatment physician or ~~center.~~<u>center and to the respondent or the legally responsible person. If the designated outpatient treatment physician or center shall be</u>

Case 1:21-cv-00305-MR-WCM    Document 154-2    Filed 03/12/24    Page 29 of 37

monitoring and supervising the respondent's outpatient commitment pursuant to a contract for services with an LME/MCO, the clerk of court shall how on the order the identity of the LME/MCO. The clerk of court shall send a copy of the order to the LME/MCO. Copies of outpatient commitment orders sent by the clerk of court to an outpatient treatment center or physician pursuant to this subdivision, including orders sent to an LME/MCO, shall be sent by the most reliable and expeditious means, but in no event less than 48 hours after the hearing. If the outpatient commitment will be supervised in a county other than the county where the commitment originated, the court shall order venue for further court proceedings to be transferred to the county where the outpatient commitment will be supervised. Upon an order changing venue, the clerk of superior court in the county where the commitment originated shall transfer the file to the clerk of superior court in the county where the outpatient commitment is to be supervised.

...."

**SECTION 31.** G.S. 122C-276 reads as rewritten:

"**§ 122C-276.  Inpatient commitment; rehearings for respondents other than insanity acquittees.**

...

(c)     Subject to the provisions of G.S. 122C-269(c), rehearings shall be held ~~at the facility in which the respondent is receiving treatment.~~as authorized in G.S. 122C-268(g). The judge is a judge of the district court of the district court district as defined in G.S. 7A-133 in which the facility is located or a district court judge temporarily assigned to that district.

...."

**SECTION 32.** G.S. 122C-281 reads as rewritten:

"**§ 122C-281.  Affidavit and petition before clerk or magistrate; custody order.**

(a)     Any individual who has knowledge of a substance abuser who is dangerous to ~~himself~~ self or others may appear before a clerk or assistant or deputy clerk of superior court or a magistrate, execute an affidavit to this effect, and petition the clerk or magistrate for issuance of an order to take the respondent into custody for examination by a ~~physician or eligible psychologist.~~commitment examiner. The affidavit shall include the facts on which the affiant's opinion is based. Jurisdiction under this subsection is in the clerk or magistrate in the county where the respondent resides or is found.

(b)     If the clerk or magistrate finds reasonable grounds to believe that the facts alleged in the affidavit are true and that the respondent is probably a substance abuser and dangerous to ~~himself~~self or others, ~~he~~the clerk or magistrate shall issue an order to a ~~law-enforcement~~law enforcement officer or any other person ~~authorized by G.S. 122C-251~~designated under G.S.122C-251(g) to take the respondent into custody for examination by a ~~physician or eligible psychologist.~~commitment examiner.

(c)     If the clerk or magistrate issues a custody order, ~~he~~the clerk or magistrate shall also make inquiry in any reliable way as to whether the respondent is indigent within the meaning of G.S. 7A-450. A magistrate shall report the result of this inquiry to the clerk.

(d)     If the affiant is a ~~physician or eligible psychologist,~~commitment examiner who has examined the respondent, ~~he~~ or she may execute the affidavit before any official authorized to administer oaths. ~~He~~The commitment examiner is not required to appear before the clerk or magistrate for this purpose. ~~His~~The commitment examiner's examination shall comply with the requirements of the initial examination as provided in G.S. 122C-283(c). The affiant shall file the affidavit and examination findings with the clerk of court in the manner described in G.S. 122C-261(d)(1). If the ~~physician or eligible psychologist~~commitment examiner recommends commitment and the clerk or magistrate finds probable cause to believe that the respondent meets the criteria for commitment, ~~he~~the clerk or magistrate shall issue an order to a

Case 1:21-cv-00305-MR-WCM   Document 154-2   Filed 03/12/24   Page 30 of 37

law enforcement officer to take the respondent into custody for transportation to ~~or custody at a~~ 24-hour ~~facility or release the respondent,~~facility, or, if the respondent is released pending hearing, as described in ~~G.S. 122C-283(d)(1).~~G.S. 122C-283(d)(1), order that a hearing be held as provided in G.S. 122C-284(a). If a physician or eligible psychologist executes an affidavit for commitment of a respondent, a second qualified professional shall perform the examination required by G.S. 122C-285. Any person or entity who or which has been designated in compliance with G.S. 122C-251(g) shall be permitted to complete all or part of the duties of a law enforcement officer, in accord with the designation.

(e) Upon receipt of the custody order of the clerk or magistrate, a ~~law enforcement~~law enforcement officer or other ~~person~~designated person identified in the order shall take the respondent into custody within 24 hours after the order is signed. The custody order is valid throughout the State.

(e1) No commitment examiner, area facility, acute care hospital, general hospital, or other site of first examination, or their officials, staff, employees, or other individuals responsible for the custody, examination, detention, management, supervision, treatment, or release of an individual examined for commitment, who is not grossly negligent, shall be held liable in any civil or criminal action for taking measures to temporarily detain an individual for the period of time necessary to complete a commitment examination, submit an affidavit to the magistrate or clerk of court, and await the issuance of a custody order as authorized by subsection (d) of this section.

~~(f) When a petition is filed for an individual who is a resident of a single portal area, the procedures for examination by a physician or eligible psychologist as set forth in G.S. 122C-283(c) shall be carried out in accordance with the area plan. When an individual from a single portal area is presented for commitment at a facility directly, he may be accepted for admission in accordance with G.S. 122C-285. The facility shall notify the area authority within 24 hours of admission and further planning of treatment for the individual is the joint responsibility of the area authority and the facility as prescribed in the area plan.~~"

**SECTION 33.** G.S. 122C-282 reads as rewritten:

"**§ 122C-282. Special emergency procedure for violent individuals.**

When an individual subject to commitment under the provisions of this Part is also violent and requires restraint and when delay in taking ~~him~~the individual to a ~~physician or eligible psychologist~~commitment examiner for examination would likely endanger life or property, a ~~law enforcement~~law enforcement officer may take the person into custody and take him or her immediately before a magistrate or clerk. The ~~law enforcement~~law enforcement officer shall execute the affidavit required by G.S. 122C-281 and in addition shall swear that the respondent is violent and requires restraint and that delay in taking the respondent to a ~~physician or eligible psychologist~~commitment examiner for an examination would endanger life or property.

If the clerk or magistrate finds by clear, cogent, and convincing evidence that the facts stated in the affidavit are true, that the respondent is in fact violent and requires restraint, and that delay in taking the respondent to a ~~physician or eligible psychologist~~commitment examiner for an examination would endanger life or property, ~~he~~the clerk or magistrate shall order the ~~law enforcement~~law enforcement officer to take the respondent directly to a 24-hour facility described in G.S. 122C-252.

Respondents received at a 24-hour facility under the provisions of this section shall be examined and processed thereafter in the same way as all other respondents under this Part."

**SECTION 34.** G.S. 122C-283 reads as rewritten:

"**§ 122C-283. Duties of law-enforcement officer; first examination by ~~physician or eligible psychologist.~~commitment examiner.**

(a) Without unnecessary delay after assuming custody, the ~~law enforcement~~law enforcement officer or the individual designated ~~by the clerk or magistrate~~or required to provide transportation under G.S. 122C-251(g) ~~to provide transportation~~shall take the respondent to ~~an~~

~~area a~~ facility ~~for examination by a physician or eligible psychologist if a physician or eligible psychologist is not available in the area facility, he shall take the respondent to any physician or eligible psychologist locally available.~~ or other location identified by the LME/MCO in the community crisis services plan adopted pursuant to G.S. 122C-202.2 that has an available commitment examiner and is capable of performing a first examination in conjunction with a health screening in the same location, unless exigent circumstances require the respondent be transported to an emergency department. If a commitment examiner is not available, whether on-site, on-call, or via telemedicine, at any facility or location, or if a plan has not been adopted, the person designated to provide transportation shall take the respondent to an alternative non-hospital provider or facility-based crisis center for a first examination in conjunction with a health screening at the same location. If no non-hospital provider or facility-based crisis center for a first examination in conjunction with a health screening at the same location, the person designated to provide transportations shall take the respondent to a private hospital or clinic, a general hospital, an acute care hospital, or a State facility for the mentally ill. If a ~~physician or eligible psychologist~~ commitment examiner is not immediately available, the respondent may be temporarily detained in an area facility if one is available; if an area facility is not available, he may be detained under appropriate supervision, in his home, in a private hospital or a clinic, or in a general hospital, but not in a jail or other penal facility. For the purposes of this section, "non-hospital provider" means an outpatient provider that provides either behavioral health or medical services.

(a1)    A facility, or other location to which a respondent is transported under subsection (a) of this section, shall provide a health screening of the respondent. The health screening shall be conducted by a physician or other individual who is determined by the area facility, contracted facility, or other location to be qualified to perform the health screening. The respondent may either be in the physical face-to-face presence of the health screening examiner or may be examined utilizing telemedicine equipment and procedures. Documentation of the health screening required under this subsection that is completed prior to transporting the patient to any general or acute care hospital shall accompany the patient or otherwise be made available at the time of transportation to the receiving facility.

(b)    The examination set forth in subsection (a) of this section is not required ~~if:~~under either of the following circumstances:

(1)    The affiant who obtained the custody order is a ~~physician or eligible psychologist; or~~commitment examiner.

(2)    The respondent is in custody under the special emergency procedure described in G.S. 122C-282.

In these cases when it is recommended that the respondent be detained in a 24-hour facility, the ~~law enforcement~~ law enforcement officer shall take the respondent directly to a 24-hour facility described in G.S. 122C-252.

(c)    The ~~physician or eligible psychologist~~ commitment examiner described in subsection (a) of this section shall examine the respondent as soon as possible, and in any event within 24 hours, after the respondent is presented for examination. The examination shall include but is not limited to an assessment of the respondent's:

(1)    Current and previous substance abuse including, if available, previous treatment history; and

(2)    Dangerousness to himself or others as defined in G.S. 122C-3(11).

(d)    After the conclusion of the ~~examination~~ examination, the ~~physician or eligible psychologist~~ commitment examiner shall make the following determinations:

(1)    If the ~~physician or eligible psychologist~~ commitment examiner finds that the respondent is a substance abuser and is dangerous to ~~himself~~ self or others, ~~he~~ the commitment examiner shall recommend commitment and whether the respondent should be released or be held at a 24-hour facility pending hearing

and shall so show on [the] his the examination report. Based on the physician's or eligible psychologist's recommendation commitment examiner's recommendation, the law enforcement law enforcement officer or other designated individual shall take the respondent to a 24-hour facility described in G.S. 122C-252 or release the respondent. If a 24-hour facility is not immediately available or medically appropriate, the respondent may be temporarily detained under appropriate supervision and the procedures described in G.S. 122C-263(d)(2) shall apply.

(2) If the physician or eligible psychologist commitment examiner finds that the condition described in subdivision (1) of this subsection does not exist, the respondent shall be released and the proceedings terminated.

(e) The findings of the physician or eligible psychologist commitment examiner and the facts on which they are based shall be in writing in all cases. A copy of the findings shall be sent to the clerk of superior court by the most reliable and expeditious means. If it cannot be reasonably anticipated that the clerk will receive the copy within 48 hours of after the time that it was signed, the physician or eligible psychologist commitment examiner shall also communicate his the findings to the clerk by telephone."

**SECTION 35.** G.S. 122C-284 reads as rewritten:

"**§ 122C-284. Duties of clerk of superior court.**

(a) Upon receipt by the clerk of superior court of a physician's or eligible psychologist's finding made by a commitment examiner or other qualified professional pursuant to G.S. 122C-285(c) that a respondent is a substance abuser and dangerous to himself self or others and that commitment is recommended, the clerk of superior court of the county where the facility is located, if the respondent is held in a 24-hour facility, or the clerk of superior court where the petition was initiated shall upon direction of a district court judge assign counsel, calendar the matter for hearing, and notify the respondent, his the respondent's counsel, and the petitioner of the time and place of the hearing. The petitioner or respondent, directly, or through counsel, may file a written waiver of his the right to notice under this subsection with the clerk of court.

(b) Notice to the respondent required by subsection (a) of this section shall be given as provided in G.S. 1A-1, Rule 4(j) at least 72 hours before the hearing. Notice to other individuals shall be given by mailing at least 72 hours before the hearing a copy by first-class mail postage prepaid to the individual at his or her last known address. G.S. 1A-1, Rule 6 shall not apply. …."

**SECTION 36.** G.S. 122C-285 reads as rewritten:

"**§ 122C-285. Commitment; second examination and treatment pending hearing.**

(a) Within 24 hours of arrival at a 24-hour facility described in G.S. 122C-252, the respondent shall be examined by a qualified professional. This professional shall be a physician if the initial commitment evaluation was conducted by an eligible psychologist. a commitment examiner who is not a physician. The examination shall include the assessment specified in G.S. 122C-283(c). If the physician or qualified professional finds that the respondent is a substance abuser and is dangerous to himself self or others, he the physician or qualified professional shall hold and treat the respondent at the facility or designate other treatment pending the district court hearing. If the physician or qualified professional finds that the respondent does not meet the criteria for commitment under G.S. 122C-283(d)(1), he the physician or qualified professional shall release the respondent and the proceeding shall be terminated. In this case the reasons for the release shall be reported in writing to the clerk of superior court of the county in which the custody order originated. If the respondent is released, the law enforcement law enforcement officer or other person designated or required under G.S. 122C-251(g) to provide transportation shall return the respondent to the originating county.

(b) If the 24-hour facility described in G.S. 122C-252 is the facility in which the first examination by a physician or eligible psychologist commitment examiner occurred and is the

same facility in which the respondent is held, the second examination must occur not later than the following regular working day.

(c)    <u>The findings of the physician or qualified professional along with a summary of the facts on which they are based shall be made in writing in all cases. A copy of the written findings shall be sent to the clerk of superior court by reliable and expeditious means.</u>"

**SECTION 37.** G.S. 122C-286 reads as rewritten:

"**§ 122C-286. Commitment; district court hearing.**

(a)    A hearing shall be held in district court within 10 days of the day the respondent is taken into custody. <u>If a respondent temporarily detained under G.S. 122C-263(d)(2) is subject to a series of successive custody orders issued pursuant to G.S. 122C-263(d)(2), the hearing shall be held within 10 days after the day the respondent is taken into custody under the most recent custody order.</u> Upon its own motion or upon motion of the responsible professional, the respondent, or the State, the court may grant a continuance of not more than five days.

(b)    The respondent shall be present at the ~~hearing.~~hearing <u>unless the respondent, through counsel, submits a written waiver of personal appearance.</u> A subpoena may be issued to compel the respondent's presence at a hearing. The petitioner and the responsible professional of the area ~~authority~~ <u>facility</u> or the proposed treating physician or ~~his~~ <u>a</u> designee <u>of the proposed treating physician</u> may be present and may provide testimony.

(c)    Certified copies of reports and findings of ~~physicians and psychologists~~<u>physicians, psychologists, and other commitment examiners</u> and medical records of previous and current treatment are admissible in evidence, but the respondent's right to confront and cross-examine witnesses shall not be denied.

(d)    The respondent may be represented by counsel of ~~his~~ choice. If the respondent is indigent within the meaning of G.S. 7A-450, counsel shall be appointed to represent the respondent in accordance with rules adopted by the Office of Indigent Defense Services.

(e)    Hearings may be held at a facility if it is located within the judge's district court district as defined in G.S. 7A-133 or in the judge's chambers. A hearing may not be held in a regular courtroom, over objection of the respondent, if in the discretion of a judge a more suitable place is available.

(f)    The hearing shall be closed to the public unless the respondent requests otherwise. <u>The hearing for a respondent being held at a 24-hour facility shall be held in a location and in the manner provided in G.S. 122C-268(g).</u>

(g)    A copy of all documents admitted into evidence and a transcript of the proceedings shall be furnished to the respondent on request by the clerk upon the direction of a district court judge. If the respondent is indigent, the copies shall be provided at State expense.

(h)    To support a commitment order, the court shall find by clear, cogent, and convincing evidence that the respondent meets the criteria specified in G.S. 122C-283(d)(1). The court shall record the facts that support its findings and shall show on the order the area ~~authority~~<u>facility</u> or physician who is responsible for the management and supervision of the respondent's treatment."

**SECTION 38.** G.S. 122C-287 reads as rewritten:

"**§ 122C-287. Disposition.**

The court may make one of the following dispositions:

(1)    If the court finds by clear, cogent, and convincing evidence that the respondent is a substance abuser and is dangerous to ~~himself~~<u>self</u> or others, it shall order for a period not in excess of 180 days commitment to and treatment by an area ~~authority~~ <u>facility</u> or physician who is responsible for the management and supervision of the respondent's commitment and treatment. <u>Before ordering commitment to and treatment by an area facility or a physician who is not a physician at an inpatient facility, the court shall follow the procedures specified in G.S. 122C-271(a)(3) and G.S. 122C-271(b)(4), as applicable.</u>

Case 1:21-cv-00305-MR-WCM   Document 154-2   Filed 03/12/24   Page 34 of 37

(2)    If the court finds that the respondent does not meet the commitment criteria set out in subdivision (1) of this subsection, the respondent shall be discharged and the facility in which he was last treated so notified."

**SECTION 39.** G.S. 122C-290 reads as rewritten:

"**§ 122C-290. Duties for follow-up on commitment order.**

(a)    The area ~~authority~~ facility or physician responsible for management and supervision of the respondent's commitment and treatment may prescribe or administer to the respondent reasonable and appropriate treatment either on an outpatient basis or in a 24-hour facility.

(b)    If the respondent whose treatment is provided on an outpatient basis fails to comply with all or part of the prescribed treatment after reasonable effort to solicit the respondent's compliance or whose treatment is provided on an inpatient basis is discharged in accordance with G.S. 122C-205.1(b), the area ~~authority~~ facility or physician may request the clerk or magistrate to order the respondent taken into custody for the purpose of examination. Upon receipt of this request, the clerk or magistrate shall issue an order to a law enforcement officer to take the respondent into custody and to take him immediately to the designated area ~~authority~~ facility or physician for examination. The custody order is valid throughout the State. The law enforcement officer shall turn the respondent over to the custody of the physician or area ~~authority~~ facility who shall conduct the examination and release the respondent or have the respondent taken to a 24-hour facility upon a determination that treatment in the facility will benefit the respondent. Transportation to the 24-hour facility shall be provided as specified in G.S. 122C-251, upon notice to the clerk or magistrate that transportation is necessary, or as provided in G.S. 122C-408(b). If placement in a 24-hour facility is to exceed 45 consecutive days, the area ~~authority~~ facility or physician shall notify the clerk of court by the 30th day and request a supplemental hearing as specified in G.S. 122C-291.

(c)    If the respondent intends to move or moves to another county within the State, the area ~~authority~~ facility or physician shall notify the clerk of court in the county where the commitment is being supervised and request that a supplemental hearing be calendared.

(d)    If the respondent moves to another state or to an unknown location, the designated area ~~authority~~ facility or physician shall notify the clerk of superior court of the county where the commitment is supervised and the commitment shall be terminated."

**SECTION 40.** G.S. 122C-291 reads as rewritten:

"**§ 122C-291. Supplemental hearings.**

(a)    Upon receipt of a request for a supplemental hearing, the clerk shall calendar a hearing to be held within 14 days and notify, at least 72 hours before the hearing, the petitioner, the respondent, his attorney, if any, and the designated area ~~authority~~ facility or physician. Notice shall be provided in accordance with G.S. 122C-284(b). The procedures for the hearing shall follow G.S. 122C-286.

(b)    At the supplemental hearing for a respondent who has moved or may move to another county, the court shall determine if the respondent meets the criteria for commitment set out in G.S. 122C-283(d)(1). If the court determines that the respondent no longer meets the criteria for commitment, it shall discharge the respondent from the order and dismiss the case. If the court determines that the respondent continues to meet the criteria for commitment, it shall continue the commitment but shall designate an area ~~authority~~ facility or physician at the respondent's new residence to be responsible for the management or supervision of the respondent's commitment. The court shall order the respondent to appear for treatment at the address of the newly designated area ~~authority~~ facility or physician and shall order venue for further court proceedings under the commitment to be transferred to the new county of supervision. Upon an order changing venue, the clerk of court in the county where the commitment has been supervised shall transfer the records regarding the commitment to the clerk of court in the county where the commitment will be supervised. Also, the clerk of court in the county where the commitment has been supervised

Case 1:21-cv-00305-MR-WCM   Document 154-2   Filed 03/12/24   Page 35 of 37

shall send a copy of the court's order directing the continuation of treatment under new supervision to the newly designated area ~~authority~~ facility or physician.
...."

**SECTION 41.** G.S. 122C-292 reads as rewritten:

"**§ 122C-292. Rehearings.**

(a)     Fifteen days before the end of the initial or subsequent periods of commitment if the area ~~authority~~ facility or physician determines that the respondent continues to meet the criteria specified in G.S. 122C-283(d)(1), the clerk of superior court of the county where commitment is supervised shall be notified. The clerk, at least 10 days before the end of the commitment period, on order of the district court, shall calendar the rehearing. If the respondent no longer meets the criteria, the area ~~authority~~ facility or physician shall so notify the clerk who shall dismiss the case.

(b)     Rehearings are governed by the same notice and procedures as initial hearings, and the respondent has the same rights ~~he had~~ that were available to the respondent at the initial hearing including the right to appeal.

(c)     If the court finds that the respondent no longer meets the criteria of G.S. 122C-283(d)(1), it shall unconditionally discharge him. A copy of the discharge order shall be furnished by the clerk to the designated area ~~authority~~ facility or physician. If the respondent continues to meet the criteria of G.S. 122C-283(d)(1), the court may order commitment for additional periods not in excess of 365 days each."

**SECTION 42.** G.S. 122C-293 reads as rewritten:

"**§ 122C-293. Release by area ~~authority~~ facility or physician.**

The area ~~authority~~ facility or physician as designated in the order shall discharge a committed respondent unconditionally at any time ~~he~~ the physician determines that the respondent no longer meets the criteria of G.S. 122C-283(d)(1). Notice of discharge and the reasons for the release shall be reported in writing to the clerk of superior court of the county in which the commitment was ordered."

**SECTION 43.** G.S. 122C-294 reads as rewritten:

"**§ 122C-294. Local ~~plan.~~plan and data submission.**

(a)     ~~Each area authority shall develop a local plan with local law enforcement agencies, local courts, local hospitals, and local medical societies necessary to facilitate implementation of this Part.~~The local plan in accordance with G.S. 122C-202.2 and G.S. 122C-251(g) shall be submitted to the Division of Mental Health, Developmental Disabilities, and Substance Abuse Services on or before October 1, 2019. If the area authority modifies the plan, the modified plan shall be submitted to the Division of Mental Health, Developmental Disabilities, and Substance Abuse Services at least 10 days prior to the effective date of the new plan.

(b)     The Department shall provide the data collected by the Division of Mental Health, Developmental Disabilities, and Substance Abuse Services concerning the number of respondents receiving treatment under involuntary commitment in designated facilities to the Fiscal Research Division and the Joint Legislative Oversight Committee for Health and Human Services on October 1 of each year beginning in 2019 and any other time upon request."

**SECTION 44.** Each LME/MCO shall submit to the Department of Health and Human Services a copy of its current community crisis services plan adopted pursuant to G.S. 122C-202.2, as enacted by this act, by the earlier of (i) 12 months after the date the Department receives notification that the federal Centers for Medicaid and Medicare Services has approved all necessary waivers and State Plan amendments for Medicaid and NC Health Choice transformation as provided for in S.L. 2015-245, as amended, or (ii) six months prior to the date the Department actually initiates capitated contracts with Prepaid Health Plans, as defined in Section 4 of S.L. 2015-245, as amended, for the delivery of Medicaid and NC Health Choice services. The Department shall notify each LME/MCO when the earlier of these conditions occurs.

**SECTION 45.(a)** G.S. 35A-1105 reads as rewritten:

"**§ 35A-1105. Petition before clerk.**

A verified petition for the adjudication of incompetence of an adult, or of a minor who is within six months of reaching majority, may be filed with the clerk by any person, including any State or local human services agency or healthcare provider through its authorized representative.representative without the need for legal counsel."

**SECTION 45.(b)** G.S. 35A-1112 reads as rewritten:

"**§ 35A-1112. Hearing on petition; adjudication order.**

...

(b)     The petitioner and the respondent are entitled to present testimony and documentary evidence, to subpoena witnesses and the production of documents, and to examine and cross-examine witnesses. If the petitioner is a State or local human service agency or a health care provider, evidence may be presented without the need for legal counsel.

...."

**SECTION 46.** Sections 5(c1), 44, 45(a), and 45(b) of this act are effective when the act becomes law. The remainder of this act becomes effective October 1, 2019, and applies to proceedings initiated on or after that date.

In the General Assembly read three times and ratified this the 14th day of June, 2018.


s/  Philip E. Berger
    President Pro Tempore of the Senate


s/  Tim Moore
    Speaker of the House of Representatives


s/  Roy Cooper
    Governor


Approved 9:19 a.m. this 22nd day of June, 2018