# ATTACHMENT

*Bismillah*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
Civil Action No. 1:21-cv-305-MR-WCM

| | |
|---|---|
| BROTHER T. HESED-EL, | ) |
| Plaintiff, | ) |
| v. | ) **PLAINTIFF'S BRIEF IN OPPOSTION TO** |
| | ) **"DEFENDANTS' MOTION TO STRIKE** |
| ROBIN BRYSON, et al., | ) **PLAINTIFF'S EXPERT WITNESSES"** |
| | ) |
| Defendants. | ) |

NOW COMES Plaintiff Brother T. Hesed-El ("Plaintiff") and respectfully opposes Robin Bryson and Mission Hospital's (collectively, "Defendants") motion to strike Plaintiff's expert witnesses ("motion") [Doc. 159].

## ARGUMENT

In Defendants' motion, they argue that Sheik Johns El and Dr. Ryan Kaufman's rebuttal evidence should be stricken because they *support* Plaintiff's case-in-chief.[1] That argument is fatally flawed for two reasons. First, Defendants are unable to cite any authority that would require the Court to strike rebuttal evidence on that ground. Second, as stated in their reports, Sheik El and Dr. Kaufman's rebuttals were offered to contradict, counteract, and repel specific opinions included in Mark Botts and Dr. Eduardo Piqueras's expert reports.[2] Defendants' also argue that Sheik El and Dr. Kaufman's reports exceeded a rebuttal. As explained below, Plaintiff disagrees.

---

[1] Black's Law Dictionary, 9th Edition, defines case-in-chief as "(1853) The evidence presented at trial by a party between the time the party calls the first witness and the time the party rests. The part of a trial in which a party presents evidence to support the claim or defense. Cf. REBUTTAL"; rebuttal, n. is defined as "(1830) In-court contradiction of an adverse party's evidence. The time given to a party to present contradictory evidence or arguments. Cf. CASE-IN-CHIEF"; and rebuttal witness is defined as "(1891) A witness who contradicts or attempts to contradict evidence previously presented."

[2] Dr. Kaufman's rebuttal evidence contradicts Dr. Piqueras's report at p.19 ¶1, p. 20 ¶ 11, p. 21 ¶ 16, p. 22 ¶ 18, p. 22-23 ¶ 26-30, and p.24 ¶ 32-34. Sheik El's rebuttal evidence counteracts and repels Mr. Botts's report at pp. 7-8, ¶¶ 15-16, and p. 12 ¶ 26.

### *Sheik El Directly Addressed the Opinions of Mr. Botts*

In Mr. Botts's report, he asserts his opinion that Plaintiff's ▇▇▇▇▇ ▇▇▇ that Plaintiff was ▇▇▇▇▇▇▇▇▇▇▇▇▇▇. Mr. Botts also gives the opinion that Plaintiff's decision to exercise his right to silence when asked for identifying information by law enforcement and ▇▇, coupled with Plaintiff's claim that he had been kidnapped, made it expected for a ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. All of Mr. Botts's opinions called into question Plaintiff's cultural and religious beliefs, which made it necessary for Plaintiff to call forth Sheik El, a person with actual knowledge on the subject.

In his report, Sheik El provided his rebuttal evidence to show that Plaintiff's ▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇ under the care of non-believers is a rational fear as per Surah 5 ayat 51 of the Quran. Sheik El showed that Plaintiff's religious beliefs were ▇▇▇▇▇▇ ▇▇▇▇▇▇▇ with the teachings of the Holy Koran of the Moorish Science Temple of America and Psalm 82:6, John 10:30, and Matthew 5:9 and 6:9. Sheik El disproved Mr. Botts's cited opinions and showed that Plaintiff in fact had a rational basis for his reluctance ▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ staff.

### *Dr. Kaufman Directly Addressed the Opinions of Dr. Piqueras*

In Dr. Piqueras's report, he goes to great length to opine how Bryson's actions reflect the same actions that would have been taken ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ in North Carolina. He also went on to say that Bryson adhered to all ethical standards, which is a newly formed theory not included in Plaintiff's case-in chief. Dr. Piqueras also offered affirmative evidence that Plaintiff claimed "he was God", again a new theory not found anywhere in the record except for his expert report. Dr. Piqueras ultimately opined that a "convergence of professional opinions" underscored the validity of Bryson's ▇▇▇. Yet again, a new theory by the defense.

In response, Dr. Kaufman provided his rebuttal opinion to contradict the opinions of Dr. Piqueras, and specifically stated so in his expert report. Dr. Kaufman's opinion shows that

Bryson's actions do not reflect the actions of ▮▮▮ North Carolina, that Bryson did not adhere to all standards of practice, and that the so-called convergence of professional opinions was actually a by-product of confirmation bias, a known and problematic issue in the ▮▮▮ field.

### *The Court Can Determine Whether Sheik El and Dr. Kaufman's Reports Qualify as Rebuttals*

"The United States Court of Appeals for the Fourth Circuit has not addressed how a court should determine whether an expert witness qualifies as an affirmative or rebuttal witness." *Boles v. United States*, 1:13CV489, 4 (M.D.N.C. Apr. 1, 2015). However, the Middle District of North Carolina does provide some guidance as to how this court can resolve this dispute. In *Boles,* the Court compared the defendant's expert reports with the plaintiff's expert reports to determine whether the plaintiff's experts' reports qualify as rebuttal. This court can do the same. As shown in Docs. 160-1 and 160-2, the specific opinions of Mr. Botts and Dr. Piqueras that Plaintiff seeks to refute are cited in the reports of Plaintiff's rebuttal experts. That should be sufficient information to conduct a comparison given that the rebuttal experts' reports are solely intended to contradict and disprove those specific opinions of the defense.

### *The Rebuttal Evidence is Permissible Pursuant to Fourth Circuit Precedent*

There is an undeniable nexus between said affirmative opinions and rebuttal opinions. For example, the opinions of Dr. Piqueras and Mr. Botts converge on the narrative that based on an interpretation of Plaintiff's medical records, Bryson's ▮▮▮ ▮▮▮ was correct. Plaintiff seeks through his own rebuttal witnesses to challenge the defendants' evidence of a correct interpretation of the ▮▮▮ records by specifically showing their opinions are incorrect and inconsistent with North Carolina's accepted standard of care, practice, and judgment. Such rebuttal evidence is permissible under Fourth Circuit precedent.[3]

---

[3] Rebuttal evidence is defined as evidence "given to explain, repel, counteract, or disprove facts given in evidence by the opposing party." *U.S. v. Stitt*, 250 F.3d 878, 897 (4th Cir. 2001); *see also United States v. Curry*, 512 F.2d 1299, 1305 (4th Cir. 1975) (holding that "[w]here the prosecution seeks through its own rebuttal witnesses to challenge the defendant's evidence of his own good general reputation it is limited to showing his bad general reputation").

### *There is Good Cause to Qualify Dr. Kaufman and Sheik El as Affirmative Witnesses*

In Defendants' motion, they argue that sanctions should be imposed for Plaintiff's use of rebuttal witnesses. However, Plaintiff has shown good cause for replacing Dr. Weiss as the affirmative witness. Defendants do not dispute that Dr. Weiss had two back-to-back medical emergencies which caused him to cancel his depositions and ultimately extricate himself from the litigation all together. If "the experts' reports qualify as affirmative, then the Court must determine whether good cause exists for Plaintiff's violation of the scheduling order, and, if not, then identify the appropriate sanction to impose for the untimely disclosure." *Boles v. United States*, 1:13CV489, 3 (M.D.N.C. Apr. 1, 2015). . Plaintiff having to replace Dr. Weiss was the result of a force majeure, and Plaintiff should not be penalized for that.[4] Plaintiff offered defendants' counsel to dpose Sheik El after his report was filed, but defense counsel declined. Defense Counsel also had an opportunity to depose Dr. Kaufman after his report was filed, but defense counsel did not do so.

Executed this 18th day of Ramadan in the year 1445 A.H. with a "wet" signature, in full compliance with FRCP Rule 11 and the Court's Order.

**Bro. T. Hesed-El, Plaintiff** *pro se*
c/o TAQI EL AGABEY MANAGEMENT
30 N Gould St, Ste. R, Sheridan, WY 82801
Ph: (762) 333-2075 / teamwork3@gmail.com

---

[4] By way of example and not limitation, force majeure events include…Actions or inactions of third parties over which defendant has no control". *Chattooga Conservancy, Inc. v. High Hampton Land, LLC*, 1:21-cv-239-MR-WCM, 12-13 (W.D.N.C. Dec. 13, 2022)

## CERTIFICATE OF SERVICE

This certifies that a true and correct copy of foregoing has been sealed in an envelope with sufficient postage affixed thereon, and deposited into the exclusive custody of the United States Post Office, to ensure delivery to: **Robin Bryson and Mission Hospital Inc.**

℅ Attorney Daniel H. Walsh
ROBERTS & STEVENS, P.A.
Post Office Box 7647
Asheville, North Carolina 28802
dwalsh@roberts-stevens.com

This 28th day of March in the Gregorian year 2024

*[signature]*
**Bro. T. Hesed-El, Plaintiff** *pro se*
c/o TAQI EL AGABEY MANAGEMENT
30 N Gould St, Ste. R, Sheridan, WY 82801
Ph: (762) 333-2075 / teamwork3@gmail.com

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| BRO. T. HESED-EL, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. **1:21-cv-305-MR-WCM** |
| v. ) | |
| ) | |
| ROBIN BRYSON, et al., ) | |
| ) | |
| Defendants. ) | |

## AFFIDAVIT OF LEONARD J. WEISS

Personally appeared before the undersigned attesting officer duly authorized by law to administer oaths, Leonard J. Weiss, M.D., who, after first being duly sworn, deposes and states as follows:

1.1. My name is Leonard J. Weiss. I am a Doctor of Medicine ("M.D.") licensed to practice in the states of Ohio, Oklahoma, Texas, and Michigan. I am board certified by the American Board of Psychiatry and Neurology in forensic psychiatry, psychiatry, addiction psychiatry, and brain injury medicine, and by the American Board of Internal Medicine in internal medicine. My medical career spans more than 40 years, including over 20 years as a psychiatrist. I have conducted many thousands of psychiatric assessments and treated a broad range of medical conditions, including those that overlap with psychiatric disorders.

1.2. Over the years of my profession, I have actively and regularly engaged in the field of psychiatry and primary care medicine with sufficient frequency to establish an appropriate level of knowledge in diagnosing and treating psychiatric and urgent care hospital events. Between 1990-2020, I also engaged in the teaching of my profession with sufficient frequency to establish an appropriate level of knowledge in teaching others to perform, diagnose, and render treatment regarding the issues presented in this case. I am qualified

to address the complicated relationship between mental illness, physical illness, allegations of medical damages, and crossover treatment of multiple mental and physical conditions.

1.3. I have knowledge of the standard of care expected of a doctor, as well as the hospital staff working with a said doctor, under the circumstances relevant to this case. Furthermore, I am competent and of sound mind to testify to the standards being opined here. My education, training, and experience in handling similar medical and psychiatric situations on a regular basis have equipped me with the familiarity of the applicable standard of care for the medical profession in such matters. Throughout my years of practice, I have been licensed and qualified to perform the relevant care, procedures, and acts in question in this case.

1.4. I have reviewed North Carolina's 2016 criteria for involuntary inpatient commitment, G.S. § 122C-3 and G.S. § 122C-263, and the medical records provided to me of the plaintiff, Taqi Eyr Hhamul Hesed El a/k/a Bro T. Hesed-El ("Mr. El"), from Mission Hospital.[1]

1.5. Based upon my review of these statutes, medical records, and my experience, training, education, knowledge, and skill, I have formed an opinion based on a reasonable degree of medical certainty that the conduct of the medical providers at Mission Hospital constituted one or more acts of negligence and deviated from that standard of care, which under similar circumstances and conditions, is ordinarily employed by the medical profession generally.

1.6. I have based the above conclusion on the following facts, and those also contained in the medical records cited above, which I incorporate here by reference.

---

[1] Please note that some of medical records were under a pseudonym, Taqi Lel Agabey and Taqi Elaga Bey, attributed to Mr. El by the hospital apparently after reviewing his Facebook page. This discrepancy was taken into account in the Court's unsealing and release of his medical records per Judge Scott's 1/19/2019 ruling.

1.7. On September 20, 2016, at 1:48 pm EDT, Mr. El ███████████████████████
███████████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████████
███████████

1.8. ████████████████████████████, Mr. Herzog's ██████████ note indicated that
███████████████████████████████████████████████████████████████████████
███████████

1.9. At 2:10 pm EDT on September 20, 2016, ████████████████████████████████
███████████████████████████████████████████████████████████████████████
███████████

1.10. At 2:58 pm EDT September 20, 2016, Kathleen Kerins, ████████████████████
entered a note that stated: ████████████████████████████████████████████
███████████████████████████████████████████████████████████████████████

1.11. At 8:40 pm EDT, September 20, 2016, Susan G Bryant, ████████████████, entered
a note that stated: █████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████"

1.12. At 9:02 pm EDT, September 20, 2016, Mary Stirling Barlow, ████████████████
████████████████████████████████; ██████████████████████████████████
████████████████████████

1.13. At 10:10 pm EDT, September 20, 2016, Robin F Bryson, ███████████████

███████████████████████████████████████████████████████████████

███████████

1.14. At 11:01 pm EDT, Ms. Bryson entered ███████████████████████

███████████████████████████████████████████████████████████████

1.15. ███████████████████████████. These ████ work on the major inhibitory neurotransmitter system in the brain, gamma-aminobutyric acid (GABA). Their action results in a decrease of excitation in the brain and spinal cord due to a suppression of neuronal firing.[2]

1.16. ███████████████████████████, can be used ███████████████████ ███████████████████████████████████[3] The liver metabolizes ███████████████████████. It is excreted in the urine, unchanged, and has a half-life of 3.4 to 9.2 hours. The ████ time to peak serum is 2 hours.[4]

1.17. ███████████ used to treat certain ███████████████████████. It is also being studied in the treatment of nausea and vomiting caused by some cancer treatments. It is a type of ███████████████████████[5]

1.18. These three ███████████████████████████████████████████████ The onset of action is approximately 15 minutes, and the total duration of action is 8-12 hours. In cases of adverse effects, these ████ can cause a disturbance in cognition, altering the person's mental state, slowing their response time, distorting their normal thought processes, and even affecting their memory. Some of the other documented side effects of

---

2 ███████████████████████████
3 
4 
5

the above combination are drowsiness, irritability, nervousness, headaches, mood changes, confusion, agitation, trouble talking, uncontrollable eye movements, and difficulty concentrating. Some people may also experience impairment in judgment and motor coordination. ▮▮▮▮▮▮▮▮▮▮ as a second dosage within a span of less than 7 hours could cause the side effects to become more intense and potentially dangerous. For example, ▮▮▮ "has a long and unpredictable half-life (ranging from 12 to 48 hours), and noticeable effects are present for at least 24 hours after the last dose."[6]

1.19. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ chart for Mr. El, dated 9-20-16, indicated that he was ▮▮▮▮▮▮▮▮▮▮ Mr. Herzog's ▮▮▮▮. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮ indicating that Mr. El ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ At 2:15 pm EDT, ▮ ▮▮▮▮▮▮▮▮▮▮ At 2:30 pm EDT, he was ▮▮▮▮▮▮▮▮▮▮▮▮, and from 2:45 pm EDT to 10:15 pm EDT, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮

1.20. From 10:15 pm to 10:45 pm EDT, ▮▮▮▮▮▮ chart indicates that Mr. El ▮ ▮▮▮▮▮▮▮▮▮▮ Ms. Bryson's ▮▮▮▮▮▮ By 11:00 pm EDT, Mr. El ▮ ▮▮▮▮▮▮▮▮▮▮, ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮ Mr. El's ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮[7]

---

6 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
7 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

1.21. ███████████████████ providers deviated from the accepted standard of care in multiple ways, which were negligent.

    (1) ████████ forced ████████ Mr. El, ████████████████████
████████████████████████████████████████;

        a. ██████████████████████ Mr. El at 2:10 pm EST on 9/20/2016 after Mr. Herzog's ████ note: ████████████████████
████████████████████████████████████████
████████████████████████████████████████
██████████████████████

           i. ██████████ based on this incident does not constitute ████████████████████████████████████████
██████████.

           ii. ██████████████████████ chart originally showed that at 2:00 pm EDT, Mr. El ████████████████
████████████. However, that appears to have been scratched out without explanation and replaced with ████ to indicate Mr. El ██████████████████████████. At 2:15 pm, ████████
████████ staff indicated that Mr. El ████████████████████
██████████████████████. It should be noted that ████
██████████████████ at 2:10 pm EDT ████████████
██████████████████ This demonstrates to me that the likelihood of Mr. El ██████████████████████
████████████████████

(2) ▆▆▆▆▆ failed to inform Mr. El of the risks and obtain his consent to ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

(3) ▆▆▆▆▆ failed to get Mr. El ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

  a. Michael Eland Sollie, ▆▆▆▆▆, entered the following note at 5:45 pm EDT on 9/20/2016: ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

    i. The standard for ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

    ii. The standard ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ Here, ▆▆▆▆▆ rushed into ▆▆▆▆▆ Mr. El within the first hour ▆▆▆▆▆.

  b. About 3 ½ hours later, Ms. Barlow ▆▆▆▆▆ Mr. El's ▆▆▆▆▆ Mr. El ▆▆▆▆▆

███████████████████████
█████████████.

(4) Ms. Bryson failed ████████████ indicating that she █████
████████████████████████
█████████████████;

(5) Ms. Bryson conducted ███████████████ Mr. El █████
████████████████████████
failing to ensure Mr. El ████████████████████;

(6) Ms. Bryson entered ██████ note stating that Mr. El's █████
████████████████████████
████████████████████████
████████████████████

    a. The standard of care would have been for Ms. Bryson to █████
████████████████████████
████████████████████████
████████████████████████
████████████████████████
████████████████████████
████████████████████████
████████████████████

(7) Ms. Bryson alleged that Mr. El ████████████████
████████████████████

██████████████████████████████████████████████████
██████████████████████████████████████████████████
████████████

    (8) Ms. Bryson failed to note at the completion ███████████ that she provided Mr. El with specific information regarding the next steps that would occur.

        a. ████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████

1.22. After interviewing Mr. El and understanding his culture, ███████ history, and beliefs, it is more likely than not that Mr. El ██████████████████████████████████; and ███████████ deviations from the accepted standard of care exacerbated the situation ██████████████ Mr. El, causing ████████████████████████ ██████████████████████████████

1.23. I make this affidavit under oath after having been duly sworn and on the basis of my education, training, and experience. The opinions based herein are based on the information available to me at present. I may have additional or different opinions based on the information I have reviewed or will review or on the information I have developed during the course of this case. This affidavit is not intended to reflect all of my opinions or a comprehensive review of all the issues.

1.24. I make this affidavit in the capacity of an expert witness upon, among other things, personal review and knowledge of the matter and materials referred to in this affidavit and about the matters concerning which I am competent to testify. My affidavit is the product of reliable

principles and methods applicable in the medical field, and I have applied these methods reliably to the information available to me about this matter.

1.25. I am of legal age and fully competent to testify to all matters contained herein and make this affidavit for the purpose of being attached to and used in support of the plaintiff's Complaint for medical malpractice and personal injuries.

Respectfully,

*[signature]*

Leonard J. Weiss, M.D.

on this the __19__ day of __april__, 2023.

Subscribed and Sworn to before me, on this the __19th__ day of __April__, 2023.

__Travis__ County in the State of __Texas__.

*[signature] Christopher Lund*
Notary Public

*[Notary seal: Christopher Lund, Notary Public, State of Texas, ID 131219635, Exp. 02-06-2027]*