# ATTACHMENT

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
Civil Action No. 1:21-cv-305-MR-WCM

| | |
|---|---|
| BROTHER T. HESED-EL, ) | |
| ) | |
| Plaintiff, ) | PLAINTIFF'S SURREPLY IN OPPOSITION |
| v. ) | TO DEFENDANTS' REPLY IN SUPPORT |
| ) | OF MOTION TO STRIKE PLAINTIFF'S |
| ROBIN BRYSON, et al., ) | EXPERT WITNESSES [Doc. 177] |
| ) | |
| Defendants. ) | |

NOW COMES Brother T. Hesed-El ("Plaintiff"), pursuant to LCvR 7.1(e), and hereby respectfully opposes Robin Bryson and Mission Hospital's (collectively, "Defendants") Reply in Support of Motion to Strike Plaintiff's Expert Witnesses ("Reply") [Doc. 177].

### COMPLETE PROCEDURAL HISTORY

In Defendants' Reply, their cited procedural history is incomplete. To correct their oversight, Plaintiff has provided below the pertinent history and context omitted from their Reply.

1. **January 2, 2024:** Plaintiff served his Interrogatories and Requests for Production.

2. **January 6, 2024:** Plaintiff requested to depose Robin Bryson and Mission Hospital. Plaintiff offered six potential dates for each defendant to choose from. Plaintiff specified that the proposed dates were contingent upon timely receipt of their responses to his discovery requests. *See* Exhibit N.

3. **January 10, 2024:** Plaintiff followed up on his request for depositions. *See* Exhibit N.

4. **January 15, 2024:** Plaintiff provided the topics for a Rule 30(b)(6) meet and confer concerning his request to depose Mission Hospital. *See* Exhibit N.

5. **January 17, 2024:** Bryson selected February 20, 2024, as her deposition date.

6. **February 7, 2024:** Plaintiff provided Bryson's notice of deposition.

## ARGUMENT ABOUT THE DISCOVERY PERIOD

The Court's Pre-Trial Scheduling Order provided that the "parties may consent to extensions of the discovery completion deadline so long as any such extension expires not later than ten (10) days prior to scheduled trial time." Here, the parties agreed to do just that, but Mr. Walsh reneged on the agreement so Plaintiff would have no experts to establish standard of care, breach, or causation. It would be a miscarriage of justice if the defense benefits from that tactic.

### *Defendants' attorney abused the discovery process.*

Plaintiff notified the defendants' attorney on February 16, 2024 that should Dr. Weiss's medical condition continue to deteriorate, Plaintiff would file a motion to replace Dr. Weiss. Defendants' attorney had ample notice to prepare an additional witness if that were his concern. Defendants' attorney also had ample notice to request an extension of time to depose that replacement witness, had that been his concern. But the events that unfolded between February and March clearly demonstrate that the defendants' attorney was not concerned about deposing Dr. Weiss's replacements, nor was he concerned about producing Bryson's employment history, training materials, or education documents that would show she failed to follow the requisite procedures, standards, practice, and professional judgment.

These arguments are illuminated by the procedural history, some of which the defendants' attorney omitted from his Reply. It's interesting that he also omitted the same context when arguing an "unintentional miscommunication" in response to Plaintiff's motion to compel. *See* Doc. 161, pg. 2. What the defendants' attorney apparently forgot to mention in two separate filings is that the parties agreed to file a joint consent motion asking the Court to extend the discovery deadline so that additional witnesses could be deposed, including but not limited to Dr. Kaufman. To expedite the process, Plaintiff took the initiative of proposing the joint motion and sent it to Defendants' attorney on February 16, 2024. Plaintiff asked that the motion be filed that same day

so as to give the Court sufficient notice of the parties' need for additional discovery time. In response, Defendants' attorney implied that he would file the motion by February 19, 2024, but instead, he slow played then ultimately reneged on his commitment. Plaintiff followed up multiple times all the way up through the day before the discovery window closed. *See* Exhibit S.

Despite their agreement to file the joint motion no later than February 19, 2024, the defendants' attorney intentionally delayed the filing of the joint motion as a strategic move contemplated to limit the discovery of admissible evidence. Said tactics are evidenced by the fact the defendants never provided basic documents such as Bryson's résumé, waiver to conduct first commitment exams, training materials, degrees, or the name of the program she attended at UNC. That withholding of evidence is what forced Plaintiff to rely upon the responses from the University of North Carolina, Vaya Health, and Department of Health and Humans Services.

### *Plaintiff did not have a "Trojan Horse" strategy in mind.*

It was always Plaintiff's legal strategy to attack the defendants' expert opinion after they filed a report. This was no "Trojan Horse" strategy deployed at the 11th hour. This was made abundantly clear by Plaintiff during the October 16, 2023 hearing when he asked that both parties submit their expert reports at the same time. This was intended to enable the parties to file their reports based on the record before the Court, and not allow the defendants to have the advantage of crafting a specific response to Dr. Weiss's report. Given that the Court denied Plaintiff's request for fair expert disclosures, this indicated to Plaintiff that he would have the opportunity to reply to the defendants' expert disclosures just like permitted in motions practice.

### ARGUMENT ABOUT THE REBUTTAL OPINIONS

As Doc. 162-1 clearly shows, a significant majority of Dr. Weiss's report concerns forced medication and the adverse effects that it had on Plaintiff's mental status during Robin Bryson's examination of Plaintiff. Dr. Weiss discussed in detail why the administration of those narcotics

likely were the real cause of Plaintiff's alleged stupor and insensibility.[1] As such, Plaintiff expected and anticipated that the defendants' case-in-chief would be more about the forced narcotics and the adverse effects it had on Plaintiff's mental status during Robin Bryson's examination of Plaintiff. But to Plaintiff's surprise, Dr. Piqueras and Mr. Botts barely opined about that.[2]

In filing their responsive expert reports, the defendants' experts attempted to proffer as much cumulative evidence as possible to "underscore the validity of Bryson's assessment".[3] They did very little to address the adverse effects of the forced narcotics, which in turn, made it necessary that Plaintiff attack their opinions in the form of a rebuttal. The Court should also note that Dr. Weiss made it clear that his opinion may evolve and develop as additional information became available. That was a direct reference to the forthcoming reports of the defense. *See* Doc. 162-1, ¶ 1.23. So, the defense cannot genuinely argue that they were surprised.

### ***The interpretations of Dr. Piqueras and Mr. Botts are rebuttable rumors.***

It is not surprising that everyone on the defense would try to pile up their opinions about Plaintiff. Yet, the opinions of Dr. Piqueras and Mr. Botts, much like the other defense experts, amount to no more than unsubstantiated rumors offered as cumulative evidence. But that doesn't mean Plaintiff anticipated what they would actually say in their reports.[4] On the contrary, Plaintiff only expected that the defendants would respond to Dr. Weiss and Plaintiff's experts would reply.

---

[1] Oxford Languages defines narcotics as: MEDICINE – a drug that relieves pain and induces drowsiness, stupor, or insensibility.

[2] Mr. Botts opined that the "initial and subsequent administration of medication…was a critical intervention and reflective of standard practices." (Doc. 168-1, ¶ 58). Similarly, Dr. Piqueras opined that "Dr. Weiss's disapproval of the administration…fails to recognize the…ordering and administration of medication… met the standard of care." (Doc. 168-2, ¶ 37)

[3] "According to N.C. Gen. Stat. § 8C-1, Rule 403, otherwise relevant "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." *State v. Carroway*, NO. COA10-1473, 14 (N.C. Ct. App. Aug. 16, 2011). A "rumor implies merely a report that is not yet finally credited". *United States v. Curry*, 512 F.2d 1299, 1304 n.9 (4th Cir. 1975).

[4] Defendants' experts attempted to establish that their interpretations of Plaintiff's medical records were good in Bryson's favor and Plaintiff's experts limited their rebuttal to showing their interpretations were bad. That is the same kind of permissible rebuttal discussed in *United States v. Curry*.

## ARGUMENT ABOUT DR. RYAN KAUFMAN

Dr. Ryan Kaufman is a medical doctor licensed in the State of North Carolina and board certified by the American Board of Psychiatry and Neurology in general adult psychiatry and forensic psychiatry. He has treated hundreds of patients experiencing a variety of different psychiatric disorders and is currently a full-time psychiatrist at a state psychiatric hospital in North Carolina serving involuntary and voluntary patients with psychiatric illness. He has discussed this case with Plaintiff, is willing to sit for a deposition, and is competent to testify at trial.

## ARGUMENT ABOUT SHEIK JOHNS EL

Sheik Johns El is an Ordained Public Minister and expert in Islamism and Moorish American culture. Although Sheik El is not qualified to make any medical diagnoses, he is qualified to provide psychotherapy under the pastoral counseling exemption of the State of California to individuals who suffer from symptoms of mental and emotional trauma.

> "In determining whether pastoral counselors should be held to the same standard of care that might conceivably apply to a licensed therapist under similar conditions, the court discussed public policy considerations weighing against imposing such a duty. The court noted, "the Legislature has exempted the clergy from the licensing requirements applicable to marriage, family, child and domestic counselors [citation] and from the operation of statutes regulating psychologists [citation]. In so doing, the Legislature has recognized that access to the clergy for counseling should be free from state imposed counseling standards, and that the secular state is not equipped to ascertain the competence of counseling when performed by those affiliated with religious organizations." *Jacqueline R. v. Household of Faith*, 97 Cal.App.4th 198, 205 (Cal. Ct. App. 2002)(internal citation omitted). "Whenever a privilege is claimed on the ground that the matter sought to be disclosed is a communication made in confidence in the course of the… psychotherapist-patient, the communication is presumed to have been made in confidence and the opponent of the claim of privilege has the burden of proof to establish that the communication was not confidential." (Italics added.)" *Roman Catholic Archbishop of L.A. v. Sup. Ct.*, 131 Cal.App.4th 417, 442 (Cal. Ct. App. 2005).

Plaintiff discussed his medical records and this case with Sheik Johns El prior to Sheik Johns El's deposition. Sheik Johns El is competent to testify at trial. *See* Exhibit T.

## ARGUMENT ABOUT REPLACING DR. WEISS

As the procedural history shows, Plaintiff was diligent in his attempts to replace Dr. Weiss. Plaintiff could not control that Dr. Weiss suddenly became ill.[5] Nonetheless, Plaintiff did move as quickly as possible to mitigate the problem and keep the defense informed. Nearly two weeks before Dr. Weiss became completely indisposed, Plaintiff notified Defendants' attorney and the parties agreed to file a joint motion to extend the discovery deadline. Had Mr. Walsh followed through on his commitment to file the joint motion to extend the discovery deadline, he could have prepared to depose Dr. Kaufman and Sheik El as Plaintiff's substitute experts. Therefore, if there is any prejudice by allowing both experts to replace Dr. Weiss, it would be due to the fault of Defendants' attorney and not because of any wrongdoing of Plaintiff.

## ARGUMENT ABOUT SANCTIONS

There should be no sanctions against Plaintiff regarding this matter. Plaintiff's explanation given for the failure to comply with the scheduling order is genuine; the importance of Sheik El and Dr. Kaufman's opinion is crucial; and there won't be any undue prejudice to the opposing party if the opinions of the substitute experts are allowed. *Cf. Palatkevich v. Choupak*, No. 12-cv-1681, 2014 WL 5463371, at *1 (S.D.N.Y. Oct. 22, 2014) ("The illness and sudden unavailability of a designated expert is certainly good cause to modify a Rule 16 scheduling order, particularly where the plaintiffs have been diligent in dealing with the problem, as was the case here.")

## CONCLUSION

Plaintiff has shown that he did not have a "Trojan Horse" strategy in mind. The record shows that Plaintiff attempted in good faith to resolve all discovery disputes in a timely manner. It is Plaintiff's position that Mr. Walsh reneged on the parties' agreement to file a joint motion so as

---

[5] *See* Exhibit U.

to preserve for his clients an argument to strike Plaintiff's experts. Had Mr. Walsh filed the joint motion on February 16, 2024, as requested, and deposed Sheik El and Dr. Kaufman after their reports were filed, there would be no basis to strike them as experts for untimely disclosures.[6]

Dr. Weiss invested a considerable amount of effort to understand Plaintiff over a prolonged period time, inclusive of Plaintiff's culture, religion, and the medical complexion of this case. As a result, replacing Dr. Weiss with Sheik El (culture/religion expert) and Dr. Kaufman (medical expert) can establish at trial the standard of care, breach, and causation of Plaintiff's injuries.

Taking into account Plaintiff's *pro se* status, Defendants' intentional abuse of the discovery process to limit or delay the discovery of admissible evidence, and the force majeure that caused Plaintiff to withdraw Dr. Weiss, Plaintiff's experts should not be stricken from this action.[7]

Respectfully, this 29th day of Ramadan in the year 1445 A.H.

Bro. T. Hesed-El, Plaintiff *pro se*
c/o TAQI EL AGABEY MANAGEMENT
30 N Gould St, Ste. R, Sheridan, WY 82801
Ph: (762) 333-2075 / teamwork3@gmail.com

---

[6] To date, Defendants' attorney still has not produced the documents Plaintiff requested from Robin Bryson, which is the primary reason why Plaintiff was unable to depose Robin Bryson and Mission Hospital.

[7] *See Ale House Mgmt., Inc. v. Raleigh Ale House, Inc.*, 2006 WL 6663793, at *9 (E.D.N.C. 2006) ("The credibility of the . . . evidence and expert testimony is appropriately determined by a jury."); *accord Mosser v. Fruehauf Corp.*, 940 F.2d 77, 83 (4th Cir. 1991) (endorsing the notion that the jury should weigh the evidence and credibility of competing experts); *see also, e.g., Balt. & Ohio R.R. Co. v. Deneen*, 167 F.2d 799, 801 (4th Cir. 1948) (The "power to resolve any conflicts . . . between the [parties'] evidence . . . [is] peculiarly in the province of the jury.")

## CERTIFICATE OF SERVICE

This certifies that a true and correct copy of PLAINTIFF'S SURREPLY IN OPPOSITION TO DEFENDANTS' REPLY IN SUPPORT OF MOTION TO STRIKE PLAINTIFF'S EXPERT WITNESSES has been sealed in an envelope with sufficient postage affixed thereon, and deposited into the exclusive custody of the United States Post Office, to ensure delivery to:

**Robin Bryson and Mission Hospital Inc.**
℅ Attorney Daniel H. Walsh
ROBERTS & STEVENS, P.A.
Post Office Box 7647
Asheville, North Carolina 28802
dwalsh@roberts-stevens.com

This 8th day of April in the year 2024 of the Gregorian calendar.

_____
Bro. T. Hesed-El, Plaintiff *pro se*